No. 06-73C
(Senior Judge Hodges)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. FRANK,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

LUCILLE C. ROBERTS
Deputy General Counsel
United States Marshals Service
Washington, D.C.

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

MAY 25, 2006

TABLE OF CONTENTS

Page

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . 1

II. Issues Presented . . . . . . . . . . 2

III. Statement Of Facts . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . 9

I. Plaintiff Bears The Burden Of Establishing That This Court Possesses Jurisdiction To Consider This Action . . . . . . . . . . 9

II. The Court Lacks Jurisdiction To Consider Challenges To Criminal Forfeiture . . . . . . . . . . 12

III. Mr. Frank's Claim Should Be Dismissed For Failure To Plead And Prove Jurisdiction Because Mr. Frank Has Not Sufficiently Alleged The Existence Of An Express Or Implied-In-Fact Contract Between Plaintiff And The United States . . . . . . . . . . 17

IV The Court Lacks Jurisdiction To Consider Plaintiff's Contract Claim Premised Upon An Alleged Contract Entered By The United States In Its Sovereign Capacity . . . . . . . . . . 27

V. Plaintiff's Taking Claim Should Be Dismissed . . . . . . . . . . 30

VI. This Court Lacks Jurisdiction To Issue The Requested Injunctive Relief . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . 34

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

Adams v. United States,
20 Cl. Ct. 132 (1990) . . . . . . . . . . 10

Aetna Casualty & Surety Co. v. United States,
228 Ct. Cl. 146, 655 F.2d 1047 (1981) . . . . . . . . . . 11

Alexander v. United States,
509 U.S. 544 (1993) . . . . . . . . . . 16

Appalachian Regional Healthcare v. United States,
999 F.2d 1573 (Fed. Cir. 1993) . . . . . . . . . . 14

Armijo v. United States,
229 Ct. Cl. 34, 663 F.2d 90 (1981) . . . . . . . . . . 33

Austin v. United States,
206 Ct. Cl. 719 (1975) . . . . . . . . . . 34

Awad v. United States,
61 Fed. Cl. 281 (2004) . . . . . . . . . . 25

Bernaugh v. United States,
38 Fed. Cl. 538 (1997),
aff'd, 168 F.3d 1319 (Fed. Cir. 1998) (table) . . . . . . . . . . 16,30

Bloomington Hospital v. United States,
29 Fed. Cl. 286 (1993) . . . . . . . . . . 14

Bowman v. United States,
35 Fed. Cl. 397 (1996) . . . . . . . . . . 30,31

Brown v. General Services Admin.,
425 U.S. 820 (1976) . . . . . . . . . . 13

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Buong Van Ho v. United States,
52 Fed. Cl. 664, 666 (2002) . . . . . . . . . . 34

Christianson v. Colt Industries Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . 11

City of Cincinnati v. United States,
153 F.3d 1375 (Fed. Cir. 1998) . . . . . . . . . . 18

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . 18,22-23,26

Cornejo-Ortega v. United States,
61 Fed. Cl. 371 (2004) . . . . . . . . . . 26

Crocker v. United States,
37 Fed. Cl. 191 (1997), aff'd 125 F.3d 1475 (1997) . . . . . . . . . . 16,30-31

Cruz-Pagan v. United States,
35 Fed. Cl 59 (1996) . . . . . . . . . . 26

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406 (1991) . . . . . . . . . . 10

D & N Bank v. United States,
331 F.3d 1374 (Fed. Cir. 2003) . . . . . . . . . . 18

Doe v. United States,
37 Fed. Cl. 74 (1996) . . . . . . . . . . 28

Doe v. United States,
100 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . . 25

Drakes v. United States,
28 Fed. Cl. 190 (1993) . . . . . . . . . . 28

Essen Mall Properties v. United States,
21 Cl. Ct. 430 (1990) . . . . . . . . . . 23

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Eversleigh v. United States,
24 Cl. Ct. 357 (1991) . . . . . 16,31

Farmers Grain Co. of Esmond v. United States,
29 Fed. Cl. 684 (1993) . . . . . 10

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . 23

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (2005) . . . . . 22

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . 11

Florida Rock Indus. Inc. v. United States,
791 F.2d 893 (Fed. Cir. 1986) . . . . . 33

Franklin Sav. Corp. v. United States,
56 Fed. Cl. 720 (2003) . . . . . 20

Froudi v. United States,
22 Cl. Ct. 290 (1991) . . . . . 30-31

Gadd v. United States,
55 Fed. Cl. 438 (2003) . . . . . 16,30

Gary v. United States,
67 Fed. Cl. 202 (2005) . . . . . 24,28

Gibbs v. Buck,
307 U.S. 66 (1939) . . . . . 10

Globex Corp. v. United States,
54 Fed. Cl. 343 (2002) . . . . . 11

Greenlee County v. United States,
68 Fed. Cl. 482 (2005) . . . . . 18

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Grundy v. United States,
2 Cl. Ct. 596 (1983) . . . . . . . . . . 21

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) . . . . . . . . . . 23

Harris v. United States,
841 F.2d 1097 (Fed. Cir. 1988) . . . . . . . . . . 13

Hatzlachh v. United States,
7 Cl. Ct. 743 (1985) . . . . . . . . . . 20

Heckler v. Community Health Serv. of Crawford County,
467 U.S. 51 (1984) . . . . . . . . . . 21

H. Landau & Co. v. United States,
886 F.2d 322 (1989) . . . . . . . . . . 24

Horowitz v. United States,
267 U.S. 458, 461 (1925) . . . . . . . . . . 27

Houston v. United States,
60 Fed. Cl. 507 (2004) . . . . . . . . . . 25

Howard v. United States,
31 Fed. Cl. 297 (1994) . . . . . . . . . . 32

Hughes Communications Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . 31-32

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985) . . . . . . . . . . 10

J.J. Henry Co. v. United States,
188 Ct. Cl. 39, 411 F.2d 1246 (1969) . . . . . . . . . . 32

John Muir Memorial Hospital, Inc. v. United States,
221 Ct. Cl. 843 (1979) . . . . . . . . . . 13

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Kaiser Aetna v. United States,
444 U.S. 164 (1979) . . . . . . . . . . 30

Kania v. United States,
227 Ct. Cl. 458, 466, 650 F.2d 264, 269 (1981) . . . . . . . . . . 11,27-29

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . 11

Khairallah v. United States,
43 Fed. Cl. 57 (1999) . . . . . . . . . . 23

Landers v. United States,
39 Fed. Cl. 297 (1997) . . . . . . . . . . 33

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir. 1985) . . . . . . . . . . 33

Lark v. United States,
17 Cl. Ct. 567 (1989) . . . . . . . . . . 17

Larson v. Domestic & Foreign Commerce Corp.,
337 U.S. 682 (1949) . . . . . . . . . . 32

Lewis v. United States,
70 F.3d 597, 600 (Fed. Cir. 1995) . . . . . . . . . . 20

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . 30

Marathon Oil Co. v. United States,
16 Cl. Ct. 332 (1989) . . . . . . . . . . 32

Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,
24 F.3d 1368 (Fed. Cir. 1994) . . . . . . . . . . 11

McAfee v. United States,
46 Fed. Cl. 428 (2000) . . . . . . . . . . 10,25

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . 9

Merritt v. United States,
267 U.S. 338 (1925) . . . . . . . . . . 17

Monarch Assurance P.L.C. v. United States,
244 F.3d 1356 (Fed. Cir. 2001) . . . . . . . . . . 22

Motorola, Inc. v. United States,
988 F.2d 113 (Fed. Cir. 1993) . . . . . . . . . . 19

Overall Roofing & Construction, Inc. v. United States,
929 F.2d 687 (Fed. Cir. 1991) . . . . . . . . . . 10

Nat'l Air Traffic Controllers Assn. v. United States,
160 F.3d 714 (Fed. Cir. 1998) . . . . . . . . . . 34

Noel v. United States,
16 Cl. Ct. 166 (1989) . . . . . . . . . . 17,31,33

Pappas v. United States,
66 Fed. Cl. 1 (2005), aff'd ___ F.3d ___, Slip Op.
No. 05-5151 (Fed. Cir. Mar. 9, 2006) (unpublished) . . . . . . . . . . 28

Perry v. United States,
28 Fed. Cl. 82 (1993) . . . . . . . . . . 16

Preiser v. Rodriguez,
411 U.S. 475 (1973) . . . . . . . . . . 13

Puget Sound Power & Light Co. v. United States,
23 Cl. Ct. 46 (1991) . . . . . . . . . . 13

Regional Rail Reorganization Cases,
419 U.S. 102 (1974) . . . . . . . . . . 33

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Reynolds v. Army and Air Force Exchange Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . 9-10

Roy v. United States,
38 Fed. Cl. 184, 187, appeal dismissed,
124 F.3d 224 (Fed. Cir. 1997) . . . . . 22,24

St. Vincent's Medical Center v. United States,
32 F.3d 548 (Fed. Cir. 1994) . . . . . 14,17

Sadeghi v. United States,
46 Fed. Cl. 660 (2000) . . . . . 28

Saladino v. United States,
62 Fed. Cl. 782 (2004) . . . . . 9

Sanders v. United States,
252 F.3d 1329 (Fed. Cir. 2001) . . . . . 25,27,29

Sartori v. United States,
58 Fed. Cl. 358 (2003) . . . . . 22

Sea Air Shuttle Corp. v. United States,
112 F.3d 532 (1st Cir. 1997) . . . . . 28-29

Shaw v. United States,
8 Cl. Ct. 796 (1985) . . . . . 20

Stonite Products Co. v. Melvin Lloyd Co.,
315 U.S. 561 (1942) . . . . . 13

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786 (1978) . . . . . 32

Sunrise Village Mobile Home Park, L.C. v. United States,
42 Fed. Cl. 392 (1998) . . . . . 32

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

Tabb Lakes, Ltd. v. United States,
10 F.3d 796 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Thomson v. Gaskill,
315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Total Med. Mgmt., Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Toranzo-Claure v. United States,
48 Fed. Cl. 581 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Torres v. United States,
15 Cl. Ct. 212 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Transpace Carriers, Inc. v. United States,
27 Fed. Cl. 269 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,17

United States v. Demko,
385 U.S. 149 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Fausto,
484 U.S. 439 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,33

TABLE OF AUTHORITIES Con't

FEDERAL CASES

Page(s)

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . 11,17

United States v. Mitchell,
463 U.S. 206, 212 (1983) . . . . . . . . . . 12

United States v. Nava,
404 F.3d 1119 (9th Cir. 2005) . . . . . . . . . . 15-16

United States v. Puig,
419 F.3d 700 (8th Cir. 2004) . . . . . . . . . . 14,16

United States v. Robert H. Frank, et al.,
Pacer Docket (N.D. Iowa) No. 00-CR-00-1015-1-RTD . . . . . . . . . . 2

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 11

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 11-12

UNR Industries, Inc. v. United States,
962 F.2d 1013 (Fed. Cir. 1992) (en banc), aff'd sub nom., . . . . . . . . . . 11

Vereda, Ltda. v. United States,
271 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . 14,16,30

Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . 29

Yokum v. United States,
11 Cl. Ct. 148 (1986) . . . . . . . . . . 19-20

TABLE OF AUTHORITIES Con't

FEDERAL STATUTES

Page(s)

18 U.S.C. § 982 . . . . . . . . . . 4,6

18 U.S.C. § 982(b)(1) . . . . . . . . . . 6,14

18 U.S.C. § 1956 . . . . . . . . . . 4

18 U.S.C. § 2232 . . . . . . . . . . 5,21

21 U.S.C. § 853 . . . . . . . . . . 2,6,9,14,28

21 U.S.C. § 853(c) . . . . . . . . . . 16

21 U.S.C. § 853(k) . . . . . . . . . . 15-17,31,34

28 U.S.C. § 853(n) . . . . . . . . . . 15-17,29,34

21 U.S.C. § 853(n)(1) . . . . . . . . . . 6

21 U.S.C. § 853(n)(2) . . . . . . . . . . 15

21 U.S.C. § 853(n)(3) . . . . . . . . . . 6

21 U.S.C. § 881 . . . . . . . . . . 14

21 U.S.C. § 881(d) . . . . . . . . . . 6

21 U.S.C. § 881(h) . . . . . . . . . . 6

28 U.S.C. § 1491 . . . . . . . . . . 11,33

28 U.S.C. § 1491(a)(1) . . . . . . . . . . 2,8

41 U.S.C. § 602(a) . . . . . . . . . . 27

41 U.S.C. § 605(c)(2) . . . . . . . . . . 8

Civil Rights Act of 1964 . . . . . . . . . . 13

TABLE OF AUTHORITIES Con't

FEDERAL REGULATIONS

Page(s)

28 C.F.R. § 0.111(i) . . . . . 26

28 C.F.R. § 0.160 . . . . . 12,24

28 C.F.R. § 0.161 . . . . . 24

28 C.F.R. § 0.168 . . . . . 24

48 C.F.R. § 1.601 . . . . . 23

48 C.F.R. § 1.602-1(a) . . . . . 23

MISC.

U.S. Const. amend V . . . . . 30

RCFC 12(b)(1) . . . . . 1,10,27

Fed. R. Crim. P 32.2 . . . . . 6

# INDEX TO APPENDIX

Page(s)

October 30, 2000 Indictment . . . . . 1

January 31, 2003 Judgment . . . . . 50

November 20, 2002 petition filed by Robert J. Frank (including exhibits 1-3) . . . . . 57

July 9, 2003 letter to Dubuque County Recorder . . . . . 78

Undated dismissal of petition filed by Robert J. Frank . . . . . 80

Declaration of Richard L. Murphy . . . . . 82

Declaration of Marty McLaughlin . . . . . 84

Declaration of Charles W. Larson, Sr. . . . . . 86

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT J. FRANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-73C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, pursuant to RCFC 12(b)(1), respectfully requests that the Court dismiss plaintiff's complaint for lack of jurisdiction. In support of this motion, we rely upon the complaint, the exhibits attached to the complaint, the following brief, and the accompanying appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff, Robert J. Frank, seeks recovery of fees allegedly due him based upon an express or implied-in-fact contract with the United States. Comp. ¶¶ 11, 17, 22.[1] Mr. Frank alleges that the Government has failed to pay him storage fees for vehicles that are subject to a preliminary order of forfeiture. Id. The vehicles are located on real property in Dubuque, Iowa, known as Gardner's Lane, which Mr. Frank claims to own and also currently is subject to a preliminary order of forfeiture. The preliminary order of forfeiture concerning both the vehicles and Gardner's Lane was issued in a criminal matter involving plaintiff's father, Robert H. Frank, and

[1] "Comp. ¶ ___" refers to the complaint filed in this case. "Comp. Ex. ___" refers to exhibits attached to the complaint. "A ___" refers to documents included in the appendix filed concurrently with our motion to dismiss.

is pending in the United States District Court for the Northern District of Iowa. United States v. Robert H. Frank, et al., Pacer Docket (N.D. Iowa) No. 00-CR-00-1015-1-RTD.[2] Comp. ¶ 4.

Mr. Frank likewise seeks recovery of storage fees based upon an alleged taking of his property pursuant to the Fifth Amendment. Comp. ¶ 27. Finally, Mr. Frank seeks injunctive relief requiring that the United States remove the vehicles from the property. Comp. Prayer for Relief immediately following ¶ 30.

II. Issues Presented

1. Whether this Court lacks jurisdiction to consider Mr. Frank's contract claims and Fifth Amendment takings claim that challenge the propriety and consequences of the Government's actions in conducting a criminal forfeiture of property where Congress has assigned to United States district courts review of the propriety of forfeitures pursuant to 21 U.S.C. § 853.

2. Whether this Court lacks subject matter jurisdiction to consider Mr. Frank's contract claims pursuant to 28 U.S.C. § 1491(a)(1), where Mr. Frank's complaint does not contain well-pleaded allegations of the existence of an express or implied-in-fact contract between Mr. Frank and the United States.

3. Whether this Court lacks jurisdiction to consider Mr. Frank's contract claims premised upon purported express or implied-in-fact contracts entered by the United States in its sovereign capacity.

---

[2] Docket entries from the district court case are available through Pacer at https://ecf.iand.uscourts.gov/.

4. Whether this Court lacks jurisdiction to consider Mr. Frank's breach of contract claims where Mr. Frank has failed to allege or establish that Government employees who allegedly contracted with him had the requisite authority – express or implied – to contractually obligate funds of the United States Treasury.

5. Whether this Court lacks jurisdiction to consider Mr. Frank's Fifth Amendment takings claim where the claim is based upon the alleged breach of an agreement.

6. Whether this Court lacks jurisdiction to award injunctive relief requiring the United States to remove vehicles from property that is the subject of preliminary order of forfeiture.

III. Statement Of Facts

On or about September 13, 1986, Robert H. Frank, father of the plaintiff, was arrested on State of Iowa criminal charges related to the arson of a state judge's home in Dubuque, Iowa. A 3.[3] The judge previously had entered a default divorce decree against Robert H. Frank on or about March 4, 1985. A 2-3. On January 6, 1987, Robert H. Frank transferred certain real property in Dubuque, Iowa, to plaintiff by a quitclaim deed. A 10; 66-67. The property included Section 2, Lots 1-2-2-1-1-2-28, and 1-2-2-1-1-2-29, and 1-1-2-30 of property referred to herein as "Gardner's Lane." A 66-67. In about April 1987, Robert H. Frank was acquitted in Iowa District Court of charges brought in relation to the arson of the judge's home. A 3.

3 The document appearing at A 1-49, upon which many of these factual assertions concerning Robert H. Frank are based, is a complete copy of a document which appears as exhibit 1 of Mr. Frank's complaint filed in this Court. See Comp. Ex. 1. Exhibit 1 is an Indictment filed against Robert H. Frank in United States District Court for the Northern District of Iowa.

On or about November 19, 1987, Robert H. Frank was indicted, with two others, in United States District Court for the Northern District of Iowa, Criminal Case No. CR 87-1010, on charges relating to the May 1985 arson of the state judge's house in Dubuque, Iowa. A 3. On or about February 29, 1988, a jury returned guilty verdicts on all counts against Robert H. Frank in the United States District Court, Northern District of Iowa, case No. CR 87-1010. Id.

As part of his sentence, Robert H. Frank was ordered to pay restitution to the judge, as well as to an insurance company. A 3-4. After Robert H. Frank was released from prison in 1998, various United States law enforcement components monitored the financial portion of Robert H. Frank's sentence, including the assessment of his ability to make payments on the judgment. A 6.

On October 30, 2000, Robert H. Frank was indicted in United States District Court for the Northern District of Iowa pursuant to 18 U.S.C. §§ 982 (criminal forfeiture), 1341 (mail fraud), 1343 (wire fraud), 1503 (obstruction of justice), and 1956 (money laundering), in a Federal criminal forfeiture action entitled United States v. Robert H. Frank, No. CR 00-1015 (N.D. Iowa) ("forfeiture case"). A 1-49. As a result of the forfeiture case, the district court forfeited Robert H. Frank's interest in, among other things, Gardner's Lane and in numerous motor vehicles owned by Robert H. Frank that were located on the Gardner's Lane property. Comp. Ex. 2-3.

On or about September 16, 2002, counsel for Mr. Frank, Webb Wassmer, by letter, informed Assistant United States Attorney ("AUSA") Richard Murphy and Wallace H. Taylor, counsel for Robert H. Frank, that Mr. Frank was revoking any prior consent given to his father, Robert H. Frank, to store vehicles on the Gardner's Lane property. Comp. Ex. 6. The letter also

stated that if the vehicles were not removed from Gardner's Lane by September 30, 2002, Mr. Frank would have them declared abandoned and would remove them pursuant to state law. Id. In the alternative, Mr. Frank declared that he would impose a storage fee of $10.00 per day for each vehicle remaining on the property on or after September 30, 2002, until all of the forfeited vehicles were removed. Id.

By letter dated September 19, 2002, AUSA Murphy informed Mr. Wassmer:

> This is to acknowledge receipt of your letter dated September 16, 2002. Your letter is in reference to vehicles stored on the property located at 17301 Gardner's Lane in Dubuque, Iowa.
>
> As you and your client both know, the Gardner's Lane property and several vehicles stored there are currently the subject of a criminal forfeiture action in the case of United States of America v. Robert H. Frank, et al, CR00-1015-MJM. Because your letter is not specific as to which vehicles you intend to declare abandoned, I request that you immediately provide me with descriptions and photographs of said vehicles. The descriptions should include the VIN for each vehicle. In addition, I request that you inform me as to where each of these vehicles is located on the property so that steps may be taken to retrieve same, if necessary.
>
> Given the pending forfeiture proceedings, you are requested to take no action with regard to the vehicles and property which are subject to the pending forfeiture indictment without first obtaining approval of the United States. Any action to transfer the property or any other action which could result in damage to or diminution in the value of the property subject to the forfeiture indictment, could constitute a violation of Title 18, U.S.C. § 2232. Further, such actions could result in the obstruction of the due administration of justice.
>
> If you have any questions or would like to discuss this matter further, please do not hesitate to let me know.

Comp. Ex. 7.

On November 1, 2002, pursuant to stipulation, the district court issued a preliminary order of forfeiture in the forfeiture case entitling the Government to possession of all of the property listed therein, including Gardner's Lane and the vehicles located thereon, pursuant to 18 U.S.C. § 982 and Fed. R. Crim. P. 32.2. Comp. Ex. 2 & 3. The order also authorized the Government to seize the property which was thereby "forfeited to the United States for disposition in accordance with the law, subject to the provisions of 21 U.S.C. [Section] 853(n)(1)[.]" 21 U.S.C. § 853(n)(1). Id. The preliminary order of forfeiture, in accordance with 21 U.S.C. § 853(n)(1), directed the Government to publish notice of the forfeiture and provide direct written notice to persons known to have alleged an interest in the forfeited property. Id.

On November 20, 2002, Mr. Frank filed a Petition for Remission in the forfeiture case alleging that he was the rightful owner of Gardner's Lane, based on the above-referenced quitclaim deed issued by his father, Robert H. Frank, on January 6, 1987. A 57. Mr. Frank also argued that the quitclaim deed, which was issued prior to first act giving rise to the forfeiture, defeated the "relation back" doctrine, 21 U.S.C. § 881(h), which vests all right, title and interest in property forfeited to the Government upon the commission of the act giving rise to the forfeiture. See also 21 U.S.C. § 881(d); 18 U.S.C. § 982(b)(1). A 58-60. In his petition, Mr. Frank also reiterated his demand to the Government to pay for storage of the Federally-forfeited vehicles which were located on the property, and requested an ancillary hearing pursuant to 21 U.S.C. § 853(n)(3) to adjudicate his petition. A 62.

With respect to his demand for payment of storage fees, Mr. Frank requested the following relief from the district court:

> e. Find that Robert J. Frank has a valid claim and lien for storage fees with respect to the vehicles identified in Section 1(c) of the Preliminary Order of Forfeiture (with the exception of the 1963 Falcon Convertible) and any other vehicles on the Gardner's Lane property not owned by Petitioner Robert J. Frank which the United States claims is included in the Preliminary Order of Forfeiture, and direct the United States to pay said storage fees in the amount of $10 per day per vehicle commencing October 1, 2002 until such time as the vehicles are removed from the property.

Id.

On January 30, 2003, the United State District Court for the Northern District of Iowa entered judgment against Robert H. Frank in the criminal case no. CR 00-1015-1-RTD. A 51-52. On April 25, 2003, the United States District Court entered an Amended Judgment in the criminal case against Robert H. Frank. Comp. ¶ 7; Comp. Ex. 4. By letter dated July 9, 2003, the United States Attorney's Office for the Northern District of Iowa filed a notification with the Dubuque County Recorder to remove the Government's lis pendens on Gardner's Lane. A 78. On November 20, 2003, Mr. Frank voluntarily dismissed his Petition for Remission with the district court. A 80. The United States District Court entered a second Amended Judgment in the criminal case against Robert H. Frank on September 12, 2005. Comp. ¶ 7; Comp. Ex. 5.

By letter dated August 4, 2005, counsel for Mr. Frank informed AUSA Martin McLaughlin and then Acting United States Marshal Roger W. Arechiga (N.D. Iowa) of his demand that the vehicles be removed and that the Government pay Mr. Frank $10.00 per day for each vehicle located on Gardner's Lane. Comp. Ex. 8. Mr. Frank's counsel estimated that his client was owed, through November 2, 2005, between as $282,000- $394,800, for storage of the vehicles. Id. Mr. Frank's counsel threatened legal action if his client's demands were not met. Id.

To this end, Mr. Frank's counsel stated:

> Accordingly, Mr. Frank is submitting this claim to you to clear the last procedural hurdle before filing the Complaint with the Court. It is my understanding pursuant to 41 U.S.C. Sec. 605(c)(2), that the contracting officer will issue a decision within 60 days or notify Mr. Frank of a reasonable time within which a decision will be issued.

Mr. Frank filed his action in this Court on January 26, 2006.

## SUMMARY OF THE ARGUMENT

The Court lacks jurisdiction to consider Mr. Frank's complaint because Congress has assigned to United States district courts review of the propriety of forfeitures pursuant to 21 U.S.C. § 853. Congress' grant to district courts of exclusive jurisdiction to consider challenges to criminal forfeiture is consistent with a long line of authority of this Court and the United States Court of Appeals for the Federal Circuit holding that there is no Tucker Act jurisdiction to review civil forfeitures.

This Court likewise lacks jurisdiction to consider Mr. Frank's breach of contract claims because the claims do not satisfy the jurisdictional prerequisites of 28 U.S.C. § 1491(a)(1). Mr. Frank's complaint provides only conclusory statements regarding the existence of an agreement with the United States and fails to supply sufficient facts to support the basic elements of an express or implied-in-fact contract. Mr. Frank further fails to identify the Government employee with whom he allegedly dealt or establish that the individual had authority, express or implied, to bind the United States in contract. Because Mr. Frank is unable to establish privity with the United States, this Court lacks jurisdiction to consider Mr. Frank's contract claims.

Mr. Frank's complaint also should be dismissed because the alleged contract at issue would have been entered by the Government in its sovereign capacity. This Court lacks jurisdiction to consider claims based upon contracts entered in that capacity.

The Court lacks jurisdiction to consider Mr. Frank's Fifth Amendment takings claim. Congress' assignment to United States district courts exclusive jurisdiction to review the propriety of forfeitures pursuant to 21 U.S.C. § 853, as well as precedent of this Court and the Federal Circuit, establish that this Court lacks jurisdiction to review civil forfeitures, including claims that such forfeitures violate the Fifth Amendment.

In the alternative, because plaintiff's takings claim is based upon the alleged breach of an agreement to provide Mr. Frank vehicle storage fees, his remedy lies in consideration of his breach claim, not the Fifth Amendment. Finally, to establish a Fifth Amendment taking, Mr. Frank must, among other things, concede the validity of the Government action which is the basis of the taking claim. Here, Mr. Frank maintain that the Government's actions were unlawful, that is, that the Government breached an agreement to pay storage fees to plaintiff. As such, plaintiff's taking claim should be rejected.

## ARGUMENT

### I. Plaintiff Bears The Burden Of Establishing That This Court Possesses Jurisdiction To Consider This Action

Mr. Frank bears the burden of establishing by preponderant evidence that the Court possesses jurisdiction to consider this suit. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936); Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Saladino v. United States, 62 Fed. Cl. 782, 786 (2004). Where "a plaintiff's

allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." Thomson v. Gaskill, 315 U.S. 442, 446 (1942); accord Farmers Grain Co. of Esmond v. United States, 29 Fed. Cl. 684, 686 (1993) (where motion "challenges the truth of the jurisdictional facts alleged in the complaint . . . the court may consider relevant evidence in order to resolve the factual dispute").[4]

A motion to dismiss pursuant to RCFC 12(b)(1) directed at the Court's subject matter jurisdiction is appropriate where plaintiff has alleged an express or implied-in-fact contract and where the complaint does not contain "well pleaded allegations of express or implied-in-fact contract." McAfee v. United States, 46 Fed. Cl. 428, 432 (2000) (citing Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)). In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to rule 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); Adams v. United States, 20 Cl. Ct. 132, 133 n.1 (1990). If the factual basis for jurisdiction is challenged, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion. Gibbs v. Buck, 307 U.S. 66, 72 (1939).

The Court of Federal Claims is a court of limited jurisdiction. Overall Roofing & Construction, Inc. v. United States, 929 F.2d 687 (Fed. Cir. 1991). This Court's jurisdiction to adjudicate a claim depends upon, and is delineated by, the extent to which the United States has

---

[4] This motion is directed toward the Court's jurisdiction and properly is styled a motion to dismiss, rather than a motion for summary judgment. Reynolds, 846 F.2d at 747; Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 411-12 (1991) (motion for summary judgment based upon lack of jurisdiction treated as motion to dismiss).

waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). Absent congressional consent to suit, the Court lacks authority to grant relief. E.g., Testan, 424 U.S. at 399; United States v. Sherwood, 312 U.S. 584, 586 (1941).

Congressional consent to suit in this Court, which thereby waives sovereign immunity, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969); Kania v. United States, 227 Ct. Cl. 458, 466, 650 F.2d 264, 269 (1981). Moreover, "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 818 (1988); accord UNR Industries, Inc. v. United States, 962 F.2d 1013, 1022-23, 1025 (Fed. Cir. 1992) (en banc), aff'd sub nom., Keene Corp. v. United States, 508 U.S. 200 (1993). As the Court has stated, "[a]mbiguities regarding the existence of subject matter jurisdiction must be 'resolved against the assumption of jurisdiction.'" Globex Corp. v. United States, 54 Fed. Cl. 343, 347 (2002) (quoting Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994)).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to this statute, an action may be maintained in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982).

Although the Tucker Act constitutes an affirmative waiver of sovereign immunity, it does not create any substantive right of enforcement against the United States for monetary damages. United States v. Mitchell, 463 U.S. 206, 212 (1983); Testan, 424 U.S. at 398; Eastport, 178 Ct. Cl. 599 at 605-07, 372 F.2d at 1007-09. Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc). As we discuss below, Mr. Frank's complaint fails to present any claim within the jurisdiction of this Court.

## II. The Court Lacks Jurisdiction To Consider Challenges To Criminal Forfeiture

This Court lacks jurisdiction to consider Mr. Frank's complaint because Congress has assigned review of the propriety of criminal forfeitures exclusively to United States district courts. As noted above, the Tucker Act creates no substantive right of recovery against the United States. Testan, 424 U.S. at 397, 400; Mitchell, 463 U.S. at 215. The Tucker Act may be invoked for "demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Id. As the Court of Claims explained in Eastport Steamship,

> in the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.

Id.

However, where the substantive claim itself provides a mechanism for judicial review in another forum, Tucker Act jurisdiction is preempted, even if the claim is for money damages.

United States v. Fausto, 484 U.S. 439, 448 (1988); Puget Sound Power & Light Co. v. United States, 23 Cl. Ct. 46, 57 (1991); John Muir Memorial Hospital, Inc. v. United States, 221 Ct. Cl. 843, 846 (1979).

This rule of law derives from the well-settled principle, reaffirmed on numerous occasions in differing contexts by the United States Supreme Court, that a remedy furnished by a precisely drawn, detailed statute preempts a more general, nominally applicable remedy. E.g., Brown v. General Services Admin., 425 U.S. 820 (1976) (Title VII of Civil Rights Act of 1964 preempts preexisting employment discrimination remedies); Preiser v. Rodriguez, 411 U.S. 475 (1973) (state prisoners may not seek redress under the Civil Rights Act because of comprehensive remedial scheme of habeas corpus); United States v. Demko, 385 U.S. 149 (1966) (prison workers' compensation system preempts Federal Tort Claims Act); Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561 (1942) (specific venue statute for patent infringement cases is exclusive law governing venue in such cases).

As this Court explained in Puget Sound,

> the rule that a remedy furnished by a precisely drawn, detailed statute preempts a more general statutory remedy is especially applicable to the general remedy provided by the Tucker Act because the legal doctrine that consent to suit against the sovereign must be strictly construed overrides the doctrine that repeals by implication are not favored.

23 Cl. Ct. at 57, citing Harris v. United States, 841 F.2d 1097, 1100-01 (Fed. Cir. 1988). This rule applies even when Congress does not expressly preclude this Court from exercising Tucker Act jurisdiction to entertain the claim. Fausto, 484 U.S. at 453; Harris, 841 F.2d at 1100.

The Court in Eastport acknowledged this principle, stating that suit can be brought pursuant to the Tucker Act to recover illegal exactions "except where Congress has expressly placed jurisdiction elsewhere." Eastport Steamship, 178 Ct. Cl. at 606, 372 F.2d at 1008; St. Vincent's Medical Center v. United States, 32 F.3d 548, 550 (Fed. Cir. 1994) ("Courts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum."); Appalachian Regional Healthcare v. United States, 999 F.2d 1573, 1577-78 (Fed. Cir. 1993); Bloomington Hospital v. United States, 29 Fed. Cl. 286, 292-93 (1993).

In Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001), the Federal Circuit held that the Court of Federal Claims lacked jurisdiction to consider a takings claim that, in essence, challenged a civil forfeiture pursuant to the Controlled Substance Act, because the forfeiture statutes provided a comprehensive scheme of review. The court explained:

> The statutory scheme established by the Controlled Substances Act provides complete administrative review by DEA and judicial review in district court of (i) the merits of a seizure and forfeiture of property initiated under 21 U.S.C. § 881 and (ii) any related due process claims. In short, Congress created a statutory scheme that provides a claimant such as Vereda with the ability to challenge the merits of an in rem forfeiture, both administratively and before a district court. This statutory scheme evinces Congress' intent to preempt any Tucker Act jurisdiction over a money claim that challenges the propriety of an in rem administrative forfeiture of property seized under 21 U.S.C. § 881.

Vereda, 271 at 1375.

Congress has created a comprehensive statutory scheme for criminal forfeiture of property involved in a criminal offense. 21 U.S.C. § 853; Puig, 419 F.3d at 703; see also 18 U.S.C. § 982(b)(1) (disposition of criminally forfeited property governed by 21 U.S.C. § 853).

Pursuant to section 853(n)(2), once the district court enters a preliminary order of forfeiture as part of the defendant's sentence, the United States publishes notice of the order and third party claimants have 30 days to file a petition with the district court. 21 U.S.C. § 853(n)(2). Section 853(n) likewise provides for an ancillary hearing by the district court, which is the exclusive proceeding through which third parties may claim interests in property subject to criminal forfeiture. Id.

Section 853(k), entitled "Bar on Intervention," states in relevant part:

> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may –
>
> * * *
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information, alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k). Thus Congress clearly assigned exclusive jurisdiction over such proceedings to United States district courts. United States v. Nava, 404 F.3d 1119 (9th Cir. 2005).

In this case, Mr. Frank seeks payment for storage of Federally-forfeited vehicles on real property forfeited to the Government pursuant to a preliminary order of forfeiture – an order which remains in force to date. While Mr. Frank claims ownership of Gardner’s Lane, the property remains subject to the outstanding preliminary order of forfeiture. Mr. Frank’s claim of ownership of the Gardner's Lane property is one essential element of both his breach of contract and unlawful taking claims.

At bottom, Mr. Frank challenges the Government’s exercise of its authority under the preliminary order of forfeiture and the manner in which the Government has carried out the

preliminary order of forfeiture in the context of a criminal prosecution.[5] This is evidenced by the fact that, in addition to storage fees, Mr. Frank seeks an injunction from this Court requiring that the vehicles be removed from the property. Comp. Prayer for Relief immediately following ¶ 30. The underlying criminal forfeiture action remains pending in the United States District Court for the Northern District of Iowa. Accordingly, his action in this Court should be dismissed in lieu of the district court's jurisdiction pursuant to 21 U.S.C. § 853(k).

Congress' grant to district courts of exclusive jurisdiction to consider challenges to Government forfeitures forms the basis for a long line of authority holding that there is no Tucker Act jurisdiction to review Federal forfeitures. See Eastport Steamship, 178 Ct. Cl. at 609, 372 F.2d at 1010 (Court of Claims without jurisdiction to consider challenges to the propriety or lawfulness of a forfeiture action); Vereda, 271 F.3d at 1375 (discussed supra); Gadd v. United States, 55 Fed. Cl. 438, 445 (2003) (no Court of Federal Claims jurisdiction pursuant to the Tucker Act for taking of property pursuant to federal forfeiture); Crocker v. United States, 37 Fed. Cl. 191, 198 (1997), aff'd 125 F.3d 1475 (1997) (no Court of Federal Claims jurisdiction pursuant to Tucker Act to consider Fifth Amendment takings claim involving procedurally defective forfeiture); E.g., Bernaugh v. United States, 38 Fed. Cl. 538 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) (table); Perry v. United States, 28 Fed. Cl. 82, 85 (1993); Eversleigh v.

[5] A criminal forfeiture action is an in personam judgment against the defendant, and serves as part of the defendant's penalty for conviction. United States v. Nava, 404 F.3d 1119 (9th Cir. 2005) (citing Alexander v. United States, 509 U.S. 544, 558-59, n. 4 (1993)). Pursuant to the criminal forfeiture statutes, title to the forfeited property vests in the United States at the time the defendant commits the unlawful act, although it attaches only upon the defendant's conviction. 21 U.S.C. 853(c). United States v. Puig, 419 F.3d 700 (8th Cir. 2004). However, the Government does not receive clear title to the property until it complies with the requirements of Section 853(n). Id.

United States, 24 Cl. Ct. 357, 359 (1991); Lark v. United States, 17 Cl. Ct. 567, 569 (1989); Noel v. United States, 16 Cl. Ct. 166, 170 (1989); Torres v. United States, 15 Cl. Ct. 212, 217 (1988).

As we have established, Congress has assigned to district courts exclusive jurisdiction to review criminal forfeitures. 21 U.S.C. §§ 853(k) & (n). Tucker Act jurisdiction exists "where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum." St. Vincent's Medical Center, 32 F.3d at 550. Mr. Frank's complaints regarding the manner in which the criminal forfeiture has been conducted, which are premised upon his alleged ownership of Gardner's Lane as a Federally-forfeited property, are barred by sections 853(k)& (n) from adjudication in this Court.

## III. Mr. Frank's Contract Claims Should Be Dismissed For Failure To Plead And Prove Jurisdiction Because Mr. Frank Has Not Sufficiently Alleged The Existence Of An Express Or Implied-In-Fact Contract Between Himself And The United States

To invoke jurisdiction pursuant to the Tucker Act a plaintiff must establish the existence of a contractual relationship with the United States as a jurisdictional prerequisite. United States v. Johnson Controls, Inc., 713 F.2d 1541, 1550-51 (Fed Cir. 1983) (tracing the privity requirement to Merritt v. United States, 267 U.S. 338 (1925)).[6] The requirements to establish a binding contract with the United States, which are identical for both express and implied contracts, are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314,

---

6 If no proper contract claim exists, to state a claim within the jurisdiction of this Court, a claimant must establish some substantive provision of law, regulation, or the Constitution, which fairly can be construed as mandating compensation. Mitchell, 445 U.S. at 538; Connolly, 716 F.2d at 885. Mr. Frank alleges no such money mandating provision here other than his Fifth Amendment takings claim, which we discuss below.

1319 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). Moreover, to establish a contract, a party must demonstrate "lack of ambiguity in offer and acceptance." Greenlee County v. United States, 68 Fed. Cl. 482, 488 (2005) (quoting D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003)).

Mr. Frank's complaint fails to allege even the basic elements of a contract and instead contains only conclusory allegations of the existence of a contract with the United States. According to Mr. Frank:

> On September 16, 2002, Plaintiff Robert J. Frank notified the United States of America that a storage charge of $10 per day per vehicle would be imposed on any vehicles remaining on the property after September 30, 2002 (Exhibit "6"). On September 19, 2002.

Comp. ¶ 11.

Similarly, Count I of the complaint, entitled "Breach of Express Contract," alleges:

> An express contract for payment of $10 per day per vehicle from and after September 30, 2002, for storage of each said vehicle until each vehicle is removed from the property by the United States exists. The United States accepted the terms of the September 16, 2002, notice by not removing the vehicles from the property and/or by threatening Plaintiff Robert J. Frank with criminal prosecution if he took any action to remove the vehicles.

Comp. ¶ 17.

With regard to Count II, entitled "Breach of Implied Contract," Mr. Frank summarily suggests:

> an implied contract exists between Plaintiff Robert J. Frank and the United States of America to pay the reasonable value of the services provided by Robert J. Frank in storing the vehicles.

Comp. ¶ 22.

These conclusory allegations are wholly insufficient to establish the existence of a contract between Mr. Frank and the Government. Mr. Frank's complaint does allege the existence of an express, written agreement signed by both parties, nor are we are aware of any such written document. Yet, Mr. Frank alleges that he "has done what the contract requires (or has been excused from doing what the contract requires to the extent the contract requires Robert J. Frank to take any action to remove the vehicles)." Comp. ¶ 18 (Count I, express contract), Comp. ¶ 23 (Count II, implied contract).

The only documentation offered by Mr. Frank as alleged evidence of the existence of an express (or implied-in-fact) contract is a September 16, 2002 letter from Mr. Frank's attorney to the United States, which Mr. Frank, in his complaint, terms a "notice." Comp. ¶ 17 ("[t]he United States accepted the terms of the September 16, 2002, notice"). Mr. Frank does not set forth any facts suggesting actual offer or acceptance. Rather, Mr. Frank alleges that, subsequent to the Government's application for a preliminary order of forfeiture, Mr. Frank "notified" the United States that he would be charging a storage fee of $10 per day for any vehicle left on the Gardner's lane property. This is not an offer of contract; it is a unilateral demand for payment.7

In addition, with regard to Mr. Frank's implied-in-fact contract claim, this Court in Yokum v. United States, 11 Cl. Ct. 148, 149 (1986), held "that no implied-in-fact contract of

---

7 To the extent Mr. Frank's unilateral demand is deemed an "offer," such an offer, without more, is insufficient to establish formation of a contract. See, e.g., Motorola, Inc. v. United States, 988 F.2d 113, 116 (Fed. Cir. 1993) (pre-award "exchanges are not carried on with an expectation to presently affect legal relations. Rather, the parties are dealing . . . exclusively with an eye to the future, each being free, in the meantime, to withdraw from the dialogue").

bailment exists between the Government and a property owner concerning goods which the Government lawfully seizes." (Citing Shaw v. United States, 8 Cl. Ct. 796, 799 (1985); Hatzlachh v. United States, 7 Cl. Ct. 743, 748-50 (1985)). In Yokum, the Court expressly rejected plaintiff's contention that the Court had "authority to adjudicate the plaintiff's conversion claim under the court's jurisdiction to enter judgment on a claim founded upon a contract implied in fact." The same principle applies here. The Court has no jurisdiction to consider Mr. Frank's implied-in-fact contract claim that the Government owes him storage fees for the period of time that the vehicles, which are subject to criminal forfeiture, remain on the property.

Likewise, Mr. Frank offers no evidence that anyone within the United States specifically accepted or agreed to bind the United States to the terms of Mr. Frank's unilateral demand. Instead, according to Mr. Frank, acceptance of his demand is implied because (1) the Government did not remove the vehicles from the property in question, and (2) the United States allegedly threatened Mr. Frank "with criminal prosecution if he took any action to remove the vehicles." Comp. ¶ 17. However, neither acceptance scenario suggested by Mr. Frank is sufficient to establish the requisite unambiguous acceptance by the United States of Mr. Frank's demand. This ambiguity as to acceptance is fatal to Mr. Frank's contractual allegations. See Lewis v. United States, 70 F.3d 597, 600 (Fed. Cir. 1995) (implied-in-fact contract requires a lack of ambiguity in offer and acceptance); Franklin Sav. Corp. v. United States, 56 Fed. Cl. 720, 742 (2003) (citations omitted) ("The terms of the offer must be specific and unambiguous, so that acceptance of that offer will cement a binding bargain enforceable by law").

Presumably, Mr. Frank's allegation that he was threatened with "criminal prosecution" is based upon a document attached as Exhibit 7 of his complaint, which is a September 19, 2002 letter to Mr. Frank's attorney from Assistant United States Attorney ("AUSA") Richard L. Murphy. This letter does not support Mr. Frank's allegation. First, nothing in that letter evidences any acceptance by Mr. Murphy of Mr. Frank's unilateral demand for payment of storage fees. Second, in that letter, Mr. Murphy does not, as suggested by Mr. Frank, threaten Mr. Frank with criminal prosecution. Rather, Mr. Murphy requests that Mr. Frank (1) provide the Government with descriptions, photographs, and location of any vehicles Mr. Frank intends to declare abandoned so that steps may be taken to retrieve the vehicles, and (2) "take no action with regard to the vehicles and property which are subject to the pending forfeiture indictment without first obtaining approval of the United States." Comp. Ex. 7. Mr. Murphy's also informs Mr. Frank's attorney that "[a]ny action to transfer the property or other action which could result in damage or diminution in value of the property subject to the forfeiture indictment, could constitute a violation of Title 18, U.S.C. § 2232." Id. Mr. Frank's suggestion that the United States threatened him with criminal prosecution is specious and should be rejected.

Mr. Frank's complaint also fails to identify any Government official with whom Mr. Frank allegedly entered into a contract.[8] The party asserting the existence of a contract with the United States bears the burden of establishing that the person upon whose alleged promises or representations the party relied had the requisite actual contracting authority. Heckler v. Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); see Grundy v. United

[8] While Exhibit 7 of the complaint is a copy of a letter from AUSA Murphy, Mr. Frank's complaint does not identify Mr. Murphy as a Government official who accepted the terms of Mr. Frank's unilateral demand.

States, 2 Cl. Ct. 596, 599 (1983) ("claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose").

A party's failure to allege the name of a Government official with arguable authority to bind the Government is grounds for dismissal "because it would be impossible for plaintiffs to prove that actual authority existed for an agent whom they cannot identify." Sartori v. United States, 58 Fed. Cl. 358, 362 (2003) (plaintiff's failure to name EPA official with whom they dealt compounded by failure to allege that such person had the requisite authority was fatal to claim).

The requirement of actual authority is critical because the Government, unlike private parties, cannot be bound by the apparent authority of its agents. Roy v. United States, 38 Fed. Cl. 184, 187, appeal dismissed, 124 F.3d 224 (Fed. Cir. 1997). The rationale for this rule is obvious:

> The United States Government employs close to three million civilian employees. If all Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable. El Centro, 922 F.2d at 820-21; see Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept"). When a Federal employee exceeds his or her

authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990).

Actual authority must be delegated specifically and explicitly, either by Congress or through agency rule-making. El Centro, 922 F.2d at 820. The authority to contract is delegated by the President to the head of a Federal agency. 48 C.F.R. § 1.601. Contracting officers can only bind the United States "to the extent of the authority delegated to them" by the agency head. 48 C.F.R. § 1.602-1(a); accord Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384 (1947); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998).

Assuming for the sake of argument Mr. Frank, in his response, identifies Mr. Murphy as the Government employee who accepted Mr. Frank's unilateral demand, Mr. Murphy does not have the requisite authority to accept, upon behalf of the United States, Mr. Frank's unilateral demand. Included in the appendix to this motion is a declaration from Mr. Murphy establishing that he does not have (and never has held) a contracting officer's warrant. A 82. Indeed, as set forth in his declaration, Mr. Murphy's authority to procure goods or services is limited to Certified Invoice Procedure ("CIP") authority for purchase of litigation expenses up to $2,500, an amount far below the $282,000 to $394,800 estimated by plaintiff to be due under the alleged contract. See Comp. Ex. 9. Accordingly, any attempted reliance upon the authority of Mr. Murphy to bind the Government in contract should be rejected. See also Khairallah v. United States, 43 Fed. Cl. 57, 64 (1999) (government employee does not have authority to "bind the agency to open-ended promises"); Toranzo-Claure v. United States, 48 Fed. Cl. 581, 584 (2001)

("lack of specificity" over compensation terms militated against finding alleged oral or implied-in-fact contract existed with informant).[9]

Nor can Mr. Frank properly assert that Mr. Murphy had implied actual authority to bind the Government. Such authority may be "implied when such authority is considered to be an integral part of the duties assigned to a Government employee." Roy, 38 Fed. Cl. at 189 (quoting H. Landau & Co. v. United States, 886 F.2d 322, 324 (1989)). "Integral" duties have been interpreted to mean duties that are "essential" or "necessary to form a whole." Id. Thus, the fundamental question here is whether making binding contracts for reimbursement of vehicle storage fees is "integral" to the duties of the AUSA involved in this case.

In a series of cases, the Federal Circuit and this Court have established that such duties are not integral to an AUSA. See Gary v. United States, 67 Fed. Cl. 202, 215 (2005) ("The authority to make contracts for the payment of money, other than formal agreements to settle civil claims against the United States, see 28 C.F.R. §§ 0.160, 0.161, and 0.168, however, is not an integral part of those duties. Therefore, the agents with whom plaintiff allegedly contracted lacked the requisite implied authority to make an agreement obligating the United States to pay money"); Tracy v. United States, 55 Fed. Cl. 679, 684 (2003) (rejecting plaintiff's contract claim

---

[9] We also have included in our appendix a declaration of Charles W. Larson, Sr., United States Attorney, Northern District of Iowa, and Marty McLaughlin, Assistant United States Attorney, Northern District of Iowa. A 84-87. Mr. Larson's name appears just above Mr. Murphy's signature on Mr. Murphy's September 19, 2002 letter. Comp. Ex. 7. Mr. McLaughlin's name appears on various letters from plaintiff included as exhibits to the complaint. Comp. Ex. 8-9. Assuming for the sake of argument Mr. Frank argues that these letters somehow raise an issue as to whether Messrs. Larson or McLaughlin "accepted" plaintiff's unilateral demand, the declarations of these two individuals establishes that they, like Mr. Murphy, lack authority to bind the Government in contract, with the exception of the limited CIP authority for purchase of litigation expenses up to $2,500. A 84, 86.

because he presented "'no documents whatsoever' that indicate that U.S. Attorney Gil either had authority to enter into such a contract, or intended to enter into such a contact"); McAfee v. United States, 46 Fed. Cl. 428, 435-38 (2000) (rejecting plaintiffs' multiple arguments for implied actual authority, stating "[p]laintiffs have failed to assert facts showing that authority to contract for intermediaries is necessary or essential to the successful performance of the AUSA's and/or USA's duties"); see also Sanders v. United States, 252 F.3d 1329, 1336 (Fed. Cir. 2001) (authority of Assistant United States Attorney should not be implied); Doe v. United States, 100 F.3d 1576, 1585 (Fed. Cir. 1996) (holding that informant's implied-in-fact contract claim failed because "[n]o allegation was made, nor do the facts suggest anything that would support an allegation, that 'such authority [to make binding contracts for rewards] is considered to be an integral part of the duties assigned to [customs agents or AUSAs]'") (citation omitted) (alterations in original); Awad v. United States, 61 Fed. Cl. 281, 286 (2004) (authority of Assistant United States Attorney should not be implied); Houston v. United States, 60 Fed. Cl. 507, 512 (2004) (same).

To the extent Mr. Frank failed to inquire from the Government employees with whom he dealt regarding their authority to bind the Government in contract, Mr. Frank assumed the risk that such employees lacked requisite authority. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority . . . this is so even though . . . the agent may have been unaware of the limitations upon his authority." Merrill, 332 U.S. at 384. Thus, Mr. Frank, and his attorney, failed to meet the "significant burden" placed upon them in negotiating an agreement to ensure that the Federal officials with whom they dealt had actual

authority. Cruz-Pagan v. United States, 35 Fed. Cl 59, 60 (1996). Where "none of the officials with whom plaintiff[s] conceivably dealt" were authorized to contract in the manner alleged, his breach of contract claim against the Government must clearly fail. Cornejo-Ortega v. United States, 61 Fed. Cl. 371, 374 (2004).

Pursuant to 28 C.F.R. § 0.111(i), the authority to seize, maintain and dispose of Federally forfeited property in the United States Department of Justice Asset Forfeiture Program lies exclusively with the Director of the United States Marshals Service. Mr. Frank's complaint and his attached exhibits contain no allegation suggesting that a United States Marshals Service contracting officer with "actual authority to bind the [G]overnment in contract," ever entered into a contract with Mr. Frank upon behalf of the Marshals Service. El Centro, 922 F.2d at 820. Although Mr. Frank's attorney addressed a second demand letter, dated August 4, 2005, jointly to AUSA McLaughlin and then Acting United States Marshal Roger Arechiga, Mr. Frank's complaint does not allege that he or his attorney had any conversations with Mr. Arechiga regarding Mr. Frank's alleged contract. Comp. Ex. 9. Moreover, the August 4, 2005 letter could not possibly represent evidence of Mr. Frank's alleged 2002 contract because, according to Mr. Frank's complaint, the alleged implied-in-fact contract with the Government would have been in existence for nearly three years from the date of the August 4, 2005 letter. Comp. ¶ 11.

Finally, we note that the August 4, 2005 letter submitted to the United States Marshals Service included a purported claim submitted pursuant to the Contract Disputes Act. Comp. Ex. 9. However, the mere fact that Mr. Frank submitted what he deemed to be a claim to the Government does not somehow create a contract where a contract otherwise does not exist. For the Contract Disputes Act to apply, there first must be a contract between plaintiff and the United

States. 41 U.S.C. § 602(a). Because Mr. Frank has failed to establish the existence of a contract, his submission of a "claim" to the Government was of no legal moment.

Mr. Frank has failed to allege anything more than conclusory statements regarding the existence of a contract between himself and the Government. Mr. Frank likewise has failed to identify a Government official with whom he dealt who had authority to bind the Government in contract. Because Mr. Frank cannot establish the existence of a contract with the United States, his contractual claims should be dismissed for lack jurisdiction pursuant to RCFC 12(b)(1).

IV. The Court Lacks Jurisdiction To Consider Plaintiff's Contract Claim Premised Upon An Alleged Contract Entered By The United States In Its Sovereign Capacity

Assuming for the sake of argument that Mr. Frank somehow could establish the existence of a contract with the United States, Mr. Frank's contractual claim should be dismissed because the waiver of sovereign immunity for contract claims is limited to contracts executed by the United States in its proprietary capacity. Horowitz v. United States, 267 U.S. 458, 461 (1925); Kania, 227 Ct. Cl. at 466, 650 F.2d at 269; Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001).

As the Court of Claims explained,

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of the minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves.

Kania, 227 Ct. Cl. at 464, 650 F.2d at 268.

In assessing the nature of the contractual relationship, the Court examines the Government's actions "when it entered into the contract or agreement at issue." Doe v. United States, 37 Fed. Cl. 74, 77 (1996). The nature of any purported relationship between Mr. Frank and the Government arose through initiation of criminal forfeiture provisions. 21 U.S.C. § 853. There can be little dispute that this purported relationship arose solely in the context of criminal law enforcement proceedings. Indeed, Mr. Frank filed a third-party petition with the United States district court, challenging the Government's criminal forfeiture proceedings, which he subsequently dismissed. A 57, 80. The United States engages in law enforcement exclusively in its sovereign capacity. See, e.g., Gary v. United States, 67 Fed. Cl. 202 (2005); Pappas v. United States, 66 Fed. Cl. 1 (2005), aff'd ___ F.3d ___, Slip Op. No. 05-5151 (Fed. Cir. Mar. 9, 2006) (unpublished); Drakes v. United States, 28 Fed. Cl. 190, 193-94 (1993); see Sadeghi v. United States, 46 Fed. Cl. 660, 662-63 (2000) ("Because administering the criminal justice system is an action that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages").

There is no private analogue for the Government's conduct of its law enforcement activities. Kania, 227 Ct. Cl. at 465-66, 650 F.2d at 268; see Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997) (purported failure of agency to take enforcement action has no private analogue). Even assuming that the United States entered an alleged contractual relationship with Mr. Frank, which it did not, it was solely through exercise of its sovereign powers and the Court lacks jurisdiction to consider Mr. Frank's contract claim. Accordingly, plaintiff's contract claim should be dismissed for lack of jurisdiction.

This case involves forfeiture of vehicles that are subject to a preliminary order of forfeiture in a pending Federal criminal forfeiture case. In determining whether to remove the criminally forfeited vehicles from Gardner's Lane, the Government exercised its prosecutorial discretion pursuant to 21 U.S.C. § 853(n), as outlined in the preliminary order of forfeiture dated November 1, 2002. Specifically, pursuant to the terms of the preliminary order of forfeiture, the Government was "entitled" and "authorized" to seize and possess Gardner's Lane and the vehicles, but was not required to do so. Comp. Ex. 3. The Government's actions involve prosecutorial discretion, i.e., an act in the Government's sovereign capacity. Sea Air Shuttle, 112 F.3d at 536.

In Kania, the Court of Claims suggested that this Court may possess jurisdiction to entertain a claim based upon a contract executed by the United States in its sovereign capacity if the Court finds that there was "specific authority . . . to make the agreement obligating the United States to pay money, and [the agreement] spell[s] out how in such a case the liability of the United States is to be determined." 227 Ct. Cl. at 466, 650 F.2d at 264. As established above, the agreement Mr. Frank purportedly entered with the United States plainly does not fall within this exception. Accordingly, the Court should dismiss Mr. Frank's complaint.10

10 To fall within the limited exception to the rule regarding the execution of contracts in the Government's sovereign capacity, a plaintiff also must demonstrate that the that the agreement clearly and unmistakably subjected the Government to monetary liability for any breach. Kania, 227 Ct. Cl. at 466, 650 F.2d at 264; Sanders, 252 F.2d at 1335. "[S]uch liability should not be implied, and could exist only if there was an unmistakable promise to subject the United States to monetary liability." Sanders, 252 F.3d at 1336 (citing Winstar Corp., 518 U.S. 839, 878-80, (1996) (plurality opinion)). "This would require the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power." Id. Mr. Frank likewise fails to allege facts sufficient to establish this factor as well.

V. Plaintiff's Taking Claim Should Be Dismissed

The Takings Clause of the Fifth Amendment mandates "just compensation" when the Federal Government appropriates private property for "public use." U.S. Const. amend V; Bernaugh v. United States, 38 Fed. Cl. 538, 542 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) (table). Before a party may recover compensation pursuant to the Fifth Amendment for a taking, under either a physical invasion (per se) or regulatory taking theory, it must establish a compensable property interest; i.e., a specific interest in physical or intellectual property. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992); Kaiser Aetna v. United States, 444 U.S. 164, 179-80 (1979).

Just as this Court lacks jurisdiction to consider contract claims challenging the Government's actions pursuant to criminal forfeiture proceedings, this Court likewise lacks jurisdiction to consider a Fifth Amendment takings claim based upon that same action. As discussed above in section II, this Court lacks jurisdiction to consider Fifth Amendment takings claims based upon forfeiture of property. Vereda, 271 F.3d at 1375 (Court of Federal Claims lacked jurisdiction to consider a takings claim challenging civil forfeiture because forfeiture statutes provided comprehensive scheme); Gadd, 55 Fed. Cl. at 445 (Court of Federal Claims lacks jurisdiction to consider taking claim based upon federal forfeiture); Crocker v. United States, 37 Fed. Cl. at 198 (no jurisdiction pursuant to the Tucker Act to consider takings claim); Bernaugh v. United States, 38 Fed. Cl. 538 (1997); cf. Froudi v. United States, 22 Cl. Ct. 290 (1991) (holding that Court lacked equitable power to afford relief sought, namely, return of property, but retaining jurisdiction to consider just compensation claim); Bowman v. United States, 35 Fed. Cl. 397 (1996) (holding that Court lacks jurisdiction to entertain a challenge to a

district court's judicial decree of forfeiture, but speculating in dictum that, in different circumstances, the court may possess "illegal exaction jurisdiction" over challenges to civil forfeitures).11

As noted by this Court in Crocker,

> A valid forfeiture involves the regulation of property and "seeks to prevent the continued use of private property in ways detrimental to organized society." Eversleigh v. United States, 24 Cl. Ct. 357, 359 (1991) (citing Noel v. United States, 16 Cl. Ct. 166, 170 (1989)). This court has held on numerous occasions that a valid forfeiture under the nation's drug laws is regulatory in nature and does not implicate the Takings Clause.

37 Fed. Cl. at 175 (citations omitted).

As established above, Congress has expressly designated exclusive jurisdiction for determining third party interests in criminally-forfeited property in the district courts. See 21 U.S.C. §§ 853(k) and (n). Given that a key element of Mr. Frank's takings claim is his ability to establish ownership of the property at Gardner's Lane (in addition to his complaints regarding the manner in which the Government has conducted the criminal forfeiture), any consideration of his complaints regarding the Government's actions belong in district court, not here.

Assuming for the sake of argument that the criminal forfeiture provisions do not provide exclusive jurisdiction to the district courts, "[t]his Court's predecessor has cautioned against commingling takings compensation and contract damages." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001). "In such instances, interference with

11 The Court in Crocker considered the Court's decision in Froudi and declined to follow it, holding instead that "the proper forum to correct a defective exercise of sovereign powers, at least with respect to forfeitures, is the district court." 37 Fed. Cl. at 196. Neither Froudi nor Bowman provide a proper basis for concluding that this Court has jurisdiction to consider Mr. Frank's claim.

such contractual rights generally gives rise to a breach claim not a taking claim." Hughes Communications, 271 F.3d at 1070 (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)); see J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969); Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269, 274 (1992); Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338-39 (1989).

Remedies for alleged infringement of any rights established contractually generally lie in contract, not the Fifth Amendment, as it is the terms of the contract that govern the parties' respective rights and obligations. Sun Oil, 215 Ct. Cl. at 769-70, 572 F.2d at 818; see Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703 n.27 (1949) (if there is contract remedy, party cannot pursue takings claim in this Court); Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392, 404 (1998) ("if the government's actions allegedly breached a contract, the appropriate remedy is a breach of contract claim, not a claim for compensation pursuant to the Takings Clause").

As noted by the Court, when a party alleges "an entitlement to compensation created by a contractual arrangement, any right to compensation depends entirely on the enforceability of that agreement." Howard v. United States, 31 Fed. Cl. 297, 315 n.14 (1994) (citing Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338- 39 (1989) (quoting Sun Oil, 215 Ct. Cl. at 770, 572 F.2d at 818). Here, the Government did not "take" Mr. Frank's property. Rather, according to plaintiff, the Government allegedly has stored Federally-forfeited vehicles upon Federally-forfeited property which Mr. Frank claims to own. Comp. ¶ 27. Indeed, the "compensation" Mr. Frank seeks is the same compensation he seeks for the alleged breach of contract damages – "a reasonable amount per day per vehicle until removed from the property." Comp. Prayer For

Relief immediately following ¶ 28). For all the reasons discussed in sections III through V above, any alleged agreement between Mr. Frank and the Government is unenforceable.

Moreover, for Mr. Frank to maintain an action based upon a Fifth Amendment taking, he "must be concede the validity of the government action which is the basis of the taking claim." Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 803 (Fed. Cir. 1993) (citing Florida Rock Indus. Inc. v. United States, 791 F.2d 893, 899 (Fed. Cir. 1986)). This is because for the United States be held liable for taking by federal officers pursuant to Fifth Amendment and 28 U.S.C. § 1491, it is required that the acts of officers be authorized, expressly or by implication. Langenegger v. United States, 756 F.2d 1565, 1572 (Fed. Cir. 1985) (citing Regional Rail Reorganization Cases, 419 U.S. 102, 127 (1974)); Armijo v. United States, 229 Ct. Cl. 34, 37, 663 F.2d 90, 93 (1981); Landers v. United States, 39 Fed. Cl. 297, 302 (1997).

Here, Mr. Frank contests the Government's forfeiture of Gardner's Lane, claiming that he is the rightful owner. He also alleges that the Government unlawfully breached an alleged agreement to pay storage fees. Any challenge to the propriety or lawfulness of the Government's action in the criminal forfeiture is beyond the jurisdiction of this Court to consider. Noel v. United States, 16 Cl. Ct. 166, 170 (1989) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 609, 372 F.2d 1002, 1010 (1967).

VI. This Court Lacks Jurisdiction To Issue The Requested Injunctive Relief

Count IV of Mr. Frank's complaint requests that the Court issue "an injunction requiring the United States of America to remove the vehicles from the property." Comp. Prayer for Relief immediately following ¶ 30. This Court's jurisdiction to issue such declaratory relief is very limited. United States v. King, 395 U.S. 1 (1969) (Court's jurisdictional statutes generally do not

grant court power to issue injunctive or declaratory relief unless relief is incident and subordinate to monetary claim or otherwise is authorized by statute).

"Although Congress has authorized the Court of Federal Claims 'to grant equitable relief in certain limited circumstances, those circumstances do not include the general authority to grant equitable relief whenever a declaratory judgment or an injunction would assist a claimant in obtaining monetary benefits in another forum.'" Buong Van Ho v. United States, 52 Fed. Cl. 664, 666 (2002) (quoting Nat'l Air Traffic Controllers Assn. v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998)). Mr. Frank has not established, and cannot establish, an independent basis of jurisdiction for this Court to consider his claim for equitable relief. As such, Mr. Frank's claim for equitable relief should be dismissed. See Austin v. United States, 206 Ct. Cl. 719, 723 (1975) ("we have no authority to enter a declaratory judgment or to grant affirmative nonmonetary relief unless it is tied and subordinate to a monetary award").

Indeed, the specific relief sought here, i.e., removal of vehicles from the property, is one more properly addressed through an ancillary hearing in the district court. 21 U.S.C. §§ 853(k) & (n).

## CONCLUSION

For these reasons, defendant respectfully requests that its motion to dismiss be granted and that plaintiff's complaint be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

LUCILLE C. ROBERTS
Deputy General Counsel
United States Marshals Service
Washington, D.C.

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

May 25, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 25, 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS," "APPENDIX VOLUME ONE," "APPENDIX VOLUME TWO," and "APPENDIX VOLUME THREE" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON