No. 06-73C
(Senior Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT J. FRANK,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# APPENDIX VOLUME ONE
# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

LUCILLE C. ROBERTS
Deputy General Counsel
United States Marshals Service
Washington, D.C.

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

MAY 25, 2006

# INDEX TO APPENDIX

Page(s)

October 30, 2000 Indictment . . . . . 1

January 31, 2003 Judgment . . . . . 50

November 20, 2002 petition filed by Robert J. Frank (including exhibits 1-3) . . . . . 57

July 9, 2003 letter to Dubuque County Recorder . . . . . 78

Undated dismissal of petition filed by Robert J. Frank . . . . . 80

Declaration of Richard L. Murphy . . . . . 82

Declaration of Marty McLaughlin . . . . . 84

Declaration of Charles W. Larson, Sr. . . . . . 86

FILED
U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA
OCT 30 2000
CEDAR RAPIDS HDQTRS. OFFICE
BY [signature]

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | No. CR 00-1015 MJM |
| vs. | **COUNTS 1-22**: 18 U.S.C. § 1341 |
| ROBERT H. FRANK, a/k/a "Butch" Frank, KIMBERLY K. WELCH, and LORIN A. AHLERS, Defendants. | **COUNTS 23-27**: 18 U.S.C. § 1343 |
| | **COUNT 28**: 18 U.S.C. § 371 |
| | **COUNTS 29-44**: 18 U.S.C. § 1001 |
| | **COUNT 45**: 18 U.S.C. § 1503 |
| | **COUNTS 46-49**: 18 U.S.C. § 1956 |
| | **COUNT 50**: 18 U.S.C. § 982 |
| | ~~COUNT : 18 U.S.C. §~~ |

## INDICTMENT

The Grand Jury charges:

## MAIL AND WIRE FRAUD

## COUNTS 1-27

### A. INTRODUCTION

1. a. On about September 12, 1984, Patricia Sue Frank petitioned for divorce from defendant, ROBERT H. FRANK (hereafter "ROBERT H. FRANK" or "FRANK"), in Iowa District Court in and for Dubuque County, in cause No. DM-5025.

b. On about October 3, 1984, Patricia Sue Frank spoke with ROBERT H. FRANK by telephone. In that conversation FRANK stated, ". . . if you're going to try and bleed me, then you might just as well go to your courts and do your thing and then I'll settle this sonofabitch. But remember one thing. When you sign them papers and take everything away from me . . . you are also signing your life. Because that is what this comes down to. The man that steals everything from me, I'm going to settle with."

c. On about March 4, 1985, Judge Nelson entered a default divorce decree in DM-5025 which awarded a substantial portion of the Frank family property to Patricia Sue Frank, including cash, savings and checking accounts, two apartment buildings, and several acres of land.

d. On about May 7, 1985, ROBERT H. FRANK told his wife by telephone, "he would show . . . how very powerful he really was, and he would deal with any man that tried to take everything away from him."

e. On about May 8, 1985, a state court injunction was issued to keep ROBERT H. FRANK off the property awarded to Patricia Sue Frank by the March 4, 1985, default divorce decree.

f. On about May 10, 1985, Judge Nelson's home in Dubuque,

Iowa, was destroyed by explosion and fire.

g. On about February 6, 1986, the final decree of divorce was entered in the Frank divorce. The marriage was ordered dissolved and the property was ordered divided between ROBERT H. FRANK and Patricia Sue Frank.

h. On about September 13, 1986, ROBERT H. FRANK was arrested on State of Iowa criminal charges related to the arson of Judge Nelson's home in Dubuque.

i. In about April, 1987, ROBERT H. FRANK was acquitted in Iowa District Court of charges brought in relation to the arson of Judge Nelson's home in Dubuque.

j. On about November 19, 1987, ROBERT H. FRANK was indicted, with two others, in United States District Court for the Northern District of Iowa, criminal case No. CR 87-1010, on charges relating to the arson of Judge Nelson's home in Dubuque.

k. On about February 29, 1988, a United States District Court jury returned guilty verdicts on all counts against ROBERT H. FRANK in Northern District of Iowa case No. CR 87-1010.

l. On about March 31, 1988, ROBERT H. FRANK, was sentenced in United States District Court for the Northern District of Iowa, criminal case No. CR 87-1010. FRANK was sentenced to a period of imprisonment and ordered to pay a special assessment of

$300.00, restitution of $121,600.01 to the Continental Western Insurance Company, restitution of $250.00 to Judge Nelson, and fined $150,000.00.

m. On about April 4, 1988, the Criminal Judgment was filed in Northern District of Iowa criminal case No. CR 87-1010.

n. On about February 6, 1998, ROBERT H. FRANK was released on parole. The conditions of parole require FRANK to "work regularly unless excused" by his Probation Officer. Further, FRANK is required to:

> make a diligent effort to satisfy any fine, restitution order, court costs or assessment, and/or court ordered child support or alimony payment that has been, or may be imposed, and shall provide such financial information as may be requested, by your Probation Officer, relevant to the payment of the obligation. If unable to pay the obligation in one sum, you will cooperate with your Probation Officer in establishing an installment schedule.

2. At all times relevant to this indictment:

a. As victims of ROBERT H. FRANK's crimes, Judge Nelson and his family had an interest in any and all legal proceedings, including criminal proceedings, related to the May 10, 1985, arson of Judge Nelson's home on Clarke Drive in Dubuque, Iowa.

b. As Judge Nelson's insurance company, Continental Western Insurance Company had an interest in any and all legal proceedings, including criminal prosecutions, related to the May 10,

1985, arson of Judge Nelson's home on Clarke Drive in Dubuque, Iowa.

c. The United States District Court for the Northern District of Iowa was responsible for: (1) adjudicating proceedings concerning whether to release a charged defendant on bond; (2) adjudicating proceedings regarding the determination of guilt or innocence in criminal prosecutions; and (3) the determination and imposition of sentence upon those found guilty of having committed a federal criminal offense.

d. The United States Probation Office for the Northern District of Iowa was responsible for conducting pre-sentence investigations to assist the court in determining the appropriate sentence to be imposed upon a defendant convicted of having committed a federal criminal offense.

e. The United States Department of Justice, an agency of the United States, through the United States Bureau of Prisons, was responsible for the administration and execution of criminal sentences which included incarceration as part of the sentence. With respect to the financial portion of a defendant's sentence, the Bureau of Prisons was responsible for attempting to collect on the judgment from a defendant, through encouraged participation in the Inmate Financial Responsibility Program and other means.

f. The United States Parole Commission and the Administrative Office for the United States Courts, agencies of the United States, through the United States Probation Office for the Northern District of Iowa, were responsible for the post-release supervision of defendants sentenced in the Northern District of Iowa and for the administration and execution of the post-release portion of any such sentence. With respect to the financial portion of a defendant's sentence, the Parole Commission and Probation Office were responsible for assessing a defendant's ability to make payments on the judgment, based in part upon information provided by the defendant, and encouraging a defendant to comply with the terms of parole.

g. The United States Department of Justice, an agency of the United States, through the United States Attorneys Office for the Northern District of Iowa, was responsible for the monitoring and collection of financial judgments imposed upon convicted defendants by the United States District Court in the Northern District of Iowa. This function is performed throughout the term of a defendant's sentence, including during any period of incarceration or post-release supervision.

h. In order to determine a charged defendant's eligibility for bond; in order to determine the appropriate sentence including any

financial judgment to be imposed upon a convicted defendant; in order to administer and execute a sentence imposed by the court; in order to properly supervise and monitor a sentenced defendant; and in order to collect upon any financial judgment ordered by the court, it was essential that the United States and each of its agencies receive complete, accurate and current information concerning a defendant's financial condition, assets and earning potential.

i. Inaccurate, false, misleading or incomplete reporting of a defendant's assets, financial condition or earning potential hinders the effective administration of justice by those responsible for the determination of bond and for the imposition, execution, administration and supervision of a sentence. Inaccurate, false, misleading or incomplete reporting of financial information or transactions also hinders the collection of a financial judgment ordered as part of a sentence imposed upon a convicted defendant.

**B. PURPOSE OF THE SCHEME AND ARTIFICE DEFRAUD**

From about May 10, 1985, and continuing through about the present date, defendants, ROBERT H. FRANK, a/k/a "Butch Frank", KIMBERLY K. WELCH, and LORIN A. AHLERS, devised and intended to devise; and participated in, executed, and intended to execute, a scheme and artifice to defraud Iowa District Court Judge

Thomas Nelson; The Continental Western Insurance Company; the United States; and others, related to defendant's actual and potential financial responsibility for the May 10, 1985, arson of Judge Nelson's home in Dubuque, Iowa. In particular, defendants devised a scheme to conceal ROBERT H. FRANK's true assets, income and earning potential to avoid repayment or collection upon the criminal judgment filed on or about April 4, 1988, in Northern District of Iowa criminal case No. CR 87-1010.

## C. THE SCHEME AND ARTIFICE

In furtherance of defendants' scheme to defraud, ROBERT H. FRANK transferred or gave assets in which he had an ownership interest, to others, for little or no consideration. ROBERT H. FRANK conducted these so-called "fraudulent transfers" of real and personal property to give the appearance that he did not maintain a financial interest in said property. ROBERT H. FRANK enlisted the services and assistance of others to conduct personal and business transactions, including financial transactions, in a manner that concealed FRANK's true personal involvement and financial interest in those transactions. Further, ROBERT H. FRANK, KIMBERLY K. WELCH, LORIN A. AHLERS, and others on their behalf, made false, misleading and incomplete statements and reports, to the United States and others, regarding ROBERT H. FRANK's income, assets, earning potential and true financial interest in a variety of personal and business transactions and assets. It was part of the scheme to defraud that ROBERT H. FRANK would acquire assets using straw purchasers or nominee names to conceal his true ownership interest in those assets. ROBERT H. FRANK and KIMBERLY K. WELCH formed a shell business called "K.W. Sales," in an attempt

to legitimize their fraudulent dealings and to conceal ROBERT H. FRANK's income and true financial interest in numerous "business" transactions of "K.W. Sales." KIMBERLY K. WELCH used her checking account at EDSB to launder income and financial proceeds attributable to ROBERT H. FRANK. Financial transactions were frequently conducted with or converted to cash in an effort to conceal the transfer of the proceeds of fraudulent activity. Vehicle sales receipts and registrations were often falsified in an effort to conceal the actual purchase price of a vehicle. Finally, ROBERT H. FRANK made no payments or only nominal payments on his court-ordered financial judgment, despite being financially able and obligated to pay more.

### D. EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

The scheme and artifice to defraud was carried out, in part, as follows:

1. On about October 1, 1986, ROBERT H. FRANK testified about the value of his assets an Iowa state court bond hearing arising from the state court criminal charges brought against him. FRANK stated he owned 10-12 "unimproved" lots in the city of Dubuque. FRANK also stated he owned a residence at 796 Cleveland Avenue and a twelve-stall body shop at 2819 Pinard Street in Dubuque. FRANK claimed to own two houses, a single-car garage, a double-stall garage, a 14 by 70 foot mobile home, some old cars, a 30 by 80 foot shop, and seven acres of land — all on Gardener's Lane in Dubuque. In addition, FRANK stated he owned a four bedroom home on Frentress Lake in East Dubuque, Illinois. FRANK stated all of his real estate was paid for and unencumbered by mortgages.

FRANK stated he also owned an undetermined amount of personal property, including cars, trucks and boats, which he valued at $75,000 to $100,000. FRANK claimed to have other personal property valued in excess of $20,000. FRANK estimated his net worth at the time (following the divorce settlement) as "easily" between $300,000 and $400,000. FRANK acknowledged he had previously transferred ownership of the East Dubuque Auto Parts store to his son. This business was valued at $200,000.

2. On about October 24, 1986, ROBERT H. FRANK gave his son, Robert J. Frank, Power of Attorney to conduct FRANK's affairs.

3. On about January 6, 1987, ROBERT H. FRANK transferred 8 parcels of real property to his son to Robert J. Frank, through Robert J. Frank as "Attorney-in-Fact." Property records show this transaction was for "$10.00 and other good and valuable consideration."

4. On about November 1, 1987, ROBERT H. FRANK transferred his Frentress Lake, Illinois home to his nephew, James J. Hancock, for $1.00.

5. On about November 16, 1987, ROBERT H. FRANK, by "Attorney-in-Fact" Robert J. Frank, transferred two lots in the City of Dubuque to Robert J. Frank by Quit Claim Deed. Property records show this transaction was for "consideration of less than $500.00."

6. On about November 16, 1987, R & P Limited, an Iowa corporation originally incorporated by ROBERT H. FRANK and Patricia Sue Frank,

which operated an auto rebuilding business, transferred three lots in the City of Dubuque to Robert J. Frank, by Quit Claim Deed. Property records show this transaction was for "ten dollars and other good and valuable consideration" -- "Consideration of less than $500.00."

7. On about December 21, 1987, ROBERT H. FRANK secured his release on a $250,000.00 secured bond in Northern District of Iowa case No. CR 87-1010, after arranging for property FRANK had recently transferred to his son and his nephew to be posted as security for the bond.

8. In about early March, 1988, in connection with the pre-sentence investigation being conducted in Northern District of Iowa case No. CR 87-1010, ROBERT H. FRANK advised the United States Probation Office that he had "nothing" and that his son owned everything that FRANK used to have. FRANK returned a blank financial statement to the Probation Office.

9. While incarcerated following his federal convictions, FRANK made payments totaling approximately $325.00 on his court-ordered financial obligations, as follows:

| | |
|---|---|
| 07-29-88 | 25.00 |
| 12-29-88 | 25.00 |
| 01-30-89 | 25.00 |
| 05-09-89 | 25.00 |
| 01-12-95 | 25.00 |
| 04-15-95 | 25.00 |
| 07-15-95 | 25.00 |
| 09-20-95 | 25.00 |
| 09-06-96 | 25.00 |

| | |
|---|---|
| 12-02-96 | 25.00 |
| 03-03-97 | 25.00 |
| 06-02-97 | 25.00 |
| 09-02-97 | 25.00 |

10. On about June 20, 1998, ROBERT H. FRANK used a $500.00 check drawn on the account of Clara Frank to purchase a 1988 Ford Econoline van from Dan Kruse Pontiac in Dubuque, Iowa.

11. On about July 2, 1998, ROBERT H. FRANK submitted a written financial statement to the Department of Justice, United States Attorney's Office, Cedar Rapids, Iowa, in which FRANK claimed to have no assets other than an $800 Chevy Metro and a boat which was given to him.

12. On about July 13, 1998, ROBERT H. FRANK opened a checking account in his own name at East Dubuque Savings Bank (hereafter "EDSB").

13. On July 13, 1998, ROBERT H. FRANK completed a sworn affidavit entitled "Application for Services" to "Titles Unlimited, Inc." and "Pinson Valley Auto Sales," of Alabama, seeking issuance of a new title for a 1954 Chevrolet Corvette, which FRANK claimed to own. On the application, FRANK stated that the vehicle was not encumbered and was not registered to another party. FRANK also swore he was not using Pinson Valley Auto Sales for any fraudulent purpose. The affidavit also contained a "Bill of Sale" purporting to sell the Corvette to Pinson Valley Auto Sales on July 16, 1998 for "$100.00." The affidavit was notarized by Steven J. Bonnet.

14. On July 13, 1998, EDSB issued a $200.00 money order, signed by Steven J. Bonnet, to Richard C. Weaver, owner of Pinson Valley Auto Sales, for costs associated with obtaining an Alabama vehicle title for the 1954 Corvette. The remitter for the check was ROBERT H. FRANK.

15. On July 21, 1998, an Alabama vehicle registration tag was issued for the 1954 Corvette showing Pinson Valley Auto Sales as the owner, acquiring the vehicle from ROBERT H. FRANK on July 16, 1998.

16. On about July 22, 1998, Pinson Valley Auto Sales issued a bill of sale showing the sale of the 1954 Corvette to ROBERT H. FRANK.

17. On about July 28, 1998, an Iowa certificate of title was issued for the 1954 Corvette in the name of ROBERT H. FRANK, 1030 West 5th St., Dubuque, Iowa, showing Pinson Valley Auto Sales as the previous owner.

18. On about August 17, 1998, ROBERT H. FRANK purchased a 1987 Chevrolet Blazer from B&G Auto Sales in East Dubuque, Illinois for $300.00.

19. On about August 19, 1998, ROBERT H. FRANK purchased a 1992 Chevrolet Blazer, a 1986 Chevrolet Spectrum, and a 1985 Pontiac Grand Am from Dan Kruse Pontiac in Dubuque, Iowa, under the name "River City Auto Sales." FRANK wrote a $3,000.00 personal check from his checking account at EDSB for the vehicles.

20. On about August 19, 1998, ROBERT H. FRANK deposited to his own checking account at EDSB a $3,000.00 check from River City Auto Sales.

21. On about August 25, 1998, ROBERT H. FRANK deposited to his own checking account at EDSB a $600.00 check from Valentine Brothers Body Shop for "body work" performed by FRANK.

22. On about August 27, 1998, a request for advertisement was submitted to the Wheeler Dealer Magazine in Dubuque, Iowa, in the name of ROBERT FRANK, to advertise the 1954 Corvette for sale. The ad listed two contact phone numbers: 319-583-6350 which was registered to FRANK's mother and 815-747-2162 which was registered to FRANK'S girlfriend, KIMBERLY K. WELCH.

23. On about September 22, 1998, according to a handwritten receipt prepared by ROBERT H. FRANK, "Butch (Robert) Frank" sold the 1954 Corvette to "Bob Frank" for $1.00.

24. On about September 22, 1998, EDSB issued a loan check to "Jacqueline Schoenauer" for $3,000.00, to be used to purchase a 1985 Pontiac Grand Am from ROBERT H. FRANK. FRANK had referred Schoenauer to Steve Bonnet of EDSB, for the loan. FRANK co-signed the loan.

25. On about September 23, 1998, ROBERT H. FRANK sold the1985 Pontiac Grand Am to "Jacqueline Schoenauer, 2111 Windsor, Dubuque, Iowa," for $3,000.00. The name of the seller on the vehicle title was "River City Auto Sales."

26. On about September 23, 1998, KIMBERLY K. WELCH negotiated the $3,000.00 EDSB loan check at EDSB. WELCH received cash for the

check. The check had been endorsed by Jacqueline Schoenauer and WELCH.

27. On about September 30, 1998, ROBERT FRANK gave false testimony under oath regarding his financial condition, in a debtor's examination conducted in federal court.

28. On about October 6, 1998, ROBERT H. FRANK assigned ownership of the 1954 Corvette to his son, "Bob Frank, 531 Heller Dr. East Dubuque, Illinois," on the back of the original Iowa vehicle title.

29. On about October 8, 1998, ROBERT H. FRANK purchased a 1987 Ford Bronco II at the Tri-State Auto Auction under the name "River City Auto Sales."

30. On about October 30, 1998, an Illinois vehicle title was issued to Robert J. Frank, 531 Heller Dr., East Dubuque, Illinois, for the 1954 Corvette.

31. On about November 4, 1998, LORIN A. AHLERS sold the1987 Chevrolet Blazer, to Richard Langkamp for $2,300.00. Langkamp paid for the truck by giving AHLERS a check made payable to AHLERS for the purchase price.

32. On about November 5, 1999, LORIN A. AHLERS caused the $2,300.00 check from Langkamp to be negotiated at Mercantile Bank, 2201 Jackson, in Dubuque, Iowa. AHLERS receive $2,300.00 cash for the check.

33. On about November 4, 1998, ROBERT H. FRANK closed his checking

account at EDSB.

34. On about December 3, 1998, ROBERT H. FRANK purchased a 1986 Ford Aerostar van at the Tri-State Auto Auction, for a total price of about $190, using the dealership name "River City Auto Sales." The vehicle title was transferred to River City Auto Sales on about December 28,1998.

35. On about December 30,1998, title to the 1992 Chevrolet Blazer was assigned to "Kimberly Kay Welch, 1030 West 5th Street, Dubuque, Iowa" from "River City Auto Sales." The application for certificate of title showed "Kimberly Kay Welch" paid $800.00 for the vehicle.

36. On about December 31, 1998, title to the 1987 Ford Bronco II purchased at the Tri-State Auto Auction under the name "River City Auto Sales," was assigned to "Kimberly Kay Welch" from "River City Auto Sales." The application for certificate of title showed "Kimberly Kay Welch" paid $150.00 for the vehicle.

37. On about January 4, 1999, title to the 1986 Ford Aerostar van was transferred to "Gary Trierweiler" from "River City Auto Sales."

38. On about January 5, 1999, title to the 1986 Chevrolet Spectrum was assigned to "Jackie Schoenauer, 1211 Windsor Ave., Dubuque, Iowa" from "River City Auto Sales."

39. On about February 11, 1999, KIMBERLY K. WELCH deposited to her EDSB checking account, a $3,000 Citizen's Finance check made payable to "K. W. Sales."

40. On about February 16, 1999, KIMBERLY K. WELCH opened her checking account #243004 at EDSB by depositing a $5,000.00 check from Clara Frank.

41. On about February 19, 1999, KIMBERLY K. WELCH applied for a federal employer's identification number for the business "K.W. Sales", 95 Aquin Street, Dubuque, Iowa.

42. On about March 3, 1999, ROBERT H. FRANK was issued a letter of reprimand by the United States Parole Commission regarding FRANK's non-compliance with the conditions of his parole, specifically including, failure to maintain regular employment and failure to make payments toward the fine and restitution.

43. On about March 12, 1999, KIMBERLY K. WELCH submitted a State of Iowa business tax registration form for the business "K.W. Sales", 510 Aquin Street, Dubuque, Iowa.

44. On about March 23, 1999, an order for placement of an advertisement was submitted to the Internet web-site "VetteFinders" by "Kim Welsh" of "58 Aquin, Dubuque, Iowa" using the Internet address, dbq2ptsi@pcii.net. The ad offered a 1954 Corvette for sale for $16,000. The ad listed a contact phone number of 319-588-2358, which was registered to KIMBERLY K. WELCH and an e-mail address of dbq2ptsi@pcii.net. registered to Jacqueline Schoenauer, girlfriend of LORIN A. AHLERS.

45. In about the end of March,1999, Roger Ludwig responded to the

VetteFinders ad by e-mail, requesting additional information from "Kim," concerning the 1954 Corvette.

46. On about March 17, 1999, Roger Ludwig received an e-mail from "Kim Welsh", stating in part, "the vette has been in storage for about twenty years . . . The price of $16,000 is very firm." "Kim" offered to provide pictures.

47. On about March 27, 1999, Roger Ludwig responded by e-mail indicating that he was "seriously interested" in the Corvette and would like more information.

48. Over the course of about the next month, Roger Ludwig exchanged numerous e-mails with the "dbq2ptsi@pcii.net" address and received responses including photos from people identifying themselves as "Kim" and "Lorin."

49. On about April 5, 1999, Sunline Inc., of Cedar Rapids, Iowa, issued a check in the amount of $4,425.00 for work performed on two vehicles by ROBERT H. FRANK. Per FRANK's instructions, the check was made payable to "K.W. Sales."

50. On about April 8, 1999, KIMBERLY K. WELCH endorsed the $4,425.00 check from Sunline, Inc., and deposited it into her checking account at EDSB.

51. On about April 26 1999, LORIN A. AHLERS sold the 1987 Ford Bronco II to Mike Hanfeld in Wisconsin. AHLERS gave Hanfeld a receipt for the

transaction indicating the vehicle had been sold by "Kim Welch" for $1,700. Hanfeld actually paid AHLERS about $2,500.00 to $2,700.00 cash.

52. On about April 29, 1999, Roger Ludwig advised "Kim and Lorin" by e-mail concerning his plans to travel to Dubuque to view and possibly purchase the 1954 Corvette. Ludwig also advised that he planned to pay for the vehicle by cashier's check.

53. On about April 29, 1999, "Lorin" responded to Roger Ludwig by e-mail which included the following:

Make the check out to "Lorin Ahlers." I will have the title and will be able to write out the receipt. If it's not too much trouble can you make out 4 different checks, if it is don't (It just makes them easier to cash).

54. On about April 29, 1999, Roger Ludwig responded by e-mail to "Lorin " inquiring as to why the checks were to be made out to "Lorin" if the car was titled in another name.

55. On about April 30, 1999, Roger Ludwig received the following e-mail:

Roger,
I understand your concern. Kim is a she, she and I are selling the car for someone else who can't receive large sums of money due to circumstances I can't explain. This gentleman will be there to verify the sale. There is nothing illegal about this transaction. Sorry to make this any more difficult than it is.

Lorin Ahlers

56. On about May 1, 1999, LORIN A. AHLERS faxed a copy of the Illinois vehicle title for the 1954 Corvette from Wisconsin to Roger Ludwig in California.

57. On about May 5, 1999, Roger Ludwig traveled to Dubuque and viewed the 1954 Corvette. After discussing the possible purchase of the vehicle with ROBERT H. FRANK and LORIN A. AHLERS, Ludwig returned to California without purchasing the car.

58. On about May 12, 1999, Roger Ludwig received the following e-mail:

Roger, we've got a copy of the original title. Butch has it in Dubuque. We found out the original Iowa title was wrong in the VIN #. The old title is dated 7-3-63. Title number 31-170747, license plate #31-24188. Previous license plate #31-168670. Butch is going down to the courthouse in Dubuque to find out why the old title had the wrong VIN. Send me a phone number where Butch or I can call you.
Lorin

59. On about May 16, 1999, Roger Ludwig received the following e-mail:

Roger, sorry, no luck at the dealership or finding Zuckerman. Butch and I don't know where else to look. Any suggestions wouldn't hurt.
Lorin

60. On about May 23, 1999, Roger Ludwig received the following e-mail:

Roger, we still can't get any more info on the vette, sorry. Butch still wants $16,000 for it, sorry things haven't worked out. We're still going to try to sell it. Good luck finding the right car.
Lorin

61. On about May 26, 1999, Roger Ludwig received the following e-mail:

Roger, Butch says he'll take $15,000 for the vette. Are you interested at that price, it is the middle of what you offered and what he wanted. Please let me know A.S.A.P.
Lorin

62. On about May 31, 1999, Roger Ludwig sent the following e-mail:

Hi Lorin, Got your voice mail too. Sorry I didn't get back sooner. I've been out of town for most of the week. Recall my initial offer was for $12K and Butch simply said no. So I split the difference between 16 and

12 with my $14K offer when I thought I could probably straighten out the title mess. Now it sounds like the title cannot be straightened out. So, even 14 seems a little steep, considering I'd have to pay to ship it back and all. Sorry, keep tryin' and if you cannot sell it then lets talk again.
Sincerely,
Roger

63. On about June 11,1999, a government agent, in an undercover capacity, sent an e-mail message to the dbq2ptsi@pcii.net address requesting more information concerning the 1954 Corvette advertised for sale in VetteFinders.

64. On about June 13, 1999, the undercover agent received photos of the 1954 Corvette via e-mail from dbq2ptsi@pcii.net.

65. On about June 15 , 1999, the undercover agent, using the name "John," requested more information about the car from the dbq2ptsi@pcii.net address.

66. On about June 16, 1999, the undercover agent received the following e-mail:

John,
The car was in storage for about 25 years. We lost storage space due to house being sold. A lot of interest on the car, some offers but not enough (turned down 12,000 cash). One guy was coming to pick it up but his son got sick and had to use the money for doctors and hospital bills. It is not drivable. Original owner traded it on a new car to a Lincoln/Mercury dealership in about 1960 and my friend bought from them at that time. He's owned ever since. The odometer shows 48,203 miles and he says they are original.
LORIN

67. On about June 20, 1999, after the undercover agent had requested further information, the agent received the following e-mail:

John,
16,000 is about the lowest he will go, the car is worth it. We have not tried to get it running and don't wish to, we are afraid of causing irreparable damage to the engine and transmission. The car is and has been inside. The car is located in Dubuque, Iowa. No pictures of the interior, sorry.
LORIN

68. In about mid-June,1999, Pat Cobb expressed interest in purchasing the 1954 Corvette. Cobb exchanged e-mail messages with LORIN A. AHLERS via dbq2ptsi@pcii.net regarding the 1954 Corvette.

69. On about June 22 and June 24, 1999, Pat Cobb traveled to Dubuque, Iowa, to take pictures of the Corvette. Cobb met with LORIN A. AHLERS and made an offer to purchase the vehicle.

70. On about June 28, 1999, LORIN A. AHLERS responded to Pat Cobb via e-mail:

Pat,
I talked to the owner (Butch) about your offer. He said the minimum he would take for the Vette is $15,000. He said that is his bottom dollar. If this works for you let me know, if not sorry.
Lorin

71. On about June 29, 1999, Cobb responded by e-mail indicating he would agree to purchase the Corvette for $15,000.

72. On about June 30, 1999, LORIN A. AHLERS replied to Cobb via e-mail:

Pat,
Thursday after 3p.m. will work for Butch and I. As to payment, It needs to be cash or cashiers checks (5 of them at $3,000, made out to me: Lorin Ahlers) $15,000 is the agreed upon price. Both of us will be there with the title if you want to be there Thursday afternoon. Call me or e-mail me.
Thanks.
Lorin

73. On about July 1, 1999, Pat Cobb traveled to Dubuque to purchase the

Corvette. He met with ROBERT H. FRANK and LORIN A. AHLERS. Cobb gave FRANK five $3,000.00 cashiers checks at the time of the transaction. FRANK signed and gave Cobb the title to the car.

74. On about July 7, 1999, ROBERT H. FRANK sold a 1992 Chevrolet Blazer to Patrick Moore for $3,100.00. Per FRANK's instructions, Moore made the check payable to "Kim Welch."

75. On about July 7, 1999, KIMBERLY K. WELCH deposited the $3,100.00 check from Patrick Moore to her checking account at EDSB. WELCH withdrew $3,100.00 cash from her checking account at about the same time.

76. On about July 8, 1999, ROBERT H. FRANK advised an undercover agent by telephone that he had just sold the corvette advertised on the Internet. However, FRANK advised the agent he had several other cars for sale which need to be restored. These included a '58 El Dorado convertible, a '63 Bonneville convertible, a '62 SS Super Sport, a '63 Falcon convertible, two '66 Buick Skylark convertibles, a '68 or '69 Cutlass convertible, a '69 Firebird convertible, a '58 Buick Century two-door hard-top, a '56 and a '57 Coupe de Ville, a '70 Mustang convertible, a '66 Studebaker and perhaps others. Frank stated, "I'm the guy that's really got control of it."

77. On about July 9, 1999, ROBERT H. FRANK sold the 1986 Chevrolet Spectrum, titled to "Jackie Schoenauer," to Peggy Mihalakis for $1,800.00. FRANK referred Mihalakis to Steve Bonnet of EDSB for a

vehicle loan to purchase the car. EDSB gave Mihalakis a loan and gave ROBERT H. FRANK the $1,800.00 loan check payable to "Robert Frank."

78. On about July 13, 1999, a State of Iowa motor vehicle title was issued to Patrick Cobb for the 1954 Corvette.

79. On about July 14, 1999, KIMBERLY K. WELCH negotiated the $1,800.00 EDSB loan check for cash at EDSB. The check was endorsed by "Robert Frank" and "Kim K. Welch".

80. On about August 9, 1999, ROBERT H. FRANK spoke with an undercover government agent concerning classic cars FRANK was trying to sell. FRANK agreed to arrange for the agent to meet with "Bob" or "Billy" to view the vehicles for sale. When the agent inquired whether FRANK would mind if the agent paid cash, Frank responded, "No. It's the way it's got to be . . . Well that's the way I, I got to do it ."

81. On about August 24, 1999, ROBERT H. FRANK sold the 1986 Ford Aerostar van, titled to "Gary Trieweiler," to Stacy Tompkins and David Huseman for about $2,200.00. FRANK referred Tompkins and Huseman to Steve Bonnet of EDSB for a vehicle loan to purchase the car. EDSB gave Tompkins and Huseman a loan. EDSB issued a $2,200.00 loan check payable to "Kimberly Welch."

82. On about August 26, 1999, KIMBERLY K. WELCH negotiated the $2,200.00 EDSB loan check for cash at EDSB.

83. On September 8, 1999, KIMBERLY K. WELCH negotiated two of the five

$3,000.00 cashier's checks given by Pat Cobb as payment for the 1954 Corvette. WELCH received $6,000.00 cash from EDSB for the checks. The checks were endorsed by LORIN A. AHLERS and KIMBERLY K. WELCH.

84. On about September 14, 1999, LORIN A. AHLERS obtained a State of Iowa photo identification card.

85. On about September 14, 1999, LORIN A. AHLERS, negotiated each of the three remaining $3,000.00 cashier's checks at separate branches of Mercantile Bank in Dubuque, Iowa. AHLERS used his State of Iowa photo identification card as identification when cashing the checks. The $9,000.00 was taken in cash.

86. On about September 23, 1999, ROBERT H. FRANK purchased a 1984 Chevrolet Blazer at the Tri-State Auto Auction for $775.00 under the dealer name "Cross Creek Stables."

87. On about September 23, 1999, ROBERT H. FRANK purchased a 1990 Chevrolet Lumina at the Plaza Auto Auction for $400.00 under the dealer name "River City Auto Sales".

88. On about December 3, 1999, ROBERT H. FRANK assigned title to the 1984 Chevrolet Blazer from "Cross Creek Stables" to "The Auto Center" of Dubuque, Iowa.

89. On about the same day, December 3, 1999, at the request of ROBERT H. FRANK, The Auto Center assigned title to the1984 Chevrolet Blazer to

"Kim K. Welch."

90. On about December 29, 1999, ROBERT H. FRANK, with the assistance of Bill Timmerman and Robert J. Frank, purchased a 1994 Dodge Caravan, using the dealer name "B & G Auto Sales" at the Morton Auto Auction in Morton, Illinois. ROBERT H. FRANK selected the vehicle for purchase and gave Bill Timmerman a $3,620.00 check drawn on KIMBERLY K. WELCH's checking account at EDSB to pay for the vehicle. Timmerman wrote a check to the Morton Auto Auction for $3,520.00 as payment of the vehicle.

91. On about December 29, 1999, ROBERT H. FRANK, operating as "K.W. Sales," purchased a 1995 Dodge Dakota pick-up truck from Jack Simmons, Simmons Auto Sales, outside of the Morton Auction in Morton, Illinois. FRANK led Simmons to believe his name was Kim Welch by giving Simmons a $2,600.00 check drawn by FRANK on the checking account of KIMBERLY K. WELCH at EDSB.

92. On about December 30 , 1999, ROBERT H. FRANK purchased a 1977 Oldsmobile Cutlass from Tri-State Auto Auction. The vehicle was purchased with a $1,685.00 check from KIMBERLY K. WELCH's checking account at EDSB.

93. On about January 21, 2000, KIMBERLY K. WELCH met with her accountant in Dubuque, Iowa and caused an IRS form 1099 to be issued to ROBERT H. FRANK, showing WELCH had paid FRANK $1,968.30 in

wages for work performed in 1999.

94. On about February 3, 2000, ROBERT H. FRANK gave false testimony under oath regarding his financial condition, in a debtor's examination conducted in federal court. On the same date, FRANK completed and submitted a written financial statement.

95. On about February 9, 2000, ROBERT H. FRANK obtained a State of Iowa motor vehicle title in the name of "K. W. Sales, 95 Aquin Street, Dubuque, Iowa," for the 1995 Dodge Dakota pick-up truck.

96. On about February 9, 2000, KIMBERLY K. WELCH and ROBERT H. FRANK sold the 1995 Dodge Dakota pick-up truck to Donald Ahlers in Dubuque. Ahlers paid for the vehicle with a $3,000.00 Citizens Finance check made payable to "K. W. Sales".

97. On about February 9, 2000, KIMBERLY K. WELCH endorsed and deposited the $3,000.00 Citizens Finance check to her checking account at EDSB.

98. On about February 29, 2000, KIMBERLY K. WELCH paid $165.00 by check drawn on her EDSB checking account for the registration of 1967 Chevrolet truck titled in the name of "R & P Auto Sales," Dubuque, Iowa.

99. On about February 29, 2000, KIMBERLY K. WELCH cashed two $2,900.00 checks for cash, totaling $5,800.00 cash, from her checking account at EDSB.

100. On about March 2, 2000, KIMBERLY K. WELCH cashed a $2,900.00

check for cash from her checking account at EDSB.

101. On about March 3, 2000, KIMBERLY K. WELCH cashed two checks for cash, totaling $5,400.00 cash, from her checking account at EDSB.

102. On about March 6, 2000, ROBERT H. FRANK sold the 1994 Dodge Caravan to his nephew. FRANK's nephew paid for the vehicle with a $3,800.00 Dupaco Credit Union loan check made payable to "B & G Auto."

103. On about March 8, 2000, Bill Timmerman gave ROBERT H. FRANK a $3,800.00 B & G Auto check payable to "Kim Welch."

104. On about March 8, 2000, KIMBERLY K. WELCH endorsed and deposited to her account at EDSB the $3,800.00 check from B & G Auto. At the same time, KIMBERLY K. WELCH withdrew $3,400.00 in cash from her account.

105. From about March 1999 to about February 2000, ROBERT H. FRANK was employed by Sproule Construction in Galena, Illinois.

106. Sproule Construction issued more than 40 checks between about April 1999 and about February 2000, for wages or expenses claimed by ROBERT H. FRANK.

107. Per ROBERT H. FRANK'S instructions, checks from Sproule Construction were made payable to "KW Sales" or "Kim Welch".

108. The checks issued by Sproule Construction were either negotiated by KIMBERLY K. WELCH for cash or deposited to her account at EDSB.

109. In about early 2000, Sproule Construction issued an IRS Form 1099 to KW Sales in the amount of $21,425.00 for work performed by FRANK in 1999.

110. On about March 14, 2000, ROBERT H. FRANK sold the 1984 Chevrolet Blazer and a set of tires to Timothy Loomis for $2,500.00. Loomis gave FRANK $2,300.00 cash and a 1987 Pontiac Grand Am in trade. FRANK gave Loomis a handwritten receipt showing "Kimberly Welch " as the seller.

111. Since being released from federal prison in about February, 1998, ROBERT H. FRANK has made payments totaling approximately $57.00 on his court-ordered financial obligations, as follows:

| | |
|---|---|
| 03-10-99 | $10.00 |
| 04-06-99 | 6.00 |
| 05-04-99 | 6.00 |
| 07-06-99 | 5.00 |
| 08-03-99 | 5.00 |
| 10-07-99 | 5.00 |
| 11-05-99 | 5.00 |
| 01-04-2000 | 5.00 |
| 05-08-2000 | 5.00 |
| 10-05-2000 | 5.00 |

112. Since being released on parole ROBERT H. FRANK has submitted more than 15 false monthly reports to the United States Probation Office.

113. On about June 29, 2000, a closing withdrawal of $426.44 was made from KIMBERLY K. WELCH's checking account number 283004 at East Dubuque Savings Bank.