IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT J. FRANK, | ) | |
| | ) | NO. 06-73C |
| Plaintiff, | ) | (Senior Judge Hodges) |
| | ) | |
| vs. | ) | |
| | ) | OPPOSITION TO |
| UNITED STATES OF AMERICA, | ) | DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| Defendant. | ) | |

## TABLE OF CONTENTS


OPPOSITION .......... 4

BRIEF .......... 4

RESPONSE TO DEFENDANT'S STATEMENT OF THE CASE .......... 4

SUMMARY OF ARGUMENT .......... 6

ARGUMENT .......... 7

I. Plaintiff Frank is Not Challenging the Forfeiture of the Vehicles .......... 7

II. Mr. Frank Has Adequately Alleged the Existence of An Express or Implied Contract Between Himself and the United States. Alternatively, Discovery on Those Issues is Warranted .......... 8

A. Elements .......... 8

B. Offer and Acceptance .......... 8

C. Mutuality of Intent .......... 11

D. Authority .......... 12

E. Consideration....16

F. Discovery on Factual Issues....16

G. Ratification....18

H. Conclusion....19

III. The Contract at Issue Was Entered Into by the United States in Its Proprietary Capacity.... 19

IV. The Takings Clause Claim is Properly Pled....20

V. Dismissal of Request for Injunctive Relief....21

CONCLUSION....22

ORAL ARGUMENT....23

## TABLE OF AUTHORITIES

Cases

*Aero-Abre, Inc., v. United States*, 39 Fed.Cl. 654 (1997)....17, 18

*Algonac Manufacturing Co. v. United States*, 428 F.2d 1241 (Ct.Cl. 1970)....15, 21

*Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)....10

*Brunner v. United States,* 70 Fed.Cl. 623 (2006)....14

*Figueroa v. United States*, 57 Fed.Cl. 488 (2003)....21

*Heydt v. United States*, 38 Fed.Cl. 286 (1997)....9-10, 21

*Kania v. United States*, 227 Ct.Cl. 458 (1981)....20

*Marvel Engineering Co. v. United States*, 14 Cl.Ct. 614 (1988)..............16-17

*Perri v. United States*, 53 Fed.Cl. 381 (2002)................................8, 14, 18

*United States v. Bissett-Berman Corp.*, 481 F.2d 764 (9th Cir. 1973).............14

Statutes

21 U.S.C. §§ 853(k) & (n)........................................................22

21 U.S.C. § 853(i)..........................................................................13

21 U.S.C. § 881(h)..........................................................................5, 13

Other

Rules of the United States Court of Federal Claims, Rule 8(a)..................20-21

Restatement (Second) of Agency § 83..........................................19

## OPPOSITION

Plaintiff Robert J. Frank opposes Defendant United States of America's Motion to Dismiss in its entirety. The United States' maximum page length Brief is chock-full of misunderstandings of the facts, issues and law. Mr. Frank's opposition is straightforward.

## BRIEF

## RESPONSE TO DEFENDANT'S STATEMENT OF THE CASE

The United States' Statement of Facts is generally accurate with a few exceptions.

First, the property upon which the United States is storing the forfeited vehicles ("Gardner's Lane") is solely titled in the name of Plaintiff Robert J. Frank. It is no longer subject to a preliminary order of forfeiture or any effort of forfeiture by the United States. Mr. Frank filed a Petition to contest the forfeiture of Gardner's Lane Property. *See* Gov't App. 57 et seq. On or about January 22, 2003, Mr. Frank and the United States agreed that it would dismiss the portion of the forfeiture proceeding involving the Gardner's Lane property in exchange for Mr. Frank's waiver of his Equal Access to Justice Act attorneys' fee claim. *See* Frank App. 1-2.[1] The United States dismissed its Lis Pendens filed with the Dubuque County Recorder. *See* Gov't App. 78-79. Mr. Frank also dismissed his Petition regarding the forfeiture in reliance upon the settlement. *See* Frank

[1]Portions of this letter and the November 20, 2003, letter discussed below, relating to settlement discussions pertaining to the vehicles have been redacted.

App. 3-4 (letter of November 20, 2003); Gov't App. 80-81 (dismissal filed November 20, 2003).

Second, the vehicles at issue have been validly forfeited to the United States. All right, title and interest in the vehicles vested in the United States upon the commission of offense by Robert H. Frank (Mr. Frank's father). *See* 21 U.S.C. § 881(h). The Preliminary Order of Forfeiture terminated any interest by Robert H. Frank in the vehicles. Comp. Ex. 3. The United States owns the vehicles at issue. Plaintiff Robert J. Frank is not contesting the forfeiture of the vehicles in any way.

The facts of this case are straightforward. The United States forfeited vehicles belonging to Robert H. Frank, Plaintiff Robert J. Frank's father. Those vehicles were and are located on property (Gardner's Lane) belonging to Robert J. Frank. In September of 2002, Robert J. Frank notified the United States that it could choose between removing the vehicles from his property (with no charge if removed in approximately 14 days) or continuing to store the vehicles on his property for a storage fee of $10/day/vehicle. The United States, by its conduct in leaving the vehicles on the property and not removing them, accepted the storage fee alternative of the contract. In the nearly four years since then, the United States has consistently refused to pay the storage fee agreed upon and has never removed the vehicles.

## SUMMARY OF ARGUMENT

The easiest way to summarize Mr. Frank's argument is to respond to the United States' Statement of the Issues Presented.

1. Mr. Frank is not challenging the forfeiture of the vehicles at issue. Accordingly, the argument presented in Section II of the United States' Brief is inapposite.

2. Mr. Frank has sufficiently alleged the existence of an express or implied-in-fact contract with the United States.[2]

3. The contract at issue was entered into by the United States is its proprietary capacity (an owner of a vehicle arranging for storage) not in its sovereign capacity (making the decision whether to forfeit the vehicles).

4. The representative of the United States Marshals Service who made the decision to continue to store the vehicles on Mr. Frank's property after notice that a storage fee of $10/day/vehicle would be charged for that privilege had implied actual authority to agree to that fee.

5. A Takings Clause claim can be pled in the alternative to a breach of contract claim.

6. This Court does lack jurisdiction over Mr. Frank's request for injunctive relief and Mr. Frank is dismissing that claim without prejudice.

---

[2]In the event that the Court concludes that Plaintiff's Complaint is deficient in any respect, Plaintiff requests leave to amend to correct any deficiencies identified by the Court. Plaintiff believes that his Complaint is sufficient to state a claim.

## ARGUMENT

I. Plaintiff Frank is Not Challenging the Forfeiture of the Vehicles

The United States' argument that this Court lacks jurisdiction to consider challenges to criminal forfeitures is misplaced. Mr. Frank is not making any challenge to the United States' forfeiture of the vehicles itself. The vehicles were validly forfeited to the United States. A valid forfeiture is necessary to Plaintiff Frank's claim for storage fees against the United States. Mr. Frank's claim is that the United States, as owner of the forfeited vehicles, is obligated to compensate him for the storage of those vehicles, either as a result of an express contract, an implied-in-fact contract or pursuant to the Takings Clause.

The United States' contention that forfeiture of the Gardner's Lane property is still pending is incorrect. As discussed above, the United States and Mr. Frank have agreed that the Gardner's Lane property is owned by Mr. Frank and that the United States has no right, title or interest in the property. Although the United States has not performed the ministerial act of having the Preliminary Order of Forfeiture amended to confirm title to the Gardner's Lane property in Mr. Frank, that failure does not affect the fact that the United States has no interest and claims no interest in the Gardner's Lane property or that the Gardner's Lane property belongs to Mr. Frank.

Accordingly, there is nothing about the forfeiture action itself which this Court need address. The question before this Court is simple: is the United States obligated to compensate Mr. Frank for its storage of forfeited vehicles on his property?

## II. Mr. Frank Has Adequately Alleged the Existence of An Express or Implied Contract Between Himself and the United States. Alternatively, Discovery on Those Issues is Warranted

### A. Elements

The elements of an express or implied-in-fact contract are : (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) the Government representative whose conduct is relied upon had actual authority to bind Government in contract. *See, e.g., Perri v. United States*, 53 Fed.Cl. 381, 394 (2002). There is sufficient evidence of each of those elements to create a submissible issue. Alternatively, discovery is needed, in particular to flesh out the authority of the representatives of the United States Marshals Service making decisions to continue to store the vehicles on Mr. Frank's property. Mr. Frank addresses each element in order of significance to the disputed issues in this case.

### B. Offer and Acceptance

With respect to the third element, the offer and acceptance were unambiguous. Mr. Frank informed the United States that it had the choice of removing the vehicles or

paying a storage fee of $10/day/vehicle if not promptly removed. *See* Comp. Ex. 6 (letter dated September 16, 2002). "An offer to contract is the manifestation of a willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Heydt v. United States*, 38 Fed.Cl. 286, 300 (1997). The terms of that offer were unambiguous. "An offer is accepted by manifestation of assent to the terms thereof made by the offeree in a manner invited by the offer." *Id.* at 301. The United States did not, and still has not, removed the vehicles. That constitutes acceptance by the United States' conduct in failing to remove the vehicles, the conduct invited by the offer. The United States' conduct in failing to remove the vehicles is unambiguous.

The *Heydt* case, although distinguishable on its facts, is instructive. In that case, the United States stored military clothing at Heydt's warehouse. *See Heydt*, 38 Fed.Cl. at 292. After the government's terminated its lease contract, the property remained at the warehouse. *Id.* at 294. Heydt forwarded a demand to the United States for past and future rents as well as a cash bond for cleaning. *Id.* at 294-95. The Court concluded that an implied-in-fact contract had not been created because, instead of an offer, Heydt's communication was a demand for payment and required that the demand be satisfied before the United States could remove its property. *Id.* at 300. In contrast, Mr. Frank's letter of September 16, 2002 (Exhibit "6" to the Complaint) was an offer to store the vehicles for $10/day/vehicle and gave the United States a window of approximately two

weeks to remove the vehicles without any charges whatsoever. The United States has been free to remove the vehicles at any time but has intentionally chosen to let them remain.

The *Heydt* case also notes that "[t]he Government's silence, or lack of response, cannot constitute an acceptance of Mr. Heydt's demands for payment." *Heydt*, 38 Fed.Cl. at 302. However, the distinction between a demand for payment (*Heydt*) and acceptance of an offer by conduct in the terms invited (this case) is key. In this case, acceptance of the offer of storage for $10/day/vehicle was invited by offering the United States the alternative of removing the vehicles in approximately fourteen days or leaving the vehicles on the property and paying the storage fee. The United States left the vehicles on the property and, thus, accepted the offer in the terms made. An implied-in-fact contract, at its base is "an agreement . . . founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

Further, although not required to demonstrate acceptance, the United States indicated its acceptance by informing Mr. Frank in no uncertain terms that it would seek criminal penalties against him if he took any action to dispose of the property. *See* Comp. Ex. 7 (letter of September 19, 2002 from Assistant United States Attorney Murphy).

Based on that letter, Mr. Frank could not take action to remove the vehicles from the property himself without risking criminal charges. Based on that letter, the only way the vehicles could be removed from the property was with the consent or at the action of the United States.[3]

C. <u>Mutuality of Intent</u>

The first element, mutuality of intent to contract, is also demonstrated by the offer by Mr. Frank and the United States' acceptance of that offer by its conduct in leaving the vehicles on the property. Mr. Frank notes that the United States had to contract with someone to store the forfeited vehicles someplace. Mr. Frank clearly indicated a willingness to contract with the United States for storage of the vehicles. The United

[3]The United States may argue that it did not complete the forfeiture and therefore does not "own" the vehicles. Mr. Murphy's letter clearly asserts an ownership interest in the vehicles. The Preliminary Order of Forfeiture clearly placed custody of the vehicles with the Marshals' Service. Further, the only steps remaining in the forfeiture was to publish notice of the forfeiture and await and adjudicate third-party claims. To Plaintiff Frank's knowledge, there are no third parties claiming an interest in the vehicles. The vehicles have been there for years and no one has come to assert an ownership interest in them except the United States. Further, the issuance of a seizure warrant was not required for the Marshals Service to take custody of the vehicles. Plaintiff Frank has, at all times, held his property open to the Marshals Service to remove the vehicles. The United States has not been required to obtain a court order allowing entry onto the property to remove the vehicles. Further, the Marshals Service has, on several occasions, inspected and inventoried the vehicles. Discovery on whether the Marshals' Service considered the vehicles to be in their custody is also appropriate.

States clearly indicated its acceptance of those terms by leaving the vehicles on the property.

D. Authority

With regard to the fourth element, acceptance by a government employee with authority, the United States misstates the issue. The question is not limited to whether Mr. Murphy had actual authority to accept the terms of the offer.[4] The primary question is whether the United States Marshals Service, the entity with legal custody of the vehicles, had actual authority to accept the terms of the offer.

The September 16, 2002 letter (Comp. Ex. 6) was sent to Assistant United States Attorney Murphy as the attorney representing the United States with respect to the forfeiture of the vehicles. A communication with an attorney for a party should be deemed communication with that party. In addition to his general duty as an attorney to convey pertinent information to his client, Mr. Murphy had a specific policy directive to convey that letter to the Marshals Service. *See* Directive No. 90-5 "The Attorney General's Guidelines on Seized and Forfeited Property" (July 1990) (Frank App. 15) at

---

[4]The United States attempts to prove this point with affidavits from Mr. Murphy and others in the United States Attorneys' office. By doing so, the United States has gone outside of the four corners of the Complaint. Mr. Frank is entitled to cross-examine Mr. Murphy and the other affiants as the extent of Mr. Murphy's authority is a fact question.

Section VI(B)(2).[5] It must be presumed that Mr. Murphy performed that duty. *See Perri*, 53 Fed.Cl. at 411 ("It is a well established presumption that public officials discharge their duties correctly, lawfully, and in good faith.").

All right, title and interest in the vehicles vested in the United States upon the commission of offense by Robert H. Frank (Mr. Frank's father). *See* 21 U.S.C. § 881(h). The Preliminary Order of Forfeiture terminated any interest of Robert H. Frank in the vehicles. *See* Comp. Ex. 3. The Marshals Service was directed to and did take custody of the vehicles pursuant to paragraph 2 of the Preliminary Order of Forfeiture. Pursuant to 21 U.S.C. § 853(i), the Attorney General is "authorized to . . . (5) take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition." The Attorney General has delegated to the Director, U.S. Marshals Service, the authority to administer the Department of Justice Assets Forfeiture Fund. *See* Directive No. 90-5 "The Attorney General's Guidelines on Seized and Forfeited Property" (July 1990) at Section VII(A)(1) (Frank App. 15). The Fund is to pay "asset management expenses," including expenses for storage, of assets subject to forfeiture. *Id.* at Section VII(B)(1) (Frank App. 16).

[5]"Investigative bureaus and the United States Attorneys' offices shall promptly notify the U.S. Marshals Service of all relevant facts affecting the forfeited property. Relevant facts include, but are not limited to: (a) Outstanding bills, invoices, . . ."

Obviously, someone in the Marshals Service made the decision to leave the vehicles in place rather than moving them to another location. That person presumably had the authority to make that decision.[6] As discussed above, it is the duty of the Marshals Service to provide for storage of the vehicles pending final disposition. Under the doctrine of implied actual authority, "'[a]uthority to bind the government is generally implied when such authority is considered to be an *integral part of the duties assigned to a government employee*.'" *Perri*, 53 Fed.Cl. at 398 (citing cases). *See also Brunner v. United States,* 70 Fed.Cl. 623 (2006) (containing a lengthy discussion of the law of the authority of government agents). Accordingly, since the Marshals Service made the decision to leave the vehicles in place, the person making that decision on behalf of the Marshals Service had the implied actual authority to agree to the consequences of that decision: the noticed storage fee of $10/day/vehicle.

Additionally, Mr. Murphy arguably had implied actual authority to accept Mr. Frank's proposed storage fee. *See United States v. Bissett-Berman Corp.*, 481 F.2d 764, 768-69 (9th Cir. 1973) (attorney for United States had authority to settle matter at issue).

---

[6]Since discovery has not occurred, Mr. Frank does not know precisely who in the Marshals Service made any decisions relating to the storage of the vehicles or what the limits of their authority were. The United States Marshals Service' website states that "The Headquarters Contracts Team is responsible for the centralized procurement of national supplies and services for the United States Marshals Service (USMS). The Simplified Acquisitions Team processes headquarters and field requirements up to $100,000. The ninety-four (94) field offices have delegated procurement authority of at least $25,000 and some $100,000." Frank App. 29. However, Mr. Frank has been

In *Algonac Manufacturing Co. v. United States*, 428 F.2d 1241 (Ct.Cl. 1970), the Court held that an implied-in-fact contract for the storage of government property had been proven. Algonac entered into various contracts with the United States for provision of various items. *Id.* at 1245. The United States subsequently terminated the contracts. *Id.* at 1245-46. One of the issues in the case was the storage of unused armor plate furnished by the government. *Id.* at 1252-53. Algonac requested instructions from the United States regarding disposition of the armor plate. *Id.* After the armor plate had not been removed, Algonac notified the United States that a charge of $100 per month would be imposed for the storage of the armor plate. *Id.* at 1253. The Court held:

> We conclude from this inquiry, and from the provisions of the contract and the other facts outlined herein, that there was an agreement implied in fact between the parties which, "although not embodied in an express contract, (was) inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances their tacit understanding" with reference to the storage of the armor plate. In other words, the provisions of the contract, coupled with the acts and conduct of the parties, in our opinion, created a contract implied in fact between the parties for the storage of the property by the plaintiff for which it would be reasonably compensated by the government. This became increasingly clear as the years went by. Finally, in 1963, after plaintiff has stored and cared for the property for 10 years, the government apparently realized that the armor plate was not worth the accumulated storage charges and sought to relieve itself of this debt by unilaterally abandoning the property. We do not believe the government can escape liability for the storage charges in this manner.

*Algonac*, 428 F.2d at 1257.

---

unable to locate the specifics regarding those authorities in publicly available material.

E. Consideration

The second element, consideration, is readily satisfied. The storage fee is consideration for the United States' use of Mr. Frank's property to store the vehicles.

F. Discovery on Factual Issues

Discovery regarding Mr. Murphy's conveyance of the September 16, 2002, letter to the Marshals Service, the decisions made by the Marshals Service to store the vehicles on Mr. Frank's property rather than removing them, the authority of that person(s) to make those decisions and other matters is needed. When a claim of an implied-in-fact contract is not clearly frivolous or wholly insubstantial, dismissal for lack of subject matter jurisdiction is not appropriate. *See Marvel Engineering Co. v. United States*, 14 Cl.Ct. 614, 620 (1988).

> Dismissal may not be granted until the party asserting jurisdiction is permitted an opportunity to demonstrate that jurisdiction exists. Reasonable discovery for this purpose should be allowed and failure to permit such discovery is usually treated as reversible error. (citation omitted).
>
> Jurisdictional facts are often intertwined with the merits of a claim. In the instant case whether or not an implied-in-fact contract was created goes to the merits of the claim, but is also the basis upon which this Court's jurisdiction is premised. Courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim. (citation omitted).

*Marvel Engineering*, 14 Cl.Ct. at 620.

In *Marvel Engineering*, Scottville Elevator entered into a lease with Marvel Engineering for use of Marvel's grain storage facility. Scottville then entered into a lease with the Commodity Credit Corporation ("CCC"), an agency of the United States, for the storage of grain. Scottville later assigned its lease with Marvel to Molen. Grain was placed at Marvel's facility. The CCC later removed the facility from its approved list. Subsequently, Marvel contacted the CCC and requested removal of the grain. The CCC refused.

Marvel contended that the CCC's placement of grain at its facility and continued storage after notice constituted an acceptance and assumption of the lease by the CCC. *See Marvel Engineering*, 14 Cl.Ct. at 618. The Court concluded that there were factual questions regarding whether an implied-in-fact contract had been created which precluded the grant of the United States' motion to dismiss for lack of subject matter jurisdiction. *Id.* at 619-20, 622. *See also Aero-Abre, Inc., v. United States*, 39 Fed.Cl. 654 (1997) (holding that factual questions regarding which officials of the Marshals Service had the authority, actual or implied, to modify a contract for the storage of forfeited vehicles precluded grant of government's motion to dismiss, construed as a motion for summary judgment).

G. Ratification

Another issue which requires discovery is whether any official with the Marshals Service ratified the contract.

> Thus, the Government may, if it so chooses, ratify an unauthorized (or voidable) contract. As a manifestation of such intent, it has long been recognized by this court and its predecessor, the Court of Claims, that "even if a government official lacks actual authority to bind the United States by his promise, *knowing acceptance of benefits by those empowered to bind the government* can result in ratification of the unauthorized official' promise."

*Perri,* 53 Fed.Cl. at 401 (citations omitted).

For example, on November 2, 2005, and November 15, 2005, counsel for Mr. Frank forwarded a claim to Patricia Hanson, Chief, Procurement and Contracting Branch, of the Marshals Service regarding this matter. Comp. Ex. 9. Ms. Hanson presumably has full authority to contract for the storage of vehicles. It is certainly conceivable that Ms. Hanson affirmed or ratified the implied-in-fact contract by directing the local Marshals' office to leave the vehicles in place. Despite the filing of Mr. Frank's Complaint in this matter, the United States has failed and refused to remove the vehicles from the Gardner's Lane property. *Cf. Aero-Abre*, 39 Fed.Cl. at 658 ("Without further explication of USMS policy and the ratifying authority of government officials in the USMS, we cannot determine who did and did not have ratifying authority. Therefore, we will not now address whether a particular official had the requisite combination of authority to ratify, knowledge of the unauthorized agreement and intent to ratify the agreement.").

Alternatively, if the initial decision to leave the vehicles on the Gardner's Lane property was not made by a person with authority, there may be a point in time where the appropriate person with authority with the Marshals Service made a fully informed decision to leave the vehicles on the property knowing of the $10/day/vehicle storage fee and entitling Mr. Frank to storage fees. *Cf.* Restatement (Second) of Agency § 83 (Affirmance of an agent's unauthorized act can consist of conduct by the principal which is justifiable only if there is an election to treat the act as authorized).

### H. Conclusion

In sum, Mr. Frank has presented a substantial claim that an implied-in-fact contract with the United States for storage of the vehicles exists. His claim cannot be dismissed for lack of subject matter jurisdiction. There are conceivable facts which, after discovery, would prove Mr. Frank's claim.

## III. The Contract at Issue Was Entered Into by the United States in Its Proprietary Capacity

The United States argues that it was acting in its "sovereign capacity" in exercising its prosecutorial authority to decide whether to seize and possess the vehicles. That argument is specious as, with respect to the issues in this case, the United States was clearly acting in its proprietary capacity as an owner of the vehicles determining where to

store them. *See Kania v. United States*, 227 Ct.Cl. 458, 464 (1981) (United States acts in its proprietary capacity when it "engages in the purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves").

The Preliminary Order of Forfeiture provided: "That the forfeited property is to be held by the United States Marshals Service in their secure custody and control." Comp. Ex. 3 at ¶ 1. Once the United States, in its sovereign capacity, has forfeited the vehicles, the United States, in its proprietary capacity as owner of the vehicles, must decide where to store them. It is only the latter capacity which is at issue in this case. Mr. Frank is not challenging the forfeiture of the vehicles. The United States is the undisputed owner of the vehicles.

## IV. The Takings Clause Claim is Properly Pled

The United States' primary arguments, i.e., that Plaintiff Frank is challenging the forfeiture and/or that the Gardner's' Lane property is still subject to forfeiture, are without merit, as discussed above. Mr. Frank is the clear owner of the property. The United States is the clear owner of the vehicles.

The United States' alternative argument that there can not be a Takings Clause claim if there is a contract does not give rise to grounds for dismissal. Rule 8(a) of the Rules of the United States Court of Federal Claims provides that "Relief in the alternative

or of several different types may be demanded." *See also Figueroa v. United States*, 57 Fed.Cl. 488, 496 (2003) (rejecting similar argument by United States that Patent Clause claim and takings claim could not be pled in the alternative). Plaintiff Frank recognizes that he can recover on only one theory: express contract (Count I), implied contract (Count II) or the Takings Clause (Count III). Which theory depends on the facts developed by discovery and as found by the Court on the merits, as the legal elements and damages for each claim vary.

Assertion of both a contract claim and a takings claim is clearly allowed. *See, e.g.*, *Heydt*, 38 Fed.Cl. 286 (denying implied-in-fact contract claim and granting relief based on Takings Clause claim).

V. Dismissal of Request for Injunctive Relief

After further review of the case law, Mr. Frank agrees that this Court lacks jurisdiction over his request for injunctive relief. *See Algonac*, 428 F.2d at 1258. Accordingly, Mr. Frank is dismissing his request for injunctive relief (Count IV) without prejudice to refiling in the United States District Court for the Northern District of Iowa.

Although Mr. Frank agrees with the United States that jurisdiction over the request for injunctive relief lies with the United States District Court for the Northern District of Iowa, Mr. Frank disagrees that such jurisdiction is pursuant to the statutory sections cited

by the United States (21 U.S.C. §§ 853(k) & (n)). Those sections involve challenges to the forfeiture itself, which is not at issue in this case.

## CONCLUSION

The question in this case is simple. Does the United States owe storage charges to Mr. Frank when it has stored forfeited vehicles on his property for almost four years? Mr. Frank gave the United States the alternative of removing the vehicles without charge or paying a storage fee of $10/day/vehicle. That proposal was communicated to counsel for the United States in the forfeiture, who presumably communicated it to his client. By its conscious choice to leave the vehicles in place, the United States accepted the storage fee alternative of the proposal, either then or at a later date, which creates an implied-in-fact contract for those storage fees. The representatives of the United States Marshals Service making the decision to leave the vehicles on the property had the implied actual authority to pay those storage fees by virtue of their authority to select the place of storage. Alternatively, discovery is needed regarding the actions/inactions of the Marshals Service and the extent of authority of the representatives of the Marshals Service involved.

The United States' Motion to Dismiss must be denied. The United States will be free to renew its arguments on a motion for summary judgment after the completion of pertinent discovery.

**ORAL ARGUMENT**

Plaintiff Robert J. Frank requests oral argument, if the Court believes that oral argument would assist the Court in resolving the issues presented. Oral argument is not necessary if the Court determines that the United States' Motion to Dismiss should be summarily denied.

Respectfully submitted,

Date:___8/25/06________

___________/s/ Webb L. Wassmer__________
WEBB L. WASSMER
SIMMONS, PERRINE, ALBRIGHT
& ELLWOOD, P.L.C.
115 3RD STREET S.E., SUITE 1200
CEDAR RAPIDS, IOWA 52401
(319) 366-7641 (telephone)
(319) 366-1917 (facsimile)
wwassmer@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF
ROBERT J. FRANK

CERTIFICATE OF FILING

I hereby certify that on August 25, 2006, a copy of the foregoing "OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

______/s/ Webb L. Wassmer______
WEBB L. WASSMER

Copy to:

David B. Stinson
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C., 20530

Courtesy Copy to:

Martin J. McLaughlin
Assistant United States Attorney
Northern District of Iowa
P.O. Box 74950
Cedar Rapids, IA 52407-4950