IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT J. FRANK, | ) | |
| | ) | NO. 06-73C |
| Plaintiff, | ) | (Senior Judge Hodges) |
| | ) | |
| vs. | ) | APPENDIX TO |
| | ) | OPPOSITION TO |
| UNITED STATES OF AMERICA, | ) | DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| Defendant. | | |

**INDEX**

Letter, dated January 22, 2002..........1

Letter, dated November 20, 2003..........3

Directive No. 90-5 "The Attorney General's Guidelines on Seized and Forfeited Property" (July 1990)..........5

Marshals Service, Procurement Office at a Glance..........29

Respectfully submitted,

Date:____8/25/06______

_______/s/ Webb L. Wassmer______________

WEBB L. WASSMER
SIMMONS, PERRINE, ALBRIGHT
& ELLWOOD, P.L.C.
115 3RD STREET S.E., SUITE 1200
CEDAR RAPIDS, IOWA 52401
(319) 366-7641 (telephone)
(319) 366-1917 (facsimile)
wwassmer@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF
ROBERT J. FRANK

CERTIFICATE OF FILING

I hereby certify that on August 25, 2006, a copy of the foregoing "APPENDIX TO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

______/s/ Webb L. Wassmer______
WEBB L. WASSMER

Copy to:

David B. Stinson
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C., 20530

Courtesy Copy to:

Martin J. McLaughlin
Assistant United States Attorney
Northern District of Iowa
P.O. Box 74950
Cedar Rapids, IA 52407-4950

**Simmons, Perrine, Albright & Ellwood, P.L.C.**

**Attorneys and Counselors**
**Cedar Rapids and Iowa City**

■ 115 Third Street S.E.
Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Fax: (319) 366-1917

□ 22 South Linn Street
Third Floor Tower Place
Iowa City, IA 52240
Telephone: (319) 887-1368
Fax: (319) 887-1372

website: www.simmonsperrine.com

Writer's e-mail address: wwassme@simmonsperrine.com

Darrel A. Morf
James E. Shipman
Stephen J. Holtman
Iris E. Muchmore
Gregory M. Lederer
James A. Gerk
Roger W. Stone
David A. Hacker
David W. Kubicek
Matthew J. Petrzelka
Matthew J. Brandes
Leonard T. Strand
Mark H. Ogden
Webb L. Wassmer
Mark A. Roberts

Chad M. VonKampen
Gregory G. Williams
Nicolas Abou-Assaly
Allison M. Heffern
Lynn W. Hartman
Kathleen A. Kleiman
Philip A. Burian
Michael F. Williams
Paul P. Morf
Christine L. Conover
Elizabeth V. Croco
Todd A. Slagter
Patsy A. Thimmig
Richard G. Hileman, Counsel

Haven Y. Simmons (1888-1975)
Beahl T. Perrine (1902-1989)
William P. Ellwood (1909-1998)

REGISTERED PATENT ATTORNEYS
Gregory G. Williams
Michael F. Williams

OF COUNSEL
James R Snyder

RETIRED
Justin W. Albright
John R. Carpenter

Writer's Voice Mail Ext.: 234

January 22, 2003

FILE COPY

**VIA FACSIMILE 363-1990**

Mr. Martin McLaughlin
Asst. US Attorney
Northern District of Iowa
P.O. Box 74950
Cedar Rapids, IA 52407

**Re:** **<u>United States v. Robert H. Frank, et. al.</u>, No. CR 00-1015 (N.D. IA)**

Dear Marty:

This letter is to follow up on our prior discussions regarding settlement.

As I understand it, the United States has agreed to dismiss the forfeiture proceeding regarding the Gardner's Lane property in exchange for Bobby Frank's waiver of any EAJA claim. If that is not your understanding, please let me know immediately. I believe that the cleanest way would be to provide the Court with a stipulated order amending the Preliminary Order of Forfeiture citing to 21 U.S.C. § 853(n)(6) and § 853(i)(1) (regarding the Attorney General's authority) to dismiss the forfeiture of the Gardner's Lane property. I'll leave it to you to prepare that Order. Something also needs to be filed with the Dubuque County Recorder removing the Lis Pendens notice.

Sincerely yours,

Webb L. Wassmer

WLW/tme

cc: Bobby Frank

# Simmons, Perrine, Albright & Ellwood, P.L.C.

**Attorneys and Counselors**
**Cedar Rapids and Iowa City**

■ 115 Third Street S.E.
Suite 1200
Cedar Rapids, IA 52401-1266
Telephone: (319) 366-7641
Fax: (319) 366-1917

□ 22 South Linn Street
Third Floor Tower Place
Iowa City, IA 52240
Telephone: (319) 887-1368
Fax: (319) 887-1372

Writer's extension: 234
Writer's e-mail: wwassmer@simmonsperrine.com
website: www.simmonsperrine.com



Darrel A. Morf
James E. Shipman
Stephen J. Holtman [2]
Iris E. Muchmore
Gregory M. Lederer
James A. Gerk
Roger W. Stone
David A. Hacker
David W. Kubicek
Matthew J. Petrzelka
Matthew J. Brandes
James M. Peters
Leonard T. Strand
Mark H. Ogden
Webb L. Wassmer
Mark A. Roberts

Chad M. VonKampen
Gregory G. Williams
Nicolas Abou-Assaly
Allison M. Heffern
Lynn W. Hartman
Kathleen A. Kleiman [1]
Paul P. Morf
Philip A. Burian [1]
Michael F. Williams
Christine L. Conover
Elizabeth V. Croco
Patsy A. Thimmig [1,3]
David C. Kutcher [1]
Jason M. Steffens
Lorie Reins-Schweer
Richard G. Hileman, Counsel

Haven Y. Simmons (1888-1979)
Beahl T. Perrine (1902-1989)
William P. Ellwood (1909-1998)

REGISTERED PATENT ATTORNEYS
Gregory G. Williams
Michael F. Williams

OF COUNSEL
James R Snyder
Robert M. Jilek

RETIRED
Justin W. Albright
John R. Carpenter

Also licensed to practice in:
1 Illinois 2 Wisconsin 3 Missouri


**November 20, 2003**

Mr. Martin McLaughlin
Asst. US Attorney
Northern District of Iowa
P.O. Box 74950
Cedar Rapids, IA 52407

**Re: <u>United States v. Robert H. Frank, et. al.</u>, No. CR 00-1015 (N.D. IA)**

Dear Marty:

As a result of my conversation on November 20th with the Clerk's office, enclosed is a Dismissal of Bobby Frank's Petition RE: Forfeiture to clean up that detail with the Court. Based on our prior agreement that the United States would release the lis pendens in exchange for Bobby dropping his claim for attorney's fees and expenses, I'm dismissing the portion of the Petition relating to the Gardner's Lane Property with prejudice.

Sincerely,

Webb L. Wassmer

WLW/aja
Enclosure
cc: Robert J. Frank

# Attorney General's Guidelines on Seized and Forfeited Property[1]

## Attorney General's Guidelines on Seized and Forfeited Property

### I. Statement of Goals and Purposes

The Department of Justice asset forfeiture program has three primary goals: (1) to punish and deter criminal activity by depriving criminals of property used or acquired through illegal activities; (2) to enhance cooperation among foreign, federal, state and local law enforcement agencies through the equitable sharing of assets recovered through this program; and, as a by-product; (3) to produce revenues to enhance forfeitures and strengthen law enforcement.

To meet these goals it is essential that the program be administered in a fiscally responsible manner which will minimize the costs incurred by the United States while maximizing the impact on criminal enterprises. Moreover, the integrity of the entire forfeiture program depends upon the faithful stewardship of forfeited property and the proceeds thereof.

The Law Enforcement Coordinating Committees shall promote and facilitate the Department of Justice forfeiture program with federal, state and local law enforcement agencies.

These Guidelines are not intended to create or confer any rights, privileges or benefits on prospective or actual claimants, defendants or petitioners. Likewise, they are not intended to have the force of law. See *United States v. Caceres*, 440 U.S. 741 (1979).

### II. Definitions

A. Adoptive Seizure refers to the federal adoption and forfeiture of property seized exclusively through the efforts of state or local agencies. Investigative bureaus empowered by statute or regulation may adopt such seized property for forfeiture where the conduct giving rise to the seizure is in violation of federal law.

[1] The following is a reprint of Directive No. 90-5, "The Attorney General's Guidelines on Seized and Forfeited Property," issued by the Office of the Deputy Attorney General, in July 1990.

Forfeitures of seized property accepted in this manner have the same effect as if the property had originally been seized by the investigative bureau.

B. Appraised Value means the estimated fair market value at the time of seizure of the same or similar property. For vehicles, this will generally mean the average wholesale value in the N.A.D.A. Appraisal Guides. For personal property, this will generally mean estimated fair market value. For real property, businesses and certain personal property, the value shall be determined by experts qualified to make such determinations.

C. Cash means currency, negotiable instruments or securities.

D. Department component refers to agencies, divisions, offices, sections or units of the Department of Justice.

E. District refers to the federal judicial district.

F. The Fund refers to the Department of Justice Assets Forfeiture Fund as established by 28 U.S.C. § 524(c)(1).

G. Investigative bureau refers to Department of Justice agencies authorized by federal statute to investigate and enforce forfeiture statutes. These agencies are: the Federal Bureau of Investigation, the Drug Enforcement Administration and the Immigration and Naturalization Service. It also refers to other federal agency investigative units whose forfeitures result in deposits into the Fund (*e.g.*, U.S. Postal Inspection Service, Internal Revenue Service, and the Bureau of Alcohol, Tobacco, and Firearms).

H. Joint investigation means cases in which one or more foreign, state, or local agencies participates in an investigation with a federal law enforcement agency empowered to forfeit property.

I. Law enforcement means the investigation or prosecution of criminal activity and the execution of court orders arising from such activity.

J. Net proceeds means the forfeited cash or gross receipts from the sale of forfeited property less allowable asset management and case related expenses, third party interests and any award based on the value of the forfeiture.

K. Official use means utilization by a law enforcement agency in the direct performance of law enforcement activities.

L. Property means tangible personal and real property, other than cash, when used in the context of the equitable transfer of property.

M. Seized Asset Deposit Fund refers to the holding account administered by the U.S. Marshals Service for seized cash pending resolution of forfeiture cases.

N. Sharing means the transfer of cash, property or proceeds realized through federal forfeitures pursuant to these guidelines.

O. State and local agencies refers to state and local law enforcement agencies.

P. Transfer and "sharing" are synonymous under these guidelines.

## III. General Provisions

A. Whenever reference is made to a specific Department official, such reference shall also be deemed to include any duly authorized person acting for that official by law, regulation delegation. References to the Executive Office for Asset Forfeiture include any successor organization.

B. Whenever a statute, regulation or official form cited in these guidelines is replaced by a substantially identical one, the citation shall be deemed to refer to the replacement.

C. The Deputy Attorney General or his designee may issue supplementary and interpretative guidance to address issues that arise under these guidelines. The Executive Office for Asset Forfeiture, Office of the Deputy Attorney General, shall provide assistance to the Deputy Attorney General in the oversight and management of the Department's forfeiture program.

## IV. Federal Retention and Use of Forfeited Property

### A. General Authorization

The Attorney General has the authority to retain any civilly or criminally forfeited property for official use by any federal agency. No seized property shall be placed into official use until a final determination of forfeiture has been made and the request to place the property into official use has been approved by the appropriate official.

### B. Real Property

The Attorney General does not delegate his authority to place real property into official use. A department component may request authority to place real property into official use only if the proposed usage of that property would be and remain thereafter consistent with a law enforcement

purpose. Transfers of real property to other federal components may be considered, if such transfers will serve a significant and continuing federal purpose.

**C. Cash**

No forfeited cash, nor any proceeds from the sale of forfeited property, may be transferred to or retained by any federal agency except as provided for in Chapter X or by statute.

**D. Personal Property**

The Attorney General delegates his authority to place personal property into official use in the order of priority set forth below. Written notice to the Director, Executive Office for Asset Forfeiture is required at the time property valued at $50,000 or greater is placed into official use. The Director, Executive Office for Asset Forfeiture, shall determine which agency may place property into official use if more than one Department component seeks to retain the same forfeited property for official use. All property should be promptly turned over to the local U.S. marshal after seizure, including property intended to be placed into official use, unless it is intended that such property will be used in an undercover capacity.

**1. Seizing Investigative Bureau**

The head of the seizing investigative bureau will determine whether to place forfeited property into official use.

**2. Other Investigative Bureaus**

If the property is not equitably transferred to a foreign, state or local agency, and the seizing investigative bureau chooses not to place the forfeited property into official use, then another investigative bureau or the U.S. Marshals Service may, by written request to the Director, U.S. Marshals Service, seek the transfer of the property for its use.

**3. Other Department Components**

If no investigative bureau chooses to place the property into official use and the property has not been equitably transferred, other Department components may, by written request to the Director, U.S. Marshals Service, seek the transfer of the forfeited property for its official use.

**4. Transfer of Forfeited Property to Other Federal Agencies**

All requests by other federal agencies shall be referred to the Director, U.S. Marshals Service. In exceptional circumstances, the U.S. Marshals Service may transfer personal property suitable for official use

to a requesting federal agency which did not participate in the acts which led to a seizure or forfeiture.

In all such cases, the U.S. Marshals Service shall consult with the investigative bureau responsible for the investigation which led to the forfeiture. Careful consideration shall be given to the value of the property requested, its potential benefit to the United States for law enforcement purposes and its impact on the Fund.

A decision to grant a request for personal property with an aggregate value of less than $25,000 shall be approved in writing by the Director, U.S. Marshals Service. The recipient agency shall pay expenses incurred by the Department of Justice in connection with the forfeiture and transfer of such property. A report on all such transfers shall be prepared by the U.S. Marshals Service on quarterly basis and submitted to the Executive Office for Asset Forfeiture.

A decision to grant a request for any property valued at $25,000 or more shall be approved in writing by the Director, Executive Office for Asset Forfeiture. The recipient agency shall pay expenses incurred by the Department of Justice in connection with the forfeiture and transfer of such property.

**E. Investigative Bureau and Department Component Official Use Policies**

Each investigative bureau and department component shall promulgate internal guidelines consistent with these Guidelines governing the placement of property into official use. Such guidelines and any subsequent supplements or revisions shall be filed with the Executive Office for Asset Forfeiture ten (10) days in advance of issuance.

All official use guidelines shall:

1. Prohibit the placement into official use of any seized property prior to the entry of a final determination of forfeiture and the appropriate approval of the request to place the property into official use;

2. Require that all seized property be recorded and tracked in an official inventory of seized property without regard to its intended disposition;

3. Require that a written justification be prepared in each instance detailing the reasons why the forfeited property was placed into official use and that these justifications be retained for three (3) years;

4. Require that a specific supervisory-level official be responsible and accountable for the decision to place each item of forfeited

property into official use and for ensuring appropriate official use of such property following its transfer;

5. Require that property placed into official shall be identified and tracked in an accountable property system; and

6. State that the property may not be transferred or retained if it is primarily for purposes of trade or sale, or home-to-work transportation or other uses not expressly authorized for property acquired through the expenditure of appropriated funds. There must be an intention to place the property into official use for two (2) years.

**F. Competing Requests for Property for Official Use by Investigative Bureau and Other Federal, State or Local Agency**

When the head of an investigative bureau seeks to place forfeited property into official use and a federal, state or local agency has filed a request for an equitable share of that property, the head of the investigative bureau shall consider the following factors in making a determination regarding the disposition of the property:

1. The relative need of the requesting agency and the investigative bureau for the particular property;

2. The uniqueness of the property and the likelihood of securing similar property through seizures in the near future;

3. The relative percentage of the requesting agency's participation in the cases in addition to the other factors pertinent to the determination of equitable transfer;

4. The likelihood that the requesting agency will be eligible for an equitable share of property from additional seizures arising from the same investigation or from seizures in other cases in the near future;

5. The impact that a decision to place the property into official use might have on federal, state and local relations in the district; and

6. The number and value of past equitable transfers to the federal, state or local agency.

**G. Payment of Liens on Personal Property Placed Into Federal Official Use**

Liens on personal property placed into official use by investigative bureaus and the U.S. Marshals Service may be paid from the Fund provided that:

1. There is an intent to place the property into official use for at least two (2) years;

2. The total amount to be paid from the Fund amounts to less than one-third the appraised value of the property; and

3. The total amount to be paid from the Fund is less than $25,000.

Requests for exceptions may be submitted in writing to the Director, Executive Office for Asset Forfeiture.

## V. Equitable Transfer of Forfeited Property to Participating State and Local Agencies

Pursuant to 21 U.S.C. § 881(e)(1) and 19 U.S.C. § 1616a, as made applicable by 21 U.S.C. § 881(d) and other statutes, the Attorney General has the authority to equitably transfer forfeited property and cash to state and local agencies that directly participate in the law enforcement effort leading to the seizure and forfeiture of the property. Requests for equitable transfers shall be filed in the form prescribed by the Director, Executive Office for Asset Forfeiture.

### A. Equitable Transfers Generally

1. All equitable shares shall be based on the net proceeds of the forfeiture.

2. State and local investigative and prosecutive agencies may share in forfeited cash and property and the proceeds from the sale of forfeited property.

3. All property transferred to state and local agencies and any income generated by this property shall be used for the law enforcement purposes specified in the request.

4. A state or local agency may file a request for an equitable share of cash or property where it can demonstrate that it participated directly in the law enforcement effort that resulted in the forfeiture.

5. No request shall be considered if it is submitted after sixty (60) days following the seizure.

6. Cash and property shall be equitably shared with state or local agency only where it will increase and not supplant law enforcement resources of the specific state or local agency that participated the forfeiture.

7. The deciding official shall ensure that the share approved has a value that bears a reasonable relationship to the degree of direct participation of the state or local agency in the law enforcement effort resulting in the forfeiture, taking into account the total value of all property forfeited and the total law enforcement effort with respect to the violation of law on which the forfeiture is based.

**B. Factors Governing the Amount of the Equitable Transfer**

The amount of equitable transfer of proceeds from the sale of forfeited property shall be based upon the net proceeds realized from the sale of the property or liquidation of negotiable instruments. Equitable sharing amounts shall be calculated after the determination of any award based upon the value of the forfeiture. Asset management expenses may be calculated on a pro rata basis where expenses cannot reasonably be determined for a specific asset.

In determining the amount of the equitable transfer for each participating agency, the following factors shall be considered:

1. Whether the seizure was adopted or was the result of a joint investigation;

2. The degree of direct participation in the law enforcement effort by the state or local agency resulting in the forfeiture, taking into account the total value of all property forfeited and total law enforcement effort, including any related criminal prosecution with respect to the violation of law on which the forfeiture is based (21 U.S.C. § 881 (e)(3));

3. Whether the state or local agency originated the information that led to the seizure and whether the agency obtained such information fortuitously or by use of its investigative resources;

4. Whether the state or local agency provided unique or indispensable assistance;

5. Whether the state or local agency initially identified the asset(s) for seizure;

6. Whether the state or local agency seized other assets during the course of the same investigation and whether such seizures were made pursuant to state or local law; and

7. Whether the state or local agency could have achieved forfeiture under state law, with favorable consideration given to an agency which could forfeited the asset(s) on its own but joined forces with the United States to make a more effective investigation.

**C. Sharing Percentages**

1. In cases involving adoptive seizures that are forfeited administratively or in uncontested judicial proceedings, the determining official shall allocate to the United States fifteen (15) percent of the total net proceeds realized through the disposition of forfeited property.

   In cases involving adoptive seizures that are forfeited in contested judicial proceedings, the determining official shall allocate to the United States twenty (20) percent of the total net proceeds realized through the disposition of the forfeited property. These amounts represent the federal equitable share based upon its effort in forfeiting the property.

   These sharing percentages shall be applicable to property seized on or after September 1, 1990.

2. In non-adoptive cases the determining official shall allocate to the United States at least the applicable percentages set forth in paragraph 1.

3. The United States' equitable share will normally be satisfied by the allocation of one or more of the items forfeited (or a portion of the proceeds thereof) to the United States.

   In cases where only one asset or item is forfeited and a state or local agency requests that asset in lieu of proceeds from the disposition of the property, the determining official shall ensure that the United States receives its costs and equitable share to reflect total federal participation in the forfeiture effort. If the requesting agency is unable to pay the costs and federal share in such a one-asset forfeiture case, the property shall be sold by the U.S. Marshals Service and the proceeds distributed in accordance with these Guidelines.

   Exceptions to this requirement may be granted by the deciding official upon assurances that (1) the requesting state or local agency lacks funds or authority to satisfy the United States' equitable share and costs; and (2) the forfeited item will fill a demonstrable need of the requesting agency. Such exceptions shall be liberally granted where the two abode showings are made.

4. Nothing in this section shall alter the ability of the U.S. Marshals Service to pay appropriate expenses from the Fund or to recover costs directly from participating agencies.

**D. Decision-Making Authority**

Sharing decisions should be made during the period when forfeiture proceedings are being conducted. Decision-Making authority shall be as follows:

**1. Administrative Forfeitures Valued at Less than $1, 000,000**

The head of the seizing investigative bureau shall determine the appropriate equitable transfer of assets forfeited in a single administrative proceeding where the appraised value of the asset(s) is less than $1,000,000.

**2. Judicial Forfeitures Valued Less Than $1,000,000**

The United States Attorney shall determine the appropriate equitable distribution of asset(s) forfeited in a single judicial proceeding in his or her district where the appraised value of the asset(s) is less than $1,000,000.

**3. Administrative and Judicial Forfeitures Valued at $1,000,000 or Greater and Multi-District Cases**

In the case of a single administrative or judicial proceeding where the appraised value of the asset(s) forfeited is $1,000,000 or more and in multi-district cases, the United States Attorney(s) shall, after consultation with the investigative bureau(s), forward his (their) evaluation(s) and recommendation(s) to the Deputy Attorney General or his designee for determination.

**4. Real Property Forfeitures**

The Deputy Attorney General or his designee shall approve any equitable transfer of real property. Where appropriate, any such transfer shall include a provision for reversion of title to the United States if the property is not used for the agreed upon purposes.

## VI. Sale of Seized and Forfeited Property

### A. Pre-Forfeiture Sale of Seized Property

1. Pre-forfeiture sale of property (*i.e.*, interlocutory or stipulated sale) is favored as a means of preserving asset value and mitigating asset management expenses.

2. The United States Attorney shall consult with the investigative bureau and the U.S. Marshals Service to determine the status of any requests for equitable transfer or petitions for remission or mitigation prior to seeking a pre-forfeiture sale of property pending judicial forfeiture.

3. Proceeds from any pre-forfeiture sale shall promptly deposited into the Seized Asset Deposit Fund unless otherwise ordered by the Court.

**B. Sale of Forfeited Property**

1. Upon the successful completion of the forfeiture action and if the property is not placed into official use or transferred to a federal, state, or local agency, it shall be promptly sold and the proceeds of sale promptly deposited in the Fund.

2. Investigative bureaus and the United States Attorneys' offices shall promptly notify the U.S. Marshals Service of all relevant facts affecting the forfeited property. Relevant facts include, but are not limited to:

   a. Outstanding bills, invoices, orders of mitigation, and remission of forfeiture;

   b. Orders of transfers to federal, state, and local agencies;

   c. Orders of designation for official use by Department components if known; and

   d. Appraisals.

Based upon these and other relevant factors, the U.S. Marshals Service shall promptly and appropriately dispose of the property.

**VII. The Department of Justice Assets Forfeiture Fund**

**A. Administration of the Fund**

1. The Attorney General delegates the administration of the Fund to the Director, U.S. Marshals Service under the supervision of the Deputy Attorney General.

2. The U.S. Marshals Service shall prepare reports on the Fund in accordance with 28 U.S.C. § 524(c) (6).

3. Pursuant to these Guidelines, federal agencies reimbursed by or contributing to the Fund, shall provide information necessary to prepare these reports as requested by the U.S. Marshals Service.

4. The U.S. Marshals Service shall submit a monthly financial statement reflecting the current of the Fund to the Director, Executive Office for Asset Forfeiture.

5. The U.S. Marshals Service shall prepare annual budget estimates for the Fund based on information submitted by the requesting agencies.

**B. Payments and Reimbursements**

Payments and reimbursements are permitted in six (6) general categories. In any fiscal year, reimbursement for program management expenses and investigative expenses expressly identified in 28 U.S.C. § 524(c)(1) shall not exceed the amount specified in the annual appropriation limitation on the Fund. The categories listed in order of priority are as follows:

1. **Asset management expenses.** Asset management expenses are those expenses that are incurred in connection with the seizure, inventory, appraisal, packaging, movement, storage, maintenance, security and disposition (including destruction) of the asset(s).

   Asset management expenses include payments for contract services and the employment of outside contractors to operate and manage properties or provide other specialized services as necessary to dispose of such properties. If the asset is an ongoing business, the normal and customary expenses of operating the business are asset management expenses only to the extent they are not covered by the income of the business.

2. **Case-related expenses.** Case-related expenses are those expenses that are incurred in connection with normal proceedings undertaken to perfect the United States' interest in seized property through forfeiture. This includes fees and other costs of advertising, translation, court and deposition reporting, expert witness, courtroom exhibit services, employment of attorneys or other specialists in state real estate law by the U.S. Marshals Service, travel and subsistence related to a specific proceeding, and other related items as approved by the Director, Executive Office for Asset Forfeiture.

   The Director, Executive Office for Asset Forfeiture, may approve the expenses incurred in connection with retention of foreign counsel to gain access to information needed to conduct pre-seizure planning on identified assets, to effect a seizure of assets or to perfect title of forfeited property in a foreign country.

3. **Payment of qualified third party interests.** Qualified third party interests are those expenses incurred in the payment of valid liens, secured mortgages and debts owed to qualified general creditors pursuant to court order or a ruling on a petition for remission or mitigation of the forfeiture. This includes the restoration of the proceeds of sale pursuant to a court order or an administrative determination. Nothing in this section shall

preclude a departmental component from seeking reimbursement from the state or local agency that received the property that is the basis of the claim.

4. **Equitable sharing payments.** Equitable sharing payments are those payments which represent amounts paid directly to foreign governments or agencies and state or local agencies. Pursuant to 21 U.S.C. § 881 (e)(3)(a), these amounts shall reflect the degree of participation in the law enforcement effort resulting in the forfeiture, taking into account the total value of all property forfeited and the total law enforcement effort with respect to the violation of law on which the forfeiture is based.

5. **Program management expenses.** Program management expenses are those expenses incurred in conducting program responsibilities that are not related to any specific asset or to any one specific seizure or forfeiture. Expenses included under this heading are:

   a. Automatic Data Processing

      (1) Expenses for the purchase or lease of automatic data processing equipment which is utilized the majority of the time for asset forfeiture program related work;

      (2) Expenses for the development of computer software that will enhance the capability of the Department of Justice to identify, track, manage, process and dispose of forfeitable property may be approved by the Director, Executive Office for Asset Forfeiture.

      (3) Each investigative bureau and Department component receiving monies from the Fund for automatic data processing purposes shall develop internal guidelines consistent with these Guidelines governing the use of and accountability for automatic data processing resources acquired with monies from the Fund. Copies of such internal guidelines shall be filed with the Director, Executive Office for Asset Forfeiture.

      (4) The design of all systems to be developed in whole or in part with Fund monies shall be submitted to the Director, Executive Office for Asset Forfeiture, for approval. The design of such software shall be consistent with and advance the overall objective of the Department to implement and maintain an integrated asset seizure and forfeiture information system.

   b. Contracting for services directly related to the processing, data entry and accounting for forfeiture cases.

c. Printing and graphic services reasonably necessary to effectuate program goals.

d. Training

(1) The Executive Office for Asset Forfeiture shall have responsibility for oversight of forfeiture training and will assist Department components in coordinating asset seizure and forfeiture training conferences. Goals of the Department's training program shall be to provide consistent treatment of identical topics, to take advantage of opportunities joint training, and to foster cooperation and appreciation of the needs of all components.

(2) Any agency that anticipates requesting reimbursement for training personnel shall submit a justification indicating numbers of persons to be trained, the purpose and scope of training, the location and approximate cost of such training, an outline of topics in need of coverage, and the priority of training needs, as requested by the Director, Executive Office for Asset Forfeiture.

(3) A consolidated training calendar shall be maintained by the Executive Office for Asset Forfeiture for asset seizure and forfeiture training for Department components.

(4) The Assets Forfeiture Fund may be used to finance necessary training expenses directly related to the asset forfeiture program. Generally, this will include:

(a) any required training for employees or contractors dedicated to the asset forfeiture program (e.g., trial advocacy for asset forfeiture attorneys, training on agency computers for contract employees);

(b) any exclusively asset forfeiture training program that is conducted for other personnel, for whom asset forfeiture is an ancillary duty, to enable them to be more effective in performing asset forfeiture program functions; and

(c) that portion of a broader law enforcement training program that directly related to the identification, tracking, evaluation, seizing, processing, accounting for, management or disposition of property subject to forfeiture

(e.g., 25 percent of the expenses of a money laundering conference or a drug investigation conference if 25 percent of the conference program deals directly with the asset forfeiture program).

Exceptions may be granted on a case-by-case basis by the Director, Executive Office for Asset Forfeiture.

e. Other types of general program management and operational costs as approved by the Director, Executive Office for Asset Forfeiture.

6. **Investigative expenses.** Investigative expenses are those expenses normally incurred in the identification, location and seizure of property subject to forfeiture. Investigative expenses statutorily eligible to be paid from the Fund include such items as:

a. Awards for information concerning violations of the criminal drug laws;

b. Awards for information leading to the forfeiture of property under the Comprehensive Drug Abuse Prevention and Control Act of 1970 or the Racketeer Influenced and Corrupt Organizations (RICO) statute;

c. Awards for information concerning the killing or kidnapping of a Federal drug law enforcement agent;

d. Purchase of evidence of any violation of the Controlled Substances Act, the Controlled Substances Import and Export Act, RICO or 18 U.S.C. §§ 1956 and 1957;

e. Contracting for services directly related to the identification of potentially forfeitable assets;

f. Equipping of conveyances for drug law enforcement functions; and,

g. The storage, protection and destruction of controlled substances

### C. Liens and Mortgages

1. Liens or mortgages on real property placed into federal official use or transferred to state or local agencies are not payable from the Fund unless expressly approved by the Director, Executive Office for Asset Forfeiture.

2. Liens and mortgages shall be satisfied after the sale of forfeited property pursuant to a determination to remit or mitigate the forfeiture or an order of the court, except under the following conditions where payments may be made from the Fund:

   a. Where the payment prior to sale will improve the United States' ability to convey title to the property;

   b. Where the United States has substantial equity in forfeited real property and payment prior to sale will not result in a net loss to United States; or

   c. Where the property is approved for placement into official use by an investigative bureau or the U.S. Marshals Service and all necessary approvals have been obtained.

### D. Limitations on Use of the Fund

1. Items not payable from the Fund include:

   a. Personnel expenses (e.g., salaries, overtime and benefits) for employees of the United States;

   b. Expenses in connection with the seizure, detention and forfeiture of property where the seizure was effected by a U.S. Postal Inspection Service or a U.S. Customs Service officer and the proceeds of forfeiture, if any, are to be deposited into the Postal Fund or the Customs Forfeiture Fund, respectively;

   c. Purchase of real property or any interest therein except to acquire full title to or to satisfy liens or mortgages on forfeited property;

   d. Payments to equip property transferred to federal agencies (other than investigative bureaus or the U.S. Marshals Service) or state or local agencies;

   e. Expenses in connection with the seizure, detention and disposition of property where the seizure was effected for debt collection or other non-forfeiture purposes; and

   f. Reception and representation expenses (e.g., refreshments, meals, gifts or entertainment).

2. Claims of unsecured creditors generally may not be paid from the Fund, particularly if such payment may jeopardize the legitimate claims of existing lienholders.

Pursuant to 28 C.F.R. § 9.6(b), claims of unsecured creditors for debts incurred within one hundred and twenty (120) days before seizure may be paid by the U.S. Marshals Service in order to preserve the continued operation of a seized business. Such payable expenses include the following:

a. Payment of reasonable salaries and benefits of employees not believed to have been involved in the unlawful activities giving rise to forfeiture and not having an ownership interest in the business entity;

b. Payments to third party contractors for goods or services essential to carry on the business and who continue to provide those goods or services as in the regular course of business; and

c. Utilities.

3. Payment of Expenses

a. Asset management expenses incurred by the U.S. Marshals Service, qualified third party interests and equitable sharing payments set forth above will be obligated against and paid directly from the Fund in accordance with standard Departmental financial management and accounting policies and procedures.

b. Pursuant to a properly executed Reimbursement Agreement Between Agencies (DOJ-216), all other obligations incurred under these Guidelines will be paid by the agency incurring the obligation and will be reimbursed from the Fund on a monthly basis where practicable by means of an Inter-Agency Fund Transfer (SF-1081).

c. It is the responsibility of the agency incurring the obligation to prepare the DOJ-216 and SF-1081 forms and obtain the proper authorization from the Director, U.S. Marshals Service. Each DOJ-216 and SF-1081 shall identify the appropriation to be reimbursed from the Fund.

d. Approved DOJ-216's and SF-1081's will be registered upon receipt by the U.S. Marshals Service. Properly authorized requests (SF 1081's) will be processed for payment in order of receipt. If sufficient funds are available, the U.S. Marshals Service shall approve the transfer of funds to the appropriation identified.

e. All transfers from the Fund shall be based upon certification of actual expenditures by the requesting agency. Transfers shall not be made based upon estimated obligations.

f. If a payment requested is in excess of funds available, the U.S. Marshals Service shall not process the request and shall advise the requesting agency of the reason.

g. If the U.S. Marshals Service and the requesting agency cannot agree on deferral or cancellation of the request, the parties shall seek in writing a determination from the Deputy Attorney General or his designee. U.S. Marshals Service shall provide notice of the decision to the agency submitting the SF-1081.

**E. Preparation of Estimates of Anticipated Expenses and Reimbursement Agreements**

1. By June prior to the fiscal year in which the expenses are anticipated and as necessary during the fiscal year, any agency that anticipates requesting reimbursement for expenses from the Fund hall submit requests to the Director, Executive Office for Asset Forfeiture, based upon estimates of anticipated expenditures. Prior to submission to the Director, Executive Office for Asset Forfeiture, these requests shall be reviewed and approved in accordance with the agency's internal procedures for budget submissions.

2. Requests for anticipated reimbursements with accompanying justification shall be submitted in the format required by the Director, Executive Office for Asset Forfeiture. Information regarding appropriated resource levels shall be provided as part of the justification.

   These requests shall include information regarding the effect that any reprogramming of appropriated resources had on the need for additional resources from the Fund.

3. In evaluating the requests and approving allocations, the Deputy Attorney General or his designee shall ensure that:

   a. Overall amounts recommended for authorization in a budget for any fiscal year do not exceed appropriation limitations for that year; and

   b. Overall amounts recommended for authorization in a budget for any fiscal year do not exceed an agreed upon estimate of amounts available for obligation, to include current year income plus any carry-over from the prior year.

4. To the extent possible, the Deputy Attorney General or his designee shall approve a budget of expenses prior to the beginning

of the fiscal year. This budget will form the basis for the establishment of reimbursement agreements between the U.S. Marshals Service as the administrator of the Fund and the participating agencies.

5. An agency may change the distribution of its allocation among particular categories of reimbursable expenses during a fiscal year without approval of the Deputy Attorney General or his designee, subject to the following conditions:

   a. A redistribution cannot increase the total amount allocated for expenses subject to appropriation (i.e., program management and investigative expenses).

   b. A proposal for any redistribution shall be submitted with supporting justification to the Director, Executive Office for Asset Forfeiture, thirty (30) days in advance of the proposed effective date of the proposal. A copy of the proposed redistribution shall also be provided to the U.S. Marshals Service.

   The Director, Executive Office for Asset Forfeiture, may deny such proposed redistribution with notice to the agency and U.S. Marshals Service.

6. Forfeiture funds allocated for specific purposes shall supplement and not supplant appropriated funds provided explicitly or implicitly for those purposes. The calculation of appropriated funds available for specific purposes shall take into account any completed reprogrammings.

**F. Payment of Awards**

Monies from the Fund may be used to pay awards for specific information or instances of assistance. These monies are not to be used to pay retainers or to pay cooperating informants in the expectation of future specific information or assistance.

1. Applications for awards will be accepted on behalf of any individual. (The term "individual" encompasses corporations and associations.)

2. Applications for awards shall be submitted in a format developed and approved by the Director, Executive Office for Asset Forfeiture.

3. Awards pursuant to 28 U.S.C. § 524(c)(1)(C) shall be paid only after disposition of the forfeited property.

4. Awards will not be paid to individuals who are representatives of state or local agencies. Any information or assistance provided by an individual who represents a state or local agency will be compensated under rules governing transfers of forfeited property.

5. Any awards pursuant to 28 U.S.C. § 524(c)(1)(B) shall not exceed $250,000. Any award pursuant to 28 U.S.C. § 524(c)(1)(B) or (C) shall preclude the recipient of such award from any additional award based on a forfeiture resulting in any way from the same information or assistance.

   Any award pursuant to 28 U.S.C. § 524(c)(1)(C) shall not exceed the lesser of $250,000 or one- fourth the amount realized by the United from the property forfeited.

   a. If forfeited property is sold, then the "amount realized by the United States from the property forfeited" is the net proceeds.

   b. If forfeited property is retained for official use, the "amount realized by the United States from the property forfeited" is the value of the property at the time of seizure minus expenses paid from the Fund under Section VII.B (1, 2 and 3).

6. All applications for awards shall be directed to the field office of the investigative bureau responsible for processing the forfeiture. Non-Department of Justice agencies (e.g., Organized Crime Drug Enforcement Task Force members such Internal Revenue Service) should be instructed to direct any inquiries concerning these awards to the investigative bureau responsible for processing the forfeiture.

7. The investigative bureau field unit receiving or initiating an application for an award will prepare a written report that will evaluate the value of the information or assistance provided by the applicant and recommend an amount to be paid.

8. If more than one application for an award pursuant to 28 U.S.C. § 524(c)(1)(C) is received in a single action for forfeiture, the applications should be handled in a consolidated manner.

   Decisions on all applications should be made at the same time, and should consider the comparative value of information or assistance provided by each applicant and the aggregate amount of award(s) to be made. In these cases, the limits discussed in paragraph VII.F.3-4 apply to the aggregate amount of the awards to be made.

9. Recommendations for payment of awards pursuant to 28 U.S.C. § 524(c)(1)(B) shall:

a. Identify the investigation, including agency and/or federal district court case numbers;

b. Identify the recommended dollar amount of the award; and

c. Include the recommendation of the amount of the award, the seriousness and scope of the criminal activity involved, the degree to which the information or assistance aided the investigation, and whether the information or assistance provided was unique or indispensable.

10. Recommendations for payment of awards pursuant to 28 U.S.C. § 524(c)(1)(C) shall:

a. Identify the property or properties regarding which information or assistance was provided, including agency and/or federal district court case numbers;

b. Identify which of those properties were forfeited and when;

c. Identify the recommended dollar amount of the award, the degree to which the information or assistance aided in the forfeiture and whether the information or assistance provided was unique or indispensable; and

d. Identify costs incurred under Section VII.B.1-3 with respect to the property forfeited. A report on those costs shall be obtained from the U.S. Marshals Service.

11. Approval of awards will be in accordance with 28 U.S.C. § 524(c) (2) and any subsequent delegations of authority.

**G. Purchase of Evidence**

1. Pursuant to 28 U.S.C. § 524(c)(1)(G) the Attorney General is authorized to utilize monies from the Fund for purchase of evidence of any violation of the Controlled Substances Act, the controlled Substances Import and Export Act, 18 U.S.C. Ch. 96 or 18 U.S.C. §§ 1956 and 1957.

2. Approval of amounts for the purchase of evidence will be in accordance with 28 U.S.C. § 524(1)(G) and any subsequent delegations of authority.

3. Each investigative agency shall develop internal guidelines covering the use of monies from the Fund for the purchase of evidence. Such guidelines shall be filed with the Executive Off ice for Forfeiture.

4. If a participating agency recovers part or all of the monies that are used to purchase evidence for which it has obtained reimbursement from the Fund, the recovered monies shall be returned to the Fund.

**H. Payments to Equip Conveyances for Drug Law Enforcement Functions**

1. Decisions to equip a government-owned or leased conveyance (vehicle, vessel, or aircraft) for drug law enforcement functions shall be made by the organizational component within the agency which is responsible for management of the conveyance.

2. Reimbursable payments may be bade to equip conveyances which are used the majority of the time for activity relating to the investigation or apprehension of violators of the federal drug laws and the seizure and forfeiture of their assets

   Monies from the Fund may not be used for recurring expenses such as fuel, spare or replacement parts, maintenance, or replacement of equipment due to wear and tear by the agency using the conveyance.

3. Equipping should generally occur before the conveyance is placed into official use and only if it is intended to be in service for at least two (2) years.

   Exceptions may be made to this guidance only under extraordinary circumstances and shall be documented.

4. Unreasonable amounts shall not be spent on equipping Government-owned or leased conveyances for-drug law enforcement purposes. Purchased equipment must be affixed to the conveyance and used integrally with the conveyance.

5. Each agency shall establish internal guidelines which shall ensure the effective utilization of monies from the Fund budgeted for equipping forfeited, leased or owned conveyances for drug law enforcement purposes. These guidelines should consider the estimated useful life of the conveyance and the availability of similarly equipped conveyances. Such guidelines, and any Subsequent revisions, are to be filed with the Executive Office for Asset Forfeiture. Agencies shall maintain records, by conveyance, of amounts from the Fund spent on equipping.

**I. Cash Management**

Seized cash, except where it is to be used as evidence, is to be deposited promptly in the Seized Asset Deposit Fund pending forfeiture. The Director, Executive Office for Asset Forfeiture, may grant exceptions

to this policy in extraordinary circumstances. Transfer of cash to the United States Marshal should occur within sixty (60) days of seizure or ten (10) days of indictment.

## VIII. Transfer of Forfeited Property to Foreign Countries

A. The Attorney General may transfer any forfeited personal property or the proceeds from the sale of any forfeited personal or real property, as authorized by statute, to a foreign country which participated directly or indirectly in any acts which led to the seizure or forfeiture of the property, if such transfer:

1. Has been agreed to by the Secretary of State;

2. Is authorized in an international agreement the United States and the foreign country; and,

3. Is made to a country which, where applicable, has been certified under § 481(h) of the Foreign Assistance Act of 1961.

B. Requests by a foreign agency shall be in the form prescribed by the Director, Executive Office for Asset Forfeiture.

## IX. Discontinuance of Federal Forfeiture Proceedings

A. Federal Judicial Forfeiture Proceedings

1. A decision to discontinue a federal judicial forfeiture proceeding against any seized asset in favor of a state or local forfeiture proceeding requires the personal approval of the United States Attorney after review of the evaluation and recommendation of the presenting investigative bureau.

2. In making this decision, the United States Attorney shall consider the impact of such decision on the financial status of the Fund.

3. Decisions to discontinue judicial forfeitures in favor of state or local proceedings are to be documented.

B. Federal Administrative Forfeiture Proceedings

1. A decision to discontinue a federal administrative forfeiture proceeding against any seized asset in favor of a state or local forfeiture proceeding requires the approval of the head of the investigative bureau.

2. In making this decision, the head of the investigative bureau must consider the impact of such decision on the financial status of

the Fund and where appropriate consult with the U.S. Marshals Service in that regard.

3. Investigative bureaus shall develop guidelines for recording these decisions and providing reports to the Director, Executive Office for Asset Forfeiture, as requested.

**X. U.S. Customs Service Forfeitures**

A. Pursuant to 28 U.S.C. § 524 (c), all proceeds from the forfeiture of property under any law enforced or administered by the Department are to be deposited in the Department of Justice Assets Forfeiture Fund, except as specified in 28 U.S.C. § 524(c)(4) and except to the extent that the seizure was effected by a U.S. Customs Service officer or to the extent that custody was maintained by the Customs Service, in which case the provisions of 19 U.S.C. § 1613b (Customs Forfeiture Fund) shall apply.

B. To the extent that the U.S. Marshals Service may have the authority and the capacity and pursuant to a Memorandum of Understanding between the Department of Treasury and the Department of Justice, the U.S. Marshals Service may store and maintain seized property for the U.S. Customs Service. The reimbursement for expenses incurred by either the U.S. Marshals Service or the U.S. Customs Service attendant to custody of seized property shall be in accordance with this agreement.

C. Pursuant to 19 U.S.C. § 1616a, requests for transfers of forfeited property by federal agencies or by participating foreign, state and local agencies in forfeitures where the seizure was effected by a U.S. Customs Service officer or custody was maintained by the Customs Service shall be directed to the Customs Service for processing and disposition pursuant to guidelines of the Department of Treasury. An information copy shall be sent to the United States Attorney in the district of seizure.

D. In the event of an unresolved dispute concerning whether a forfeiture constitutes a U.S. Customs Service or Department of Justice forfeiture for purposes of cash or proceeds disposition or for federal, state and local transfers, the Deputy Attorney General or his designee and the Assistant Secretary for Enforcement, Department of the Treasury, shall resolve the issue.

July 31, 1990 /s/

Date

DICK THORNBURGH
ATTORNEY GENERAL

# The Procurement Office at a Glance

**Preface:**

The Headquarters Contracts Team is responsible for the centralized procurement of national supplies and services for the United States Marshals Service (USMS). The Simplified Acquisitions Team processes headquarters and field requirements up to $100,000. The ninety-four (94) field offices have delegated procurement authority of at least $25,000 and some $100,000.

Headquarters and field offices buy supplies and services from Small businesses, Socially and Economically Disadvantaged, HUBZone, Women-Owned, Service-Disabled and Veteran- Owned businesses to the maximum extent practicable.

Contained in this booklet are the purchasing procedures mandated by: Code of Federal Regulations (CFR), Title 48, Chapter 1; Federal Acquisition Regulations; Federal Property Management Regulations; Department of Justice Acquisition Regulations; agency policies and procedures and other general information concerning doing business with the USMS.

Additional information regarding our agency's forecast of contracting opportunities and prime contractor directory can be obtained via the Department of Justice, Office of Small and Disadvantaged Business Utilization at their website, www.usdoj.gov/jmd/osdbu/.

The USMS's procurement staff has, in the past, and will continue in the future, to encourage participation by all enterprises capable of providing supplies and services which are not available through mandatory procurement sources.