IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT J. FRANK, | ) | |
| | ) | NO. 06-73C |
| Plaintiff, | ) | (Senior Judge Hodges) |
| | ) | |
| vs. | ) | PLAINTIFF'S |
| | ) | RESPONSE TO |
| UNITED STATES OF AMERICA, | ) | DEFENDANT'S |
| | ) | SECOND MOTION |
| Defendant. | ) | TO DISMISS |

Plaintiff Robert J. Frank resists Defendant United States' Second Motion to Dismiss in its entirety and responds as follows.

**TABLE OF CONTENTS**


**I. THE UNITED STATES ARGUMENT ON STANDING IS MISPLACED .......... 2**

**II. THE FIVE-YEAR STATUTE OF LIMITATIONS BARS THE UNITED STATES' ASSERTION THAT THE 1987 TRANSFER OF GARDNER'S LANE TO ROBERT J. FRANK WAS FRAUDULENT .......... 4**

**III. THERE IS INSUFFICIENT EVIDENCE THAT THE TRANSFER WAS FRAUDULENT .......... 7**

A. **The UFTA Does Not Apply .......... 7**

B. **Iowa Law of Fraudulent Conveyances .......... 8**

C. **Even if the UFTA Applies, the United States Has Not Introduced Sufficient Evidence to Meet Its Terms .......... 9**

D. **The United States has Not Shown That It was Prejudiced by the Transfer .......... 15**

E. **The United States is Not a Creditor Who Can Seek to Set Aside the Transfer as Fraudulent .......... 15**

IV. THE UNITED STATES HAS WAIVED ITS CLAIM OF FRAUDULENT CONVEYANCE AND/OR IS BARRED BY ACCORD AND SATISFACTION AND/OR ESTOPPEL .................... 16

A. Accord and Satisfaction .................... 17

B. Estoppel .................... 19

C. Waiver .................... 20

CONCLUSION .................... 21

SUPPLEMENTAL APPENDIX ("PSA")

IA Legis 1121 (1994) (adopting Uniform Fraudulent Transfers Act) .................... 1-11

## I. THE UNITED STATES ARGUMENT ON STANDING IS MISPLACED

The United States argues that Robert J. Frank lacks standing to pursue his claims because the 1987 transfer of the Gardner's Lane property to him constituted a fraudulent conveyance. That argument is misplaced.

At all times material to this case and at present, Robert J. Frank is the record owner of the Gardner's Lane property. His standing is shown by the 1987 deed, properly recorded. A 66-67.[1] As the record owner of the property, he is the person entitled to collect storage fees from the United States for its storage of the vehicles on the property after notice to the United States that such storage fees

[1] "A" refers to the documents included in the Appendix filed with Defendant's first Motion to Dismiss, filed May 25, 2006. "SA" refers to the Supplemental Appendix filed with the Defendant's second Motion to Dismiss. "SRA" refers to the Appendix filed with Plaintiff's February 1, 2008, response to Defendant's Status Report. "PSA" refers to Plaintiffs' Supplemental Appendix attached to this Resistance.

would be assessed if the vehicles were not removed. Robert J. Frank is the person "injured-in-fact" by the United States' storage of vehicles on the property.

Further, this Court has no jurisdiction to set aside the transfer as a fraudulent conveyance. In fact, the United States does not even ask this Court to set aside the transfer as fraudulent.

The lynchpin of the United States' argument is that "Mr. Frank cannot establish legal ownership of Gardner's Lane, however, because, as demonstrated below, he acquired it from his father through a fraudulent transfer, which created a legal defect in ownership pursuant to Iowa law. Absent legal ownership of Gardner's Lane, Mr. Frank cannot claim injury-in-fact resulting from the United States' alleged use of the land to store forfeited vehicles. Accordingly, Mr. Frank lacks standing to sue the United States in this case." *See* Defendant's Second Motion to Dismiss at 12 (emphasis added).

However, the United States provides no authority in support of its claim of "legal defect in ownership." The United States assumes that a fraudulent conveyance voids the transfer *ab initio*, removes any rights that the transferee has in the property and voids any contracts made by the transferee while in possession of the property. The United States cites no Iowa law or other authority in support of that implication. That implication would be completely illogical. Otherwise, the transferee of a fraudulent conveyance of real estate could mortgage the property and, then, after the transfer is declared fraudulent, would have no obligation to the mortgage holder.

## II. THE FIVE-YEAR STATUTE OF LIMITATIONS BARS THE UNITED STATES' ASSERTION THAT THE 1987 TRANSFER OF GARDNER'S LANE TO ROBERT J. FRANK WAS FRAUDULENT

The relevant facts on this issue are:

A. Robert H. Frank transferred the Gardner's Lane property to Robert J. Frank on January 6, 1987, by recorded quitclaim deed. A 66-67.

B. The United States had actual notice of the 1987 transfer by Robert H. Frank to Robert J. Frank on or before October 30, 2000. *See* Indictment filed against Robert H. Frank in the United States District Court for the Northern District of Iowa on October 30, 2000. A 1-49. Specifically, the United States specifically alleged in Count 50 that the real estate is "titled under the name 'Robert J. Frank.'" A 47. The United States also filed a notice of lis pendens with the Dubuque County Recorder on November 15, 2000. *See* A 78-79 (Release of Lis Pendens referencing its filing of 11/15/00).

The deed was recorded. A 66-67. Thus, the United States had constructive notice of the transfer at the time the deed was recorded. "[W]here the alleged wrong consists in making a conveyance or transfer of title to real estate, the record of such instrument and the constructive notice thereby imparted is held to charge all persons adversely affected thereby with knowledge thereof, and the period of limitation begins with such record." *Anderson v. King*, 93 N.W.2d 762, 766 (Iowa 1958) (citations omitted). As noted above, the United States had actual notice of the transfer on or before October 30, 2000, when the United States filed its second Indictment against Robert H. Frank, sought forfeiture of the Gardner's Lane property, and noted that Robert J. Frank was the owner of record of that property.

The statute of limitations for fraud in Iowa is five years. *See* Iowa Code § 614.1(4). Further, Iowa Code § 684.9, part of the Iowa Uniform Fraudulent Transfer Act relied upon by the United States, provides that "[a] cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought "within five years after the transfer was made or the obligation was incurred" or, in some circumstances, "if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Thus, the United States had to make its claim to set aside the transfer as fraudulent on or before January 6, 1992 (based on constructive notice) and at the absolute possible latest October 30, 2002 (based on acknowledgment of actual notice). Robert J. Frank's Complaint in this matter was filed on January 26, 2006, and the United States did not assert its fraudulent conveyance theory until recently. The United States did not assert its claim of fraudulent conveyance in a timely fashion. Accordingly, the statute of limitations bars the United States' claim that the 1987 transfer should be set aside as fraudulent.

The United States argues that the statute of limitations does not apply to it while acting in its sovereign governmental capacity. *See* Defendant's Second Motion to Dismiss at 14. That argument is specious as, with respect to the issues in this case, the United States was clearly acting in its proprietary capacity as an owner of the vehicles determining where to store them. *See Kania v. United States*, 227 Ct.Cl. 458, 464 (1981) (United States acts in its proprietary capacity

when it "engages in the purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves").

Recognizing that the Court may disagree that it was acting in its sovereign capacity, the United States argues that the statute of limitations still does not apply when the United States is acting in its proprietary capacity. *See* Defendant's Second Motion to Dismiss at 14. The United States cites *Fansteel Metallurgical Corp. v. United States*, 172 F.Supp. 268 (Ct. Cl. 1959) (citing *United States v. Summerlin*, 310 U.S. 414 (1940)), as its sole authority for that proposition. However, in *United States v. California*, 507 U.S. 746, 757 (1993), the United States Supreme Court distinguished *Summerlin* on the ground that, in *Summerlin*, "the Government was proceeding in its sovereign capacity." Thus, *Summerlin* and *Fansteel* are not on point.

*California* also discusses a very significant other point. In *Summerlin*, "the right at issue was obtained by the Government through, or created by, a federal statute." *California*, 507 U.S. at 757. The issue in *California* was the application of a state statute of limitations when the right alleged by the Government was a state created right. *Id.* at 757-58. That point was more succinctly explained in the Ninth Circuit's underlying opinion in *United States v. California*, 932 F.2d 1346 (9th Cir. 1991), which was affirmed by the Supreme Court:

> The United States points out that the Supremacy Clause and policies protecting the federal treasury provide the United States with litigation advantages over other plaintiffs in

> enforcing its rights, such as freedom from state statutes of limitations and from the defense of laches. Although sovereign immunity normally exempts the United States from state statutes of limitations [citation omitted], when a claim procedure is a condition precedent to, or an integral element of, a state-created cause of action, the United States is not exempt from the time bar, even if a federal statute of limitations may otherwise apply [citation omitted].

*California*, 932 F.2d at 1351.

In the case at hand, the United States argues that "to establish standing, [plaintiff] must prove his legal ownership of Gardner's Lane under Iowa law." *See* Defendant's Second Motion to Dismiss at 12 (citing *Washington Metro. Area Transit Auth. v. United States*, 54 Fed. Cl. 20, 23 (2002). The United States then resorts to Iowa's Uniform Fraudulent Transfer Act to argue that the 1987 transfer was fraudulent. *Id.* at 15-18. Clearly, Iowa state law provides the underlying basis for the United States' argument. Accordingly, the Iowa five-year statute of limitations applies to bar the United States from asserting a fraudulent conveyance.

## III. THERE IS INSUFFICIENT EVIDENCE THAT THE TRANSFER WAS FRAUDULENT

### A. The UFTA Does Not Apply

At the outset, Plaintiff notes that the Iowa Uniform Fraudulent Transfer Act does not apply in this case. The transfer at issue occurred in 1987. The UFTA was enacted in 1994. *See* 1994 IA Legis. Serv. 1121 (West) (PSA 2 to 11). Section 18 of the Act provides that "This Act takes effect on January 1, 1995, and

applies to all causes of action arising on or after that date." PSA 11. The cause of action arose in 1987 upon the transfer alleged to have been fraudulent. The United States has not supplied the Court with the law in effect in 1987 when the transfer actually took place. However, the undersigned counsel's review of pre-UFTA Iowa law indicates that the Iowa UFTA largely codified pre-existing common law. Plaintiff reserves the right to assert that the applicable law differs from the UFTA in any material respects which become pertinent.

B. Iowa Law of Fraudulent Conveyances

"All of the circumstances [of the transfer] are ordinarily considered together, and, in the end, the resolution of each case rests with its own peculiar facts. The convergence of several badges or indices may support an inference of fraud, which grows in strength as the badges increase in number. Clear and convincing evidence must support a finding of fraud." *Textron Financial Corp. v. Kruger*, 545 N.W.2d 880, 883 (Iowa Ct. App. 1996) (citations omitted).

"Courts evaluate the circumstances of the transaction as a whole." *Hartford-Carlisle State Bank v. Shivers*, 552 N.W.2d 909, 911 (Iowa Ct. App. 1996) (citation omitted). "'Mere ground for suspicion does not make a case in favor of a creditor.'" *Id.* at 911. "[F]raud is not presumed and must be established by clear and convincing evidence." *Production Credit Ass'n of the Midlands v. Shirley*, 485 N.W.2d 469, 473 (Iowa 1992) (citation omitted).

C. Even if the UFTA Applies, the United States Has Not Introduced Sufficient Evidence to Meet Its Terms

At the time of the transfer on January 6, 1987, the United States was not a present creditor of Robert H. Frank. The United States did not become a creditor until Robert H. Frank was sentenced on April 4, 1988, in the first criminal prosecution by the United States to, *inter alia*, a fine of $150,000, and Judgment was entered accordingly. A3-4.

Under Iowa Code § 684.4(1) a transfer is fraudulent as to a future creditor under two circumstances. First, the transfer is fraudulent if made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Iowa Code § 684.4(a). Second, the transfer is fraudulent if the debtor essentially became insolvent as a result of the transaction. *See* Iowa Code § 684.4(b). The United States does not claim that the second alternative applies and there is no evidence that the conditions of that alternative were met. Accordingly, Plaintiff does not discuss the second alternative further.

Actual intent of a fraudulent conveyance is a fact question which is normally impossible to determine on motion and must await trial on the merits. *See Protocomm Corp. v. Novell Advanced Services, Inc.*, 171 F.Supp.2d 459, 468 (E.D. Pa. 2001) ("The existence of actual intent is a question of fact" and finding genuine issues of fact precluded summary judgment on actual intent to make a fraudulent conveyance); *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 834 (Cal. Ct. App. 2005) (""Whether a

conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer."); *FDIC v. Isban*, 870 F.Supp. 24, 28 (D. Conn. 1994) ("The ultimate determination of whether a conveyance has been made with fraudulent intent is a question of fact."); *Tyers v. Coma*, 570 A.2d 186, 188 (Conn. 1990) ("Whether the conveyance in question was fraudulent is purely a question of fact."). *Cf. Brubaker v. Barlow*, 326 N.W.2d 314, 316 (Iowa 1982) (reversing grant of summary judgment on whether deceased's transfer of bank accounts to his children were irrevocable gifts and stating that "Unless [the] evidence is so clear that reasonable minds can reach only one conclusion, the question of intent is a fact question which cannot be disposed of on a motion for summary judgment.").

Iowa Code § 684.4(2) outlines eleven factors that may be considered in determining intent. The pre-UFTA Iowa caselaw largely considered the same factors. The United States argues that five are present here.

1. Transfer to an Insider: It is undisputed that the transfer was to Robert H. Frank's son, Robert J. Frank, who would be classified as an insider. However, transfer to a blood relative is not a per se indication of fraud. *See Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995). "The relationship of parent and child [] 'is of no primary importance other than a circumstance to be considered as bearing upon the alleged fraud." *Monona County v. Schoenherr*, 105 N.W.2d 91, 93 (Iowa 1960). *See also Pierson v.*

*Heisey*, 19 Iowa 114 (Iowa 1865) (father's gift of piano to daughter was not fraudulent as to subsequent creditors even though piano was kept in father's home).

2. Consideration: The United States misrepresents the consideration as "$10.00." The deed on its face provides that the consideration was for "Ten ($10.00) Dollars and other good and valuable consideration" and further provides that "Transfer is from father to son without consideration." The factor at issue is "whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." Iowa Code § 684.4(2)(h). Love and affection is certainly valid as consideration, otherwise gifts would always constitute fraudulent conveyances.

3. Timing: The United States argues that the transfer was made shortly after Robert H. Frank "had been sued or threatened with suit," Iowa Code § 684.4(2)(d), due to the pendency of state court charges against him. However, Robert H. Frank was subsequently acquitted of those charges in April of 1987. A 3 at paragraph i. No federal charges were filed, or likely to have been contemplated, until after that acquittal. *Id.* at paragraph j (federal indictment filed November 19, 1987). The transfer was not made at a time when Robert H. Frank was threatened with any claim by the United States or at a time any such claim was pending.

4. Control: The United States argues that Robert H. Frank retained some control over the property by keeping the vehicles at issue on the property. However, there is no evidence that Robert H. Frank exercised any control over the Gardner's Lane real estate by living there or in any other manner. There is no evidence that Robert H. Frank has asserted any right or claim to recover ownership of the Gardner's Lane property since it was transferred in 1987. There is no evidence that Robert J. Frank would be in any way precluded from selling or encumbering the Gardner's Lane property if he chose to do so. The mere fact that Robert J. Frank allowed Robert H. Frank to store the vehicles on the property for several years without charge is insufficient evidence that Robert H. Frank "retained possession or control of the property transferred after the transfer." Iowa Code § 684.4(2)(b). There are numerous situations where a relative allows another relative to store personal property on their real estate without charge, for example, parents allowing children to store personal belongings while at college.

5. Concealment of Other Assets: The United States argues that Robert H. Frank concealed other assets to avoid payment of his criminal judgment. The United States cannot use Robert H. Frank's conduct following entry of that judgment in 1988, most of which occurred after 1998 after Robert H. Frank's release from prison, to argue that he fraudulently transferred the Gardner's Lane property in 1987.

The United States apparently concedes that the other six "badges of fraud" outlined in Iowa Code § 684.4(2) do not exist. While the United States would like to ignore those factors, all of the factors must be considered, even the ones which point towards no fraudulent transfer. Several of those indicia are significant here.

Most significant is Iowa Code § 684.4(2)(c): "Whether the transfer or obligation was disclosed or concealed." The transfer was noticed in a recorded deed. That recorded deed was notice to the world of the transfer. There was no effort to hide the transfer. That fact alone is strong evidence that the transfer was not fraudulent. Any present or future creditors were on notice, constructive or actual, of the transfer in 1987. It is telling that no creditor of Robert H. Frank, in twenty years, has sought to set aside the transfer as fraudulent.

Also, the United States has produced no evidence that "the transfer was of substantially all the debtor's assets," Iowa Code § 684.4(2)(e), or that "the debtor was insolvent or became insolvent shortly after the transfer was made." Iowa Code § 684.4(2)(h).

Finally, there was no evidence that Robert H. Frank "absconded" after making the transfer. *See* Iowa Code § 684.4(2)(f). He duly served ten years in prison as a result of the criminal judgment for his first federal criminal conviction.

In addition, it seems that if the United States truly believed that the transfer was fraudulent, the United States would have sought to set the transfer aside in 1988 after obtaining its criminal judgment against Robert H. Frank. The United States did not do so. The United States only raised its "fraudulent conveyance"

claim after its first Motion to Dismiss was denied. The United States is throwing every piece of spaghetti it has against the wall in the hopes that one will stick and it can wiggle out of its obligation to pay Robert J. Frank for storing the forfeited junk vehicles on his property for several years.

Obviously, whether the 1987 transfer of the Gardner's Lane property was made with an actual intent to defraud creditors depends on the Court's assessment of the facts and the inferences to be drawn therefrom, including actually seeing the witnesses involved to judge their credibility. *Cf. Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 (Fed. Cir. 1986) ("The drawing of inferences, particularly in respect of an intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witnesses."). The evidence must also be viewed through the lens of the high burden of proof that the United States bears: clear and convincing evidence. Intent is not an issue that the Court can determine on a Motion to Dismiss. Intent is an issue that must be decided after trial on the merits.[2] Accordingly, the Motion must be denied.

---

[2]Cases such as *In re Sherman*, 67 F.2d 1348 (8th Cir. 1995), cited by the United States are not on point as those cases involved a finding of a fraudulent conveyance after trial. In those cases, the issue was whether there was sufficient evidence to support the trial court's finding. That is a substantially different question than whether the Court can resolve disputed factual issues on motion.

D. The United States has Not Shown That It was Prejudiced by the Transfer

"A fraudulent conveyance will not be set aside unless complaining creditors can show they were prejudiced. Prejudice means the creditors must show they would have received something which was lost by reason of the conveyance." *Textron*, 545 N.W.2d at 885.

The United States makes no showing or argument of prejudice. The United States does not even acknowledge that it bears the burden of showing that it was prejudiced. Significantly, the United States is not seeking to set aside the 1987 transfer for the purpose of collecting on its prior judgment against Robert H. Frank. The United States is arguing that Robert J. Frank is not the "true" owner of the property for the purpose of avoiding payment of storage fees for the forfeited vehicles. The United States has not "lost" something it otherwise "would have received" as a result of the conveyance.

E. The United States is Not a Creditor Who Can Seek to Set Aside the Transfer as Fraudulent

Under Iowa Code § 684.7, only a "creditor" may seek to set aside a transfer as fraudulent. "Creditor" is defined in Iowa Code § 684.1(4) as "a person who has a claim." "Claim" is defined in Iowa Code § 684.1(3) as "a right to payment." In the context of this case, the United States is not a "creditor." With respect to the issue of storage fees for the forfeited vehicles, the United States has no "claim" and no "right of payment" against Robert H. Frank or Robert J. Frank. The United

States, in the context of this case is a "debtor." It is Robert J. Frank, as creditor, who seeks to recover a debt owed to him by the United States.

The United States will likely argue in response that it is a "creditor" by virtue of the 1988 Judgment entered against Robert H. Frank for the fine in his criminal case. However, the United States is not acting in that capacity in this case. The United States is not seeking to set aside the transfer as a fraudulent conveyance for the purpose of collecting on its Judgment.

## IV. THE UNITED STATES HAS WAIVED ITS CLAIM OF FRAUDULENT CONVEYANCE AND/OR IS BARRED BY ACCORD AND SATISFACTION AND/OR ESTOPPEL

The United States has waived, is barred by accord and satisfaction and is estopped (among other legal and equitable principles) from making any claim of fraudulent conveyance. Robert J. Frank filed a Petition re: Forfeiture asserting his claim to the Gardner's Lane property with the United States District Court for the Northern District of Iowa. SRA 6, et seq. That Petition was forwarded to Assistant United States Attorney Martin J. McLaughlin on November 22, 2002. *Id.* The cover letter transmitting the Petition notes the United States' contentions that "(1) the original transfer in 1987 was fraudulent; and (2) at the time of the commission of the offenses, Butch [Robert H. Frank] was the actual/equitable owner of the property." SRA 8. Counsel expressed Robert J. Frank's position that those claims were barred by the statute of limitations and unsupported by evidence. SRA 8. Robert J. Frank proposed a settlement by which he would

waive his EAJA fee claim in exchange for the government dismissing the forfeiture proceeding as to Gardner's Lane. SRA 7.

Following subsequent verbal conversations between counsel, the United States and Robert J. Frank agreed that "the United States has agreed to dismiss the forfeiture proceeding regarding the Gardner's Lane property in exchange for Bobby Frank's waiver of any EAJA claim." SRA 30 (1/22/03 letter). In essence, the United States agreed that its position was frivolous and that Robert J. Frank's legal right to the Gardner's Lane property had arisen before any claim by the United States existed. The United States subsequently released its lis pendens notice, *see* SRA 32, and Robert J. Frank dismissed his Petition in the forfeiture action. *See* SRA 33-36.

As the United States has previously made the same arguments of fraudulent conveyance it is now making and as Robert J. Frank dismissed his Petition relating to the Forfeiture in reliance on the United States' wavier of those arguments, the United States should not be allowed to resurrect those arguments at this late date.

A. <u>Accord and Satisfaction</u>

The United States misconstrues the nature of the accord and satisfaction. It was an accord and satisfaction that Robert J. Frank was the legal owner of the Gardner's Lane property. The United States asserted in its forfeiture claim that Robert J. Frank was not the legal owner because of a fraudulent conveyance by Robert H. Frank to Robert J. Frank.

The elements of a valid accord and satisfaction are present, or at least there is a factual dispute as to whether an accord and satisfaction was achieved which must await trial for resolution. First, "proper subject matter" exists: whether Robert J. Frank is the legal owner of the Gardner's lane property or whether he was not, as alleged by the United States as part of the forfeiture.

Second, the United States makes no argument that it and Robert J. Frank were not competent parties. The fourth element, consideration, is clearly present. Robert J. Frank waived his EAJA fee claim in exchange for the United States' dismissal of its forfeiture claim.

Third, there was a meeting of the minds of the parties that the United States would withdraw its claim of forfeiture, which necessarily included its claim that Robert J. Frank was not the legal owner of the property due to a fraudulent conveyance, in exchange for Robert J. Frank withdrawing his claim that the United States' position was "frivolous" and for EAJA fees. The United States, supported by the self-serving affidavit of AUSA Martin J. McLaughlin, argues that there was no "meeting of the minds" on the purpose for the United States withdrawing its forfeiture claim. However, there was clearly a "meeting of the minds" on the essential terms of the accord and satisfaction: the United States would withdraw its forfeiture petition claiming that Robert J. Frank was not the record owner of the property and Robert J. Frank would withdraw his claim for EAJA fees. It is not essential that the parties agreed on the <u>reason</u> for that accord and satisfaction, although the reason was clearly expressed. In interpreting

settlement agreements and determining the intention of the parties, the court "look[s] to what the parties did and said, rather than some secret, undisclosed intention they may have had in mind, or which occurred to them later." *Waechter v. Aluminum Co. of America*, 454 N.W.2d 565, 568 (Iowa 1990) (citation omitted). *See also Schaer v. Webster County*, 644 N.W.2d 327, 338 (Iowa 2002) ("'[M]utual assent is based on objective evidence, not on the hidden intent of the parties.' The misunderstandings of the parties must be reasonable under the circumstances to support a finding of a lack of mutual assent." (citations omitted)).

Robert J. Frank's rationale and intentions for agreeing to the accord and satisfaction were clearly expressed. SRA 7-8. There is absolutely no contemporaneous evidence that the United States disagreed with the assessment of counsel for Robert J. Frank. Instead, the United States agreed to the proposed resolution. In fact, Mr. McLaughlin's affidavit merely asserts that the withdrawal of the forfeiture petition by the United States was for "unrelated" reasons, but never discloses what those reasons might have been. The United States hidden and secret (and still hidden and secret) rationale is not reasonable under the circumstances to support any finding that the United States did not agree to give up its claim that Robert J. Frank was not the legal owner of Gardner's Lane.

B. Estoppel

Plaintiff does not rely on collateral estoppel, which requires a judgment. Accordingly, that portion of the United States' Motion can be disregarded.

With regard to equitable estoppel, Robert J. Frank, after reviewing the cases cited by the United States, agrees that he cannot show "affirmative misconduct" on the part of the United States sufficient to invoke that doctrine.

C. Waiver

The United States does not make any argument that it has not waived its claim of fraudulent conveyance. The United States clearly waived that claim.

> The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right. Waiver can be express, "shown by the affirmative acts of a party," or implied, "inferred from conduct that supports the conclusion waiver was intended."

*Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 Iowa 1999) (citations omitted).

Those elements are proven here, or at least a factual dispute exists. First, the original existence of the right to claim fraudulent conveyance (later extinguished by the statute of limitations as discussed above) is undisputed. Second, the United States clearly had knowledge, including actual knowledge, of that right as it claimed years ago that the 1987 transfer was fraudulent.

The only element in potential dispute is the third element, the intention to waive the right. That intention can readily be implied or inferred by the United States' conduct. The United States, up until recently, never sought to set aside the transfer as fraudulent. That indicates that the United States never intended to exercise any right to set aside the transfer as fraudulent. With respect to the

settlement negotiations regarding withdrawal of the United States' forfeiture petition, with its undisputed allegation that Robert J. Frank was not the record owner of the Gardner's Lane property due to a fraudulent conveyance, the United States never explicitly disagreed with Robert J. Frank's assertion that the transfer was not fraudulent and agreed to the proposed settlement terms. All the evidence, other than Mr. McLaughlin's self-serving affidavit several years after the fact, points to an intentional waiver by the United States.

## CONCLUSION

The United States Second Motion to Dismiss must be denied. First, Robert J. Frank, as record owner of the Gardner's Lane property has standing to pursue this action.

Second, any claim by the United States that the 1987 transfer constituted a fraudulent conveyance is barred by the statute of limitations.

Third, whether the transfer was fraudulent depends on the weighing of numerous facts. That issue cannot be decided on a motion to dismiss and must await trial for resolution.

Finally, the United States is barred from making its present argument by the doctrine of accord and satisfaction. The United States also is barred by waiver.

Respectfully Submitted,

Date: 4/10/08

/s/ Webb L. Wassmer

WEBB L. WASSMER
SIMMONS, PERRINE, ALBRIGHT
& ELLWOOD, P.L.C.
115 3RD STREET S.E., SUITE 1200
CEDAR RAPIDS, IOWA 52401
(319) 366-7641 (telephone)
(319) 366-1917 (facsimile)
wwassmer@simmonsperrine.com

ATTORNEYS FOR PLAINTIFF
ROBERT J. FRANK

CERTIFICATE OF FILING

I hereby certify that on April 10, 2008, a copy of the foregoing "PLAINTIFF'S RESISTANCE TO DEFENDANT'S SECOND MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Webb L. Wassmer
WEBB L. WASSMER

Copy to:

Meredyth D. Cohen
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C., 20530

**IOWA 1994 LEGISLATIVE SERVICE**
**Seventy-Fifth General Assembly, Second Regular Session**

COPR. © WEST 1994 No Claim to Orig. U.S. Govt. Works

Additions are indicated by <<+ Text +>>; Deletions by <<- Text ->>. Changes in tables are made but not highlighted. Vetoed provisions within tabular material are not displayed.

Ch. 1121 (H.F. 2384)
West's No. 123
COMMERCIAL TRANSACTIONS-**UNIFORM FRAUDULENT TRANSFER ACT**

AN ACT RELATING TO COMMERCIAL TRANSACTIONS, BY ENACTING THE **UNIFORM FRAUDULENT TRANSFER ACT**, AND PROVIDING FOR THE REPEAL OF CERTAIN CODE SECTIONS, AND PROVIDING AN EFFECTIVE AND APPLICABILITY DATE.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF IOWA:

Section 1. Section 322D.6, Code 1993, is amended to read as follows:

<< IA ST § 322D.6 >>

322D.6. Security interests not affected

The provisions of this chapter shall not be construed to affect, in any way, the existence or enforcement of any security interest which a supplier, any financial institution or any other person may have in the inventory of the retailer<<-, and any repurchase of inventory which is made hereunder shall not be subject to the bulk sales provisions of chapter 554, article 6, of the uniform commercial code->>.

Sec. 2. Section 322F.4, Code 1993, is amended to read as follows:

<< IA ST § 322F.4 >>

322F.4. Security interests not affected

This chapter shall not be construed to affect the existence or enforcement of a security interest which any person, including a supplier or financial institution, may have in the inventory of the dealer. <<-The repurchase of inventory which is made under this chapter shall not be subject to the bulk sales provision of chapter 554, article 6 of the uniform commercial code.->>

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Sec. 3. Section 554.1105, subsection 2, Code 1993, is amended to read as follows:

<< IA ST § 554.1105 >>

2. Where one of the following provisions of this chapter specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:

Rights of creditors against sold goods. Section 554.2402.

Applicability of the Article on Bank Deposits and Collections. Section 554.4102.

<<-Bulk transfers subject to the Article on Bulk Transfers. Section 554.6102.->>

Applicability of the Article on Investment Securities. Section 554.8106.

Perfection provisions of the Article on Secured Transactions. Section 554.9103.

Governing law in the Article on Funds Transfers. Section 554.12507.

Sec. 4. Section 554.2403, subsection 4, Code 1993, is amended to read as follows:

<< IA ST § 554.2403 >>

4. The rights of other purchasers of goods and of lien creditors are governed by the Articles on Secured Transactions (Article 9), <<-Bulk Transfers (Article 6)->> and Documents of Title (Article 7).

Sec. 5. NEW SECTION.

<< IA ST § 684.1 >>

684.1. Definitions

As used in this chapter:

1. "Affiliate" means any of the following:

a. A person who directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of the debtor, other than a person who holds the securities as either of the following:

(1) As a fiduciary or agent without sole discretionary power to vote the securities.

(2) Solely to secure a debt, if the person has not exercised the power to vote.

b. A corporation twenty percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

debtor or a person who directly or indirectly owns, controls, or holds with power to vote, twenty percent or more of the outstanding voting securities of the debtor, other than a person who holds the securities as either of the following:

(1) As a fiduciary or agent without sole power to vote the securities.

(2) Solely to secure a debt, if the person has not in fact exercised the power to vote.

c. A person whose business is operated by the debtor under a lease or other agreement, or a person substantially all of whose assets are controlled by the debtor.

d. A person who operates the debtor's business under a lease or other agreement or controls substantially all of the debtor's assets.

2. "Asset" means property of a debtor, but does not include any of the following:

a. Property to the extent it is encumbered by a valid lien.

b. Property to the extent it is generally exempt under nonbankruptcy law.

c. An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

3. "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

4. "Creditor" means a person who has a claim.

5. "Debt" means liability on a claim.

6. "Debtor" means a person who is liable on a claim.

7. "Insider" includes all of the following:

a. If the debtor is an individual, all of the following:

(1) A relative of the debtor or of a general partner of the debtor.

(2) A partnership in which the debtor is a general partner.

(3) A general partner in a partnership described in subparagraph (2).

(4) A corporation of which the debtor is a director, officer, or person in control.

b. If the debtor is a corporation, all of the following:

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(1) A director of the debtor.

(2) An officer of the debtor.

(3) A person in control of the debtor.

(4) A partnership in which the debtor is a general partner.

(5) A general partner in a partnership described in subparagraph (4).

(6) A relative of a general partner, director, officer, or person in control of the debtor.

c. If the debtor is a partnership, all of the following:

(1) A general partner in the debtor.

(2) A relative of a general partner in, or a general partner of, or a person in control of the debtor.

(3) Another partnership in which the debtor is a general partner.

(4) A general partner in a partnership described in subparagraph (3).

(5) A person in control of the debtor.

d. An affiliate, or an insider of an affiliate as if the affiliate were the debtor.

e. A managing agent of the debtor.

8. "Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien.

9. "Property" means anything that may be the subject of ownership.

10. "Relative" means an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree.

11. "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

12. "Valid lien" means a lien that is effective against the holder of a judicial

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

lien subsequently obtained by legal or equitable process or proceedings.

Sec. 6. NEW SECTION.

<< IA ST § 684.2 >>

684.2. Insolvency

1. A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation.

2. A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent.

3. A partnership is insolvent under subsection 1 if the sum of the partnership's debts is greater than the aggregate, at a fair valuation, of all of the partnership's assets, and the sum of the excess of the value of each general partner's nonpartnership assets over the partner's nonpartnership debts.

4. Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.

5. Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

Sec. 7. NEW SECTION.

<< IA ST § 684.3 >>

684.3. Value

1. Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

2. For the purposes of section 684.4, subsection 1, paragraph "b", and section 684.5, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

3. A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Sec. 8. NEW SECTION.

<< IA ST § 684.4 >>

684.4. Transfers fraudulent as to present and future creditors

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following circumstances:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor.

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, if either of the following applies:

(1) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(2) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

2. In determining actual intent under subsection 1, paragraph "a", consideration may be given, among other factors, to any or all of the following:

a. Whether the transfer or obligation was to an insider.

b. Whether the debtor retained possession or control of the property transferred after the transfer.

c. Whether the transfer or obligation was disclosed or concealed.

d. Whether, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

e. Whether the transfer was of substantially all the debtor's assets.

f. Whether the debtor absconded.

g. Whether the debtor removed or concealed assets.

h. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

i. Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

j. Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

k. Whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Sec. 9. NEW SECTION.

<< IA ST § 684.5 >>

684.5. Transfers fraudulent as to present creditors

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

2. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Sec. 10. NEW SECTION.

<< IA ST § 684.6 >>

684.6. When transfer is made or obligation is incurred

For the purposes of this chapter:

1. A transfer is made under either of the following circumstances:

a. With respect to an asset that is real property other than a fixture, but including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

b. With respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee.

2. If applicable law permits the transfer to be perfected as provided in subsection 1 and the transfer is not so perfected before the commencement of an action

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

for relief under this chapter, the transfer is deemed made immediately before the commencement of the action.

3. If applicable law does not permit the transfer to be perfected as provided in subsection 1, the transfer is made when it becomes effective between the debtor and the transferee.

4. A transfer is not made until the debtor has acquired rights in the asset transferred.

5. An obligation is incurred under either of the following circumstances:

a. If oral, when it becomes effective between the parties.

b. If evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee.

Sec. 11. NEW SECTION.

<< IA ST § 684.7 >>

684.7. Remedies of creditors

1. In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in section 684.8, may obtain any of the following:

a. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

b. A remedy by any special action available under this subtitle, including attachment or other provisional remedy, against the asset transferred or other property of the transferee.

c. Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, any of the following:

(1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.

(2) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.

(3) Any other relief the circumstances may require.

2. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Sec. 12. NEW SECTION.

<< IA ST § 684.8 >>

684.8. Defenses, liability, and protection of transferee

1. A transfer or obligation is not voidable under section 684.7, subsection 1, paragraph "a", against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

2. Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 684.7, subsection 1, paragraph "a", the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection 3, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against either of the following:

a. The first transferee of the asset or the person for whose benefit the transfer was made.

b. Any subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee.

3. If the judgment under subsection 2 is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

4. Notwithstanding voidability of a transfer or an obligation under this chapter, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to any of the following:

a. A lien on or a right to retain any interest in the asset transferred.

b. Enforcement of any obligation incurred.

c. A reduction in the amount of the liability on the judgment.

5. A transfer is not voidable under section 684.4, subsection 1, paragraph "b", or section 684.5 if the transfer results from either of the following:

a. Termination of a lease upon default by the debtor when the termination is pursuant to the lease and applicable law.

b. Enforcement of a security interest in compliance with chapter 554, article 9.

6. A transfer is not voidable under section 684.5, subsection 2, in any of the following circumstances:

a. To the extent the insider gave new value to or for the benefit of the debtor

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

after the transfer was made unless the new value was secured by a valid lien.

b. If made in the ordinary course of business or financial affairs of the debtor and the insider.

c. If made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

Sec. 13. NEW SECTION.

<< IA ST § 684.9 >>

684.9. Extinguishment of cause of action

A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought as follows:

1. Under section 684.4, subsection 1, paragraph "a", within five years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

2. Under section 684.4, subsection 1, paragraph "b", or section 684.5, subsection 1, within five years after the transfer was made or the obligation was incurred.

3. Under section 684.5, subsection 2, within one year after the transfer was made or the obligation was incurred.

Sec. 14. NEW SECTION.

<< IA ST § 684.10 >>

684.10. Supplementary provisions

Unless displaced by the provisions of this chapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Sec. 15. NEW SECTION.

<< IA ST § 684.11 >>

§ 684.11. Uniformity of application and construction

This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states en-

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

acting it.

Sec. 16. NEW SECTION.

<< IA ST § 684.12 >>

684.12. Short title

This chapter may be cited as the "**Uniform Fraudulent Transfer Act.**"

<< Repealed: IA ST §§ 554.6101, 554.6102, 554.6103, 554.6104, 554.6105, 554.6106, 554.6107, 554.6108, 554.6109, 554.6110, 554.6111, 554.9111 >>

Sec. 17. REPEALS. Sections 554.6101 through 554.6111, and 554.9111, Code 1993, are repealed.

<< Note: IA ST §§ 322D.6, 322F.4, 554.1105, 554.2403, 684.1, 684.2, 684.3, 684.4, 684.5, 684.6, 684.7, 684.8, 684.9, 684.10, 684.11, 684.12 >>

Sec. 18. EFFECTIVE DATE AND APPLICATION. This Act takes effect on January 1, 1995, and applies to all causes of action arising on or after that date.

Approved April 26, 1994.

IA LEGIS 1121 (1994)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.