IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT J. FRANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-73C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSE TO ITS SECOND MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), we respectfully submit this reply to plaintiff Robert J. Frank's ("Mr. Frank") response to our motion to dismiss for lack of jurisdiction.

ARGUMENT

I. The Burden Is Upon Mr. Frank To Prove Ownership Of Gardner's Lane By A Preponderance Of The Evidence

The United States is not attempting to bring a fraudulent transfer claim against Mr. Frank or requesting that the Court set aside the transfer, but is raising a challenge to Mr. Frank's standing. Standing is a jurisdictional requirement, and Mr. Frank bears the burden of proving jurisdiction. Land v. Dollar, 330 U.S. 731, 735 n.4 (1947). Mr. Frank must establish jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The burden is not on the United States to prove fraudulent transfer by clear and convincing evidence, as Mr. Frank asserts, Pl. Resp. at 8,[1] but is rather on Mr. Frank to prove ownership of Gardner's Lane by a preponderance of the evidence.

[1] "Pl. Resp." refers to Plaintiff's Response to Defendant's Second Motion to Dismiss, filed on April 10, 2008.

II. A Finding Of Fraudulent Transfer Is A Finding That The Transferee Never Had Rights In The Transferred Property

In his response to our second motion to dismiss, Mr. Frank first asserts that, even assuming that the transfer of the Garner's Lane property from his father, Robert H. Frank, to him, was fraudulent, that does not necessarily remove any rights he has in the property or void any contracts made while he was in possession of the property. Pl. Resp. at 3. In support of his assertion, he states that the transferee of a fraudulent conveyance of real estate could mortgage the property, then after the transfer is declared fraudulent, have no obligation to the mortgage holder. In such a case, however, the mortgage holder would surely have an action against the transferee to recover payment of the mortgage. But because the transferee was never the rightful owner of the property, he would not possess any rights to enforce a contract made based upon his ownership of the land.

III. The Iowa UFTA Statute Of Limitations Does Not Preclude The United States From Raising Fraudulent Transfer To Challenge Mr. Frank's Standing

We do not dispute that the United States had notice of the transfer more than five years prior to the filing of our second motion to dismiss in this case. However, we maintain that the United States is not bound by the five-year statute of limitations of the Iowa Uniform Fraudulent Transfer Act ("UFTA"), Iowa Code Ann. § 684.9.

Iowa Code Annotated § 684.9 provides that a "cause of action" with respect to a fraudulent transfer is extinguished if not brought within five years. A "cause of action" is defined as a "group of operative facts giving rise to one or more bases for suing." Black's Law Dictionary (8th ed. 2004). The United States is not attempting to bring a "cause of action" against Mr. Frank; it is not making an affirmative claim against Mr. Frank, nor is it requesting

that this Court set aside the transfer. The United States is simply raising the issue of fraudulent conveyance to challenge Mr. Frank's standing to bring this lawsuit. See also Fidanza v. TDV Int'l, No. CV 950128541, 1997 WL 355982, at *1 (Conn. Super. Ct. June 18, 1997) (holding that when fraudulent transfer is raised as a defense, the statute of limitations does not apply).

Even if raising the issue of fraudulent transfer to challenge Mr. Frank's standing could be considered a "cause of action," as established in our opening brief, when the United States is making a claim in its governmental capacity, it is not subject to state statutes of limitation. Mr. Frank's Fifth Amendment takings claim clearly concerns the United States' actions in its governmental capacity, as private parties have no right to take property pursuant to the Fifth Amendment. Mr. Frank's contract claims are based upon an alleged contract entered into by the United States pursuant to its forfeiture of property based upon a preliminary order of forfeiture in a criminal case. Forfeiture actions unquestionably are taken by the United States in its sovereign capacity.

Additionally, as set forth in our opening brief, even assuming that the United States was acting in a proprietary capacity, it still would not be bound by the state statute of limitations. Contrary to Mr. Frank's assertions, the case of United States v. California, 507 U.S. 746 (1993), does not defeat this point. United States v. California involved a subrogation claim, in which the United States agreed to reimburse its contractor's cost. Thus, the United States was standing in the shoes of its contractor, a private corporation. Id. at 756. Because the state statute of limitations had run as to the contractor, the Court held that it had run as to the United States as well. Id. The Court specifically declined to decided the issue of whether a state-law action brought by the United States is subject to a Federal or state statute of limitations. Id. Assuming

without conceding that United States v. California can be read to hold that the United States is bound by state statutes of limitations when asserting a state law cause of action, United States v. California would still not be applicable here because there is no state law cause of action. Rather, there is a challenge to Mr. Frank's standing in a Federal court proceeding.

## II. There Is Sufficient Evidence That The Transfer Was Fraudulent

Mr. Frank first notes that the Iowa UFTA does not apply in this case, because the transfer occurred prior to its enactment. Pl. Resp. at 7-8. We agree, but also agree with Mr. Frank that the Iowa UFTA largely codified pre-existing law, and that therefore all of the arguments made in our opening brief pursuant to the UFTA are still applicable.

### A. The United States Has Shown That Robert H. Frank Transferred Gardner's Lane With Actual Intent To Hinder, Delay, Or Defraud Any Creditor

Mr. Frank next asserts that, pursuant to the Iowa UFTA, the United States has failed to show that the transfer was fraudulent to it as a future creditor because it has failed to show "actual intent to hinder, delay, or defraud any creditor." Pl. Resp. at 9 (quoting Iowa Code Ann. § 684.4(1)). Mr. Frank further asserts that actual intent is "normally impossible to determine on motion and must await trial on the merits." Id. at 9, 14. On the contrary, the statute itself states that, in determining actual intent, consideration may be given to the "badges of fraud" set forth in the statute. Iowa Code Ann. 684.4(2); see also Benson v. Richardson, 537 N.W.2d 748, 756 (Iowa 1995). As set forth in our opening brief, it is evident from the undisputed evidence already in the record that five of the 11 indicia of fraud are present in this case, and that courts have held that five of the 11 is enough to establish actual intent. Even assuming that actual intent were a question of fact that cannot be decided based upon the current record, this does not mean that our motion to dismiss must be denied. Rather, as we demonstrated in our opening

brief, and as Mr. Frank has not disputed in his response, this Court may inquire into the facts, and even hold an evidentiary hearing to resolve the issue of its jurisdiction.

B. The United States Has Shown That Five Of The Iowa UFTA's Indicia Of Fraud Were Present In The Transfer Of Gardner's Lane

Mr. Frank's basic argument is that none of the five indicia alone indicates that the transfer was fraudulent. Pl Resp. at 10-12. We agree, but maintain that the existence of these indicia together is sufficient to show that the transfer was fraudulent, and that we have shown that all five indicia were present in the transfer of Gardner's Lane.

One of the indicia of fraud in the transfer of Gardner's Lane is that it occurred shortly after Robert H. Frank incurred debt or was threatened with suit. See Iowa Code Ann. § 684.4(2)(d). Mr. Frank asserts that this indicum is not present because the "transfer was not made at a time when Robert H. Frank was threatened with any claim by the United States or at a time any such claim was pending." Pl. Resp. at 11 (emphasis added). Nothing in the statute requires that the pending suit or threatened suit be the same one which resulted in the debt, or that it be a suit by the creditor claiming fraudulent transfer. See Iowa Code Ann. § 684.4(2)(d). Mr. Frank does not dispute that state court charges were filed against Robert H. Frank shortly before the transfer and were pending at the time of the transfer. If convicted, Robert H. Frank had to have expected to owe some amount of restitution.

Another of the indicia of fraud in the transfer is that Robert H. Frank maintained a certain amount of possession or control over the property following the transfer. See Iowa Code Ann. § 684.4(2)(b). Mr. Frank asserts that Robert H. Frank did not retain possession or control over the property because he never claimed to recover ownership and never precluded Mr. Frank from encumbering the property. Pl. Resp. at 12. All that the statute requires is possession or control;

it does not require an attempt to regain ownership or to prevent the transferee from exercising ownership rights. See Iowa Code Ann. § 684.4(2)(b). By storing a large number of vehicles on the property, Mr. Frank retained significant control of it.

A third indicia of fraud in the transfer of Gardner's Lane is that Robert H. Frank has attempted to conceal other assets. See Iowa Code Ann. § 684.4(2)(g). Mr. Frank claims that the United States cannot use Robert H. Frank's concealment of assets following entry of judgment in 1988 to argue fraudulent transfer. Again, the plain language of the statute merely requires that the debtor "removed or concealed assets"; it does not specify any time frame. Iowa Code Ann. § 684.4(2)(h). Therefore, concealment of assets following the judgment is evidence of fraud.

As Mr. Frank states, we do concede that the other six indicia of fraud outlined in the Iowa UFTA do not exist in this case. However, it is not necessary to consider them because courts have held that five of the 11 indicia is sufficient to demonstrate fraud, and we have proven the existence of five of the indicia.

### C. The United States Has Consistently Questioned Mr. Frank's Ownership Of Gardner's Lane

Mr. Frank asserts that if the United States "truly believed" that the transfer was fraudulent, it would have sought to set it aside in 1988 after obtaining judgment against Robert H. Frank. Pl. Resp. at 13-14. The United States, however, has consistently questioned Mr. Frank's ownership of Gardner's Lane. By naming Gardner's Lane in the forfeiture action, the United States indicated that it believed the property belonged to Robert H. Frank, as only property belonging to Robert H. Frank could be forfeited in the criminal action against him. As Mr. Frank admits, on November 22, 2002, he sent a letter, through counsel, to Assistant United States Attorney Martin McLaughlin, stating that, "[a]s I understand it the United States is

claiming that the original transfer in 1987 was fraudulent; and at the time of the commission of the offenses, [Robert H. Frank] was the actual/equitable owner of the property." Pl. Resp. at 16 (citing SRA 8[2]). Thus, at least as early as 2002, both parties knew that the United States was questioning Mr. Frank's ownership of the property. On November 20, 2002, Mr. Frank filed a petition for remission, claiming ownership of the property, A 57[3], but then moved to dismiss the petition on November 20, 2003. SRA 33. Based upon this dismissal, there was no reason for the United States to raise fraudulent transfer because it believed that the ownership of the property was no longer at issue. Raising the issue of fraudulent transfer only became necessary when Mr. Frank filed this lawsuit, because his standing to bring this suit is dependent upon his ownership of the property.[4]

D. The United States Need Not Show That It Was Prejudiced By The Transfer

Mr. Frank further claims that the United States must show that it has been prejudiced by the transfer. Pl. Resp. at 15. He cites Textron Financial Corp. v. Kruger, 545 N.W.2d 880 (Iowa App. 1996), which states that "[a] fraudulent conveyance will not be set aside unless complaining creditors can show they were prejudiced." Id. at 885 (emphasis added). Again, the United States is not attempting to set aside the transfer, therefore this standard is inapplicable. In any case, the United States was prejudiced by the transfer because Robert H. Frank is indebted to the United States based upon the 1988 judgment against him, and because of the transfer, the

[2] "SRA" refers to the appendix to plaintiff's February 1, 2008 response to defendant's status report.

[3] "A" refers to the appendix filed with our May 25, 2006 motion to dismiss.

[4] As stated in our opening brief, we regret not rasing this issue earlier in this case, but note that jurisdictional challenges may be raised at any time. Booth v. United States, 990 F.2nd 617, 620 (Fed. Cir. 1993).

United States cannot sell Gardner's Lane to satisfy his debts.

E. The United States Need Not Show That It Was A Creditor Of Robert H. Frank

Finally, Mr. Frank asserts that the United States is not a creditor who can seek to set aside the transfer. Resp. Br. at 15-16. Once again, the United States is not seeking to set aside the transfer, but is raising fraudulent transfer in the context of this Court's jurisdiction in this case. Nonetheless, the United States is a creditor of Robert H. Frank based upon the 1988 judgment. Contrary to Mr. Frank's assertion, there is no requirement that the United States be a creditor of Robert H. Frank or Mr. Frank with respect to this action. In fact, the creditor's claim can arise before or after the transfer. Iowa Code Ann. § 684.4(1).

IV. Accord And Satisfaction Does Not Bar The United States From Asserting Fraudulent Transfer To Challenge This Court's Jurisdiction

Mr. Frank concedes that collateral estoppel and equitable estoppel do not bar the United States from raising fraudulent transfer to challenge Mr. Frank's standing to bring this case. Pl. Resp. at 19-20. Mr. Frank continues to assert, however, that the United States is barred by accord and satisfaction. Pl. Br. at 16-19.

Mr. Frank states that the United States has "misconstrued" the nature of accord and satisfaction, and that there was an accord and satisfaction that Robert J. Frank was the legal owner of the Gardner's Lane property." Pl. Resp. at 17. Mr. Frank does not dispute the definition of accord and satisfaction set forth in our opening brief, however, which requires discharge of a claim by substitute performance. Case, Inc. v. United States, 88 F.3d 1004, 1011 n.7 (Fed. Cir. 1996). Mr. Frank fails to explain for what prior agreement performance was substituted.

Assuming that accord and satisfaction somehow applies, Mr. Frank has not shown that

the four elements of accord and satisfaction have been met. As set forth above and in our opening brief, there was no proper subject matter because there was no prior agreement for which performance could be substituted. Furthermore, there was no meeting of the minds that Mr. Frank was the legal owner. While it is true that the United States indicated to Mr. Frank that it did not intend to pursue the forfeiture against the property, this does not constitute a meeting of the minds as to Mr. Frank's ownership of the property.

As previously explained, there are many other reasons that the United States could have chosen not to pursue forfeiture of the property, having nothing to do with Mr. Frank's alleged ownership of it. For instance, the United States may have decided that the property was not valuable enough to forfeit and attempt to sell.

Mr. Frank claims that mutual assent must be determined by looking to objective evidence, not the hidden intent of the parties. Pl. Resp. at 19. Neither of the cases cited by Mr. Frank concerns the determination of meeting of the minds in accord and satisfaction. Regardless, looking objectively at the facts - that the United States indicated that it did not intend to pursue forfeiture of Gardner's Lane and that Mr. Frank agreed to dismiss his claim for attorney fees - there is no indication that the United States believed Mr. Frank to be the legal owner of Gardner's Lane. These facts do not indicate what the reason for the United States' decision was. The fact that the United States did not affirmatively disagree in writing with Mr. Frank's characterization of the issues does not mean that it agreed with Mr. Frank that its position was frivolous.

V. The United States Has Not Waived Its Right To Assert Fraudulent Transfer

Mr. Frank argues that the United States has waived its fraudulent transfer claim because it has never sought to set aside the transfer until now. Pl. Resp. at 20-21. As set forth above, the United States is not requesting that the transfer be set aside, but is raising fraudulent transfer to challenge this Court's jurisdiction. It is well-established that subject matter jurisdiction cannot be waived, even by agreement of the parties. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). Additionally, as explained above, the United States has continually questioned Mr. Frank's ownership of the property. There was no reason to raise this issue specifically to challenge Mr. Frank's jurisdiction until he filed this lawsuit. Therefore, it cannot be inferred from the United States' conduct thus far that it intended to waive its right to assert fraudulent transfer to challenge this Court's jurisdiction.

CONCLUSION

For these reasons and the reasons stated in our opening brief, defendant respectfully requests that its motion to dismiss be granted and that plaintiff's complaint be dismissed.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ PATRICIA M. McCARTHY
PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL:

LUCILLE C. ROBERTS
Deputy General Counsel
United States Marshals Service
Washington, D.C.

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

May 16, 2008

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS SECOND MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/MEREDYTH D. COHEN